UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD R. FENNELLY,

                                        Plaintiff,

v.                                                          1:24-cv-0172
                                                            (MAD/TWD)

CITY OF TROY; NEW YORK STATE; and
COUNTY OF RENSSELAER,

                                        Defendants.
_____

APPEARANCES:

DONALD R. FENNELLY
*Plaintiff, pro se*
579 4th St.
Troy, NY 12180

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.    INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by Donald R. Fennelly

("Plaintiff"), together with an application to proceed *in forma pauperis* ("IFP"), a motion for

counsel, and a motion to obtain an ECF login and password.  Dkt. Nos. 1, 2, 4, 5.

## II.    IFP APPLICATION

        Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt.

No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  Therefore, he is

granted permission to proceed IFP.

III.    **SUFFICIENCY OF COMPLAINT**

A.    **Standard of Review**

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall

dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  *Livingston v.*

*Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The court must also dismiss a

complaint, or portion thereof, when the court lacks subject matter jurisdiction.  *See* Fed. R. Civ.

P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).  A claim is

frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S.

319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007);

*see Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is

appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *see*

*also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual

contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal

theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and

plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at

570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id* at 678.  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id* at 663.

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

B.    **Summary of Complaint**[1]

Plaintiff brings this action against the City of Troy, New York State, and County of

Rensselaer.  Dkt. No. 1 at 1-2.[2]  In the civil cover sheet, he describes the cause of action as "New

York States Corrupt Family Court system and Federal Funding" pursuant to "1st, 2nd and the

entire constitution" and demands "$10,000,000."  Dkt. No. 1-1.

The complaint is written on a form complaint for civil rights violations pursuant to 42

U.S.C. § 1983 and alleges:

> Disobeying oaths of office, ethical codes and any/all constitutional
> RIGHTS.  Specific regards to the 1st, 2nd, 5th and 14th
> amendments.  Gross American with Disabilities Act violations

*Id*. at 5.  He also was discriminated against based on his race or color, religion, sex, national

origin, and age.  *Id*.  In the prayer for relief, Plaintiff requests:

> The full weight of the law and/or all governing bodies and
> licensing requirements and funding withheld.  Therefore any/all
> punitive relief the court and/or jury appears just and proper.  A stay
> on any and all legal events and the return to constitutional
> harmony.

*Id*. at 8.

---

[1]  Citations to Plaintiff's complaint will be to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2]  Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a).  A party not named in the caption of the complaint is not a party to the action.  *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

The last two pages of the complaint, although difficult to read, appears be a letter/complaint addressed to the "NYS Judicial Conduct Board" stemming from Plaintiff's "case before Jill Kehn" in Rensselaer County Family Count, "docket # O-03089-19, File # 38239." *Id.* at 9-10. From what the Court can glean, on February 21, 2020, Plaintiff "attempted" to proceed *pro se* before Judge Kehn in Rensselaer County Family Court. *Id.* at 9. However, Plaintiff was "assigned" an attorney and "it was obvious this court was having numerous ex parte communications" with "the Domestic Violence Unit" of Rensselaer County and the defendant's attorney. *Id.*

Plaintiff was "threaten numerous times and it was clear that this judge was extremely ignorant to individual rights and behavior fitting of a judge." *Id.* For example, she "denied" Plaintiff's "verbal motions for a change of venue to the county of original jurisdiction, Herkimer County." *Id.* She "accused" Plaintiff of "interrupting her." *Id.*

"Shortly after," Plaintiff proceeded with divorce proceedings and attempted to have [his] wife served." *Id.* He became extremely ill and required surgery. *Id.* Plaintiff further states:

> I am a 50 year abused child by the very, family court. I find that this system in Rennselear County to represent Incompetence, Corruption and abusive in nature. I thought it was secured previously that this court could never again hear a case involving me. Due to the fact, I was found Innocent over 14 times and have reported their abuse on me, numerous times. Both in judicial complaints and legal petitions. As an abused family court child, a domestically terrorized war vet, a family court father and now a family court husband. Let's look at this very fact:
>
> 1)  1st you took my father
> 2)  You took my name: AKA Donald Robert Hoak Jr. or Donald Robert Coates
> 3)  You replaced my father, with a known pedophile
> 4)  You took my son
> 5)  You took my job and career
> 6)  Supplied me with a criminal record, where non was to be found before

7)   You have exhausted both my inheritance and a retirement
8)   You then take my wife
9)   Once again ignore my handicap and PTSD, you personally are
      responsible for
10) Insult me, by assigning an attorney accused of crimes against
      women, facing an embezzling attorney and a JUDGE WHO
      PRATICED LAW WITHOTU A LICENSE!  Who is also,
      related to the city court criminal judge.  You don't think there
      is any impropriety here in Rensselear County Family Court?
      And they have the audacity to call my 1st amendment rights
      disturbing!

*Id*. at 10.  Plaintiff claims "a full investigation into their activities needs to be performed.  I know

for a fact, that several **Veterans both war and disabled**.  **Have committed suicide due to**

**fraudulent behavior**."  *Id*.  Plaintiff has "testified before the matrimonial commission on abuse

of children and families at the hands of unprofessional, incompetent and corrupt Family court

judges."  *Id*. at 9.

## IV.    ANALYSIS

Liberally construed, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes

a cause of action for "the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508

(1990) (citation omitted).  "Section 1983 itself creates no substantive rights, [but] . . . only a

procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13

F.3d 515, 519 (2d Cir. 1993).  To establish liability under the statute, a plaintiff must plead that

each government official defendant violated the Constitution through that official's own

individual actions.  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Having carefully reviewed Plaintiff's complaint and for the reasons discussed below, the

Court recommends dismissing the complaint with leave to amend.

### A.    Eleventh Amendment Immunity

Plaintiff names New York State as a defendant.  Dkt. No. 1 at 2.  Under the Eleventh

Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of

immunity, a suit against the State or one of its agencies or departments is proscribed by the

Eleventh Amendment.  *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

"New York State has not consented to suit in federal court."  *Abrahams v. App. Div. of

Sup. Ct.*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park

Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977)), *aff'd*, 311 F. App'x 474 (2d Cir. 2009).  "Further,

42 U.S.C. § 1983 does not abrogate the immunity of the states, including New York."  *Id*. (citing

*Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

The Eleventh Amendment, therefore, precludes Plaintiff's claims under Section 1983

against the State of New York.  Accordingly, the Court recommends Plaintiff's claims against

the State of New York be dismissed with prejudice as barred under the Eleventh Amendment and

as frivolous.  *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Montero v. Travis*, 171 F.3d 757, 760 (2d

Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are

immune from suit.'" (quoting *Neitzke*, 490 U.S. at 327)).

### B.    Municipal Liability

Plaintiff sues the City of Troy and County of Rensselaer.  Dkt. No. 1 at 1-2.  To set forth

a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove

that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or

usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing

*Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978)).  An "official policy or

custom" of the municipality can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2)
> actions taken by government officials responsible for establishing
> municipal policies related to the particular deprivation in question;
> (3) a practice so consistent and widespread that it constitutes a
> "custom or usage" sufficient to impute constructive knowledge of
> the practice to policymaking officials; or (4) a failure by
> policymakers to train or supervise subordinates to such an extent
> that it amounts to "deliberate indifference" to the rights of those
> who come in contact with the municipal employees.

*Dorsett-Felicelli, Inc. v. Cnty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citations

omitted).  "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct,

or inadequate training and/or supervision are insufficient to demonstrate the existence of such a

custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 13-CV-4178,

2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).  Thus, "'boilerplate statements that county

employees were acting in accord with a municipal policy, with no facts to support those

statements, are not sufficient to support a *Monell* claim.'"  *Thomas v. Town of Lloyd*, ___ F.

Supp. 3d ___, No. 1:21-CV-1358, 2024 WL 118939, at *10 (N.D.N.Y. Jan. 11, 2024) (quoting

*Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023), *reconsideration denied*,

2023 WL 5097970 (N.D.N.Y. Aug. 9, 2023)); *see Oklahoma City v. Tuttle*, 471 U.S. 808, 809

(1985) ("There must at the very least be an affirmative link between the municipality's policy

and the particular constitutional violation alleged.").

The complaint fails to comply with Rules 8(a) and 10(b).  *See generally*, Dkt. No. 1.  The

complaint does not present a short and plain statement of the claim showing that he is entitled to

relief.  *See* Fed. R. Civ. P. 8(a)(2).  Plaintiff does not present his claims in numbered paragraphs,

limited to one "circumstance" per paragraph.  Fed. R. Civ. P. 10(b).  Rather, the "facts" are set forth in a single paragraph which does not provide any context for Defendants' alleged misconduct.  Dkt. No. 1 at 5.  Plaintiff's single paragraph is woefully deficient and "presents far too a heavy burden in terms of Defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) ("A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'") (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *see also Laspisa v. Citifinancial Does 1 to 20*, 269 F. Supp. 3d 11, 13 (N.D.N.Y. 2017) ("A complaint that fails to comply with these Rules presents too heavy a burden for the defendant in shaping a comprehensive defense, provides no meaningful basis for a court to assess the sufficiency of a plaintiff's claims, and may properly be dismissed by the court."), *report-recommendation adopted*, 2017 WL 3769570 (N.D.N.Y. Aug. 29, 2017).

Plaintiff alleges no facts suggesting that a policy, custom, or practice of the City of Troy or County of Rensselaer caused a violation of his constitutional rights.  In fact, there are no allegations of wrongdoing asserted against either Defendant in the body of the complaint. Because Plaintiff has failed to enumerate allegations against either Defendant, he has failed to state a claim upon which relief may be granted.  *See generally*, *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (Although the Court is "obligated to draw the most favorable inferences that [the Plaintiff's] complaint supports, we cannot invent factual allegations that he has not pled."); *Joseph v. Annucci*, No. 7:18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants that were "named in the caption only" where "[t]he body

of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured Plaintiff in some manner"); *see, e.g.*, *Boyde v. New York*, No. 5:16-CV-555 (LEK/TWD), 2016 WL 3573133, at 4 (N.D.N.Y. May 19, 2016) (dismissing on § 1915 review the plaintiff's complaint against Onondaga County and the City of Syracuse because the plaintiff "failed to identify or allege any facts showing the existence of a municipal policy or custom" which caused the alleged constitutional violations), *report-recommendation adopted*, 2016 WL 3580768 (N.D.N.Y. June 28, 2016); *see also Cipriani v. Buffardi*, No. 06-CV-0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted).

Accordingly, the Court recommends dismissing the complaint for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.    Leave to Amend

The Court recommends Plaintiff be afforded the opportunity to file an amended complaint to cure the deficiencies identified above. *See Gomez*, 171 F.3d at 796. The amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any amended complaint submitted by Plaintiff must also demonstrate that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue, and over which this Court has jurisdiction. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Of course, Plaintiff may also pursue his claims in state court, if appropriate.

## V.    MOTION FOR COUNSEL

It is well-settled there is no right to appointment of counsel in civil matters. *See, e.g.*,

*Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).  Pursuant to 28 U.S.C. § 1915(e), the court

may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the

court to "request an attorney to represent any person unable to afford counsel.").  The Court must

consider the issue of appointment carefully because "every assignment of a volunteer lawyer to

an undeserving client deprives society of a volunteer lawyer available for a deserving cause."

*Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).  Thus, appointment of counsel

must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for

those litigants who truly need a lawyer's assistance.  *Id*. at 172-73.

Courts cannot utilize a bright-line test in determining whether counsel should be

appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir.

1997). Instead, a number of factors must be carefully considered by the court in ruling upon such

a motion:

> [The Court] should first determine whether the indigent's position
> seems likely to be of substance.  If the claim meets this threshold
> requirement, the court should then consider the indigent's ability to
> investigate the crucial facts, whether conflicting evidence
> implicating the need for cross examination will be the major proof
> presented to the fact finder, the indigent's ability to present the
> case, the complexity of the legal issues and any special reason in
> that case why appointment of counsel would be more likely to lead
> to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v.*

*Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted).  This is not

to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each

case must be decided on its own facts. *Velasquez v. O'Keefe*, No. 93-CV-1449 (TJM) 899 F.

Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge*, 802 F.2d at 621).

The Court finds appointment of counsel is not warranted at this time. Plaintiff has not

attached correspondence that substantiates his effort to obtain counsel from the public and

private sector. *See Terminate Control Corp.*, 28 F.3d at 1341. Moreover, because the Court is

recommending dismissal of the complaint, the Court is unable to determine, as a threshold

matter, whether Plaintiff's claims are likely to be of substance. *Id*.

Accordingly, Plaintiff's motion for counsel is denied without prejudice. Dkt. No. 4. Any

future motion for counsel must be accompanied by documentation that substantiates Plaintiff's

efforts to obtain counsel from both the public and private sectors.

## VI.    MOTION TO OBTAIN ECF LOGIN AND PASSWORD

Plaintiff has also submitted a motion to obtain an ECF login and password. Dkt. No. 5.

*Pro se* plaintiffs are not automatically granted access to electronic filing. *Gencarelli v. Coca-*

*Cola Co.*, No. 1:20-CV-85 (TJM/CFH), 2020 WL 2561258, at *9 (N.D.N.Y. April 13, 2020),

*report-recommendation adopted*, 2020 WL 2559914 (N.D.N.Y. May 20, 2020). "As Plaintiff

has not presently demonstrated a special circumstance or need, there is no reason that permitting

electronic filing, as opposed to filing traditionally, by mail, will impact Plaintiff's ability to

effectively litigate this matter." *Id*. (citing General Order 22). Moreover, because this Court is

recommending dismissal of the complaint at this time, the Court declines to exercise its

discretion to allow Plaintiff to use the Court's electronic filing system. *See Amato v. McGinty*,

No. 1:17-CV-593 (MAD/ATB), 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017) (denying

motion to obtain ECF privileges without prejudice). Accordingly, Plaintiff's motion to obtain an

ECF login and password is denied without prejudice. Dkt. No. 5.

## VII.    CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[3] and it is further

**RECOMMENDED** that Plaintiff's claims against New York State be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii); and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that Plaintiff's motion for counsel (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff's motion to obtain an ECF login and password (Dkt. No. 5) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of

---

[3] Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

    **IT IS SO ORDERED.**

Dated:  May 10, 2024
        Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge

KeyCite Yellow Flag - Negative Treatment

Distinguished by Rivera v. Westchester County, S.D.N.Y., September 23, 2020

2015 WL 1379652
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Steven TIEMAN, Plaintiff,

v.

CITY OF NEWBURGH, Po Joseph Palermo,
Po John Maguire, Po Eric Eltz, Po Patrick Kelly,
Po Anthony Guidice, Po Christopher Lahar,
Town of Newburgh, Sgt William Ransom,
Unknown Police Officers 1–5, Defendants.

No. 13–CV–4178 (KMK).
|
Signed March 26, 2015.

## Attorneys and Law Firms

David A. Zelman, Esq., The Law Office of David A. Zelman, Brooklyn, NY, for Plaintiff.

Roberta D. Asher, Esq., Asher & Associates, New York, NY, for Plaintiff.

David Lewis Posner, Esq., McCabe & Mack LLP, Poughkeepsie, NY, for Defendant City of Newburgh.

Carl Steven Sandel, Esq., Drew William Sumner, Esq., Morris Duffy Alonso & Faley, New York, NY, for Defendants Town of Newburgh and SGT William Ransom.

## OPINION & ORDER

KENNETH M. KARAS, District Judge.

**\*1** Plaintiff Steven Tieman brought suit against Defendants City of Newburgh (the "City"); City of Newburgh Police Officers Joseph Palermo, John Maguire, Eric Eltz, Patrick Kelly, Anthony Guidice, Christopher Lahar, and Unknown Police Officers 1–5; the Town of Newburgh (the "Town"); Town of Newburgh Sergeant William Ransom; and State Trooper Moises Nales. The City of Newburgh moves to dismiss all claims against the City and against Defendants Palermo, Maguire, Eltz, Kelly, Guidice, and

Lahar (collectively, the "City Police Officer Defendants"), and for the Court to reject Plaintiff's request to file his Proposed Amended Complaint ("PAC"). The Town of Newburgh moves to dismiss all claims against the Town and against Defendant Ransom, and for the Court to reject Plaintiff's PAC. For the following reasons, the Town's Motion To Dismiss is granted and the City's Motion To Dismiss is denied in part and granted in part.

### I. Background

#### A. Factual Background

The following factual summary is derived from Plaintiff's PAC, which the Court takes as true for the purpose of these Motions To Dismiss.[1] These claims arise out of an incident that occurred on June 17, 2010, at approximately 5:45 p.m. (Pl.'s Mem. of Law in Opp'n ("Pl.'s Mem.") Ex. A(PAC), at ¶ 10 (Dkt. No. 46).) Plaintiff alleges that he "was lawfully driving on a public street in Newburgh, New York, when he was approached by a police officer, upon information and belief, [Defendant Eltz], who was wearing plain clothes." (Id.)[2] Without warning and "for no apparent reason," Defendant Eltz "began to yell" at Plaintiff, and "told him to get out of the car." (Id. ¶ 11.) Plaintiff further alleges that he "was frightened and thought he was being robbed, so he drove away." (Id.) Defendant Eltz and other police officers, including Defendants Maguire, Kelly, Guidice, Lahar, and Palermo, gave chase to Plaintiff. (Id. ¶ 12.) "At some point thereafter, and prior to Plaintiff stopping his vehicle," Defendants Ransom and Nales joined the chase. (Id.) "After a brief car chase, [P]laintiff pulled over to the side of the road, put his pickup truck in park, turned off the engine, and raised his hands to surrender." (Id. ¶ 13.) Plaintiff alleges that, when he stopped his vehicle, Defendant Nales was located near Plaintiff's vehicle. (Id.)

1    As explained below, Plaintiff's PAC will be accepted unless it would be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the PAC contains all of the factual allegations contained in Plaintiff's original Complaint, as well as additional allegations, the Court will merely address the sufficiency of the factual allegations in the PAC. If any portion of the PAC would be subject to dismissal, the corresponding portion of the Complaint necessarily will also be dismissed under Rule 12(b) (6).

2  Plaintiff asserts that he was lawfully driving that evening, but he was "convicted of driving while impaired by alcohol in violation of Vehicle and Traffic Law § 1192(1), criminal possession of a controlled substance in the seventh degree, resisting arrest, unlawful fleeing a police officer in a motor vehicle in the third degree (two counts) and reckless driving in conjunction with this incident." (Mem. of Law in Supp. of the Town of Newburgh and Sergeant William Ransom's Mot. To Dismiss ("Town's Mem.") 2 n. 1 (Dkt. No. 30); *see also* Newburgh's Reply Br. in Supp. of 12(b) (5) and 12(b)(6) Dismissal ("City's Reply") 1–2 (Dkt. No. 47).) Whether Plaintiff was driving lawfully is not relevant to the instant Motions, so the Court declines to assess whether, and to what extent, it should consider these seemingly undeniable facts put forth by Defendants. However, counsel for Plaintiff may someday be called upon to explain the good faith basis for this allegation.

Next, Plaintiff alleges that "one of the defendant police officers, on information and belief [Defendant Maguire], opened the truck door and ordered his police dog to attack [P]laintiff." (*Id.* ¶ 14.) Plaintiff "was thereupon attacked by the police dog, and punched numerous times by [Defendant Maguire]." (*Id.*) Plaintiff alleges that he was "not resisting the police officers in any way," but he nonetheless was dragged from his truck and thrown to the ground by Defendant Maguire and other officers, and was "beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done." (*Id.* ¶ 15.) Plaintiff alleges that at that point "[t]here were at least fifteen or twenty police officers surrounding" him. (*Id.*) Plaintiff alleges that though he was "handcuffed and secured by the police officers, the police dog was again ordered to attack" him, which attack was "completely unjustified, and resulted in numerous further physical injuries." (*Id.* ¶ 16.)

**\*2**  Plaintiff alleges that the injuries he suffered as a result of this assault "included deep dog bites and lacerations to his left side and left leg; bruising to his jaw, head, back, and arms; lacerations to his right elbow; and a broken left ring finger (caused by a dog bite)." (*Id.* ¶ 17.) Plaintiff alleges that he was arrested, taken to the Newburgh City police station, then taken for medical treatment at St. Luke's Hospital, and then to Orange County Jail, where he received further medical treatment. (*Id.* ¶ 18.) Plaintiff alleges that his wounds became infected while in jail, and that he suffered severe and permanent injuries, including "scarring and weakness in his

limbs," "severe physical pain," and "serious and permanent psychological and emotional injuries, including depression, flashbacks, nightmares, unreasonable fear of dogs and police officers, and inability to concentrate." (*Id.* ¶¶ 19–21.)

According to Plaintiff, the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights." (*Id.* ¶ 22.) Additionally, Plaintiff claims that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive force by its employees." (*Id.* ¶ 23.) In particular, according to Plaintiff, "[p]ublic court records reveal at least nine suits filed in the five years before the incident [that is the basis for this Action] which allege that police officers employed by [the City] used excessive force during the course of an arrest," "[a]t least five" of which incidents "involved allegations of unnecessary and excessive dog bites." (*Id.*) Plaintiff has listed and described the following lawsuits:

In *Burley. et al. v. City of Newburgh, et al.,* 07–CV–3336, the plaintiffs alleged that on May 11, 2005, police officers employed by [the City] falsely arrested one plaintiff and sprayed him with pepper spray, threw him to the ground, and kicked him in the face causing him to lose consciousness. The other plaintiff alleged that police officers employed by [the City] falsely arrested him, hit him in the face, and kicked him in the ribs.

In *Bryant v. City of Newburgh, et al.,* 06–CV–4200, the plaintiff alleged that he was falsely arrested with excessive force by police officers employed by [the City] on both May 17, 2005 and June 22, 2006.

In *Garcia. et al. v. City of Newburgh, et al.,* 08–CV–1198, [the] plaintiff alleged that on March 30, 2007, he was falsely arrested with excessive force by police officers employed by [the City], including [Defendant Kelly].

In *Cooper. et al. v. City of Newburgh, et al.,* 09–CV–2234, four plaintiffs alleged that on March 31, 2007, July 8, 2007, August 8, 2007, and August 9, 2007, respectively, [City] police officers arrested one of the plaintiffs with excessive force. The complaint alleged that during the course of each arrest, officers directed police dogs to "bite and hold" causing serious injuries to each plaintiff.

**\*3**  In *Follini v. City of Newburgh, et al.,* 08–CV–6347, [the] plaintiff alleged that on July 22, 2007, police officers employed by [the City], including [Defendant Palermo], falsely arrested [the] plaintiff with excessive

force, including pushing [the] plaintiff to the ground, repeatedly administering a taser while [the] plaintiff was on the ground, and administering pepper spray directly to [the] plaintiff's face.

In *Allen v. City of Newburgh[,] et al.,* 08–CV–6771, the plaintiff alleged that on August 12, 2007, officers employed by [the City] arrested him with excessive force, causing injuries including loss of consciousness, shoulder dislocation, facial bruising, and muscle spasms.

In *Baynes v. City of Newburgh, et al.,* 08–CV–6442, [the] plaintiff alleged that on August 25, 2007, police officers employed by [the City], including [Defendant Palermo] and [Defendant Kelly], physically assaulted, maced, and tased[ ] both [the] plaintiff and additional arrestees who were not resisting arrest.

In *Fahey, et al. v. Lt. Peter Leach, et al.,* 08–CV–8280, [the] plaintiffs alleged that on September 30, 2007, multiple [City] police officers assaulted [the] plaintiffs at a gas station and at the police precinct.

In *Whitfield v. City of Newburgh, et al.,* 08–CV–8516, the deceased plaintiff, through his estate, alleged that on July 8, 2008, officers employed by [the City] administered a taser to [the] plaintiff and ordered a police dog to attack [the] plaintiff multiple times, causing his death.

(*Id.* ¶¶ 24–32 (italics omitted).) Plaintiff further alleges that the City "routinely reached settlement agreements" with the Plaintiffs in these cases. (*Id.* ¶ 33.) In particular, Plaintiff claims that *"Garcia* settled in 2008, *Bryant, Cooper* and *Baynes* settled in 2010, *Fahey* and *Allen* settled in 2011, and *Follini* settled in 2012." (*Id* .) Plaintiff further asserts that while the "amount of each settlement agreement [is] not publically available, upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value." (*Id.* ¶ 34.) Additionally, Plaintiff alleges, upon information and belief, that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (*Id.*)

Plaintiff alleges two other bases for the City's "notice of allegations of excessive force." (*Id.* ¶ 35.) Specifically, Plaintiff alleges that the City "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," on which date "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during

arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board." (*Id.*) Additionally, Plaintiff alleges that "[o]n August 1, 2013, Matrix Consulting Group published their Final Report entitled 'An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department–City of Newburgh, New York,' " (the "Matrix Report"). (*Id.* ¶ 36.) According to Plaintiff, the Matrix Report stated generally that "discipline guidelines and decisions are unstructured," noted that "assigning a specific investigator and requiring a formal report" was not "previously required," and stated that "only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well." (*Id.*)

**\*4** Finally, Plaintiff makes a number of general allegations regarding the City and Town. First, Plaintiff alleges that the "City of Newburgh and Town of Newburgh have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest." (*Id.* ¶ 40.) Plaintiff further alleges that the "municipalities are ... aware that such improper training has often resulted in a deprivation of civil rights," and that despite having such notice, "the municipalities have failed to take corrective action," which "caused the officers in the present case to violate plaintiff's civil rights." (*Id.*) Additionally, Plaintiff alleges that the City and Town "have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and despite such notice, "the municipalities have retained the individual defendants as police officers." (*Id.* ¶ 41.) Plaintiff also alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests," and that upon information and belief, "it was the policy and/or custom of defendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* at ¶¶ 42–43.) Furthermore, Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of defendant [City], believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated." (*Id.* at ¶ 44.) Plaintiff

concludes that "the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of [the City] to the constitutional rights of arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶ 45.)

*B. Procedural Background*

Plaintiff filed suit against the City, the City Police Officer Defendants, the Town, Defendant Ransom, and Defendant Nales on June 14, 2013. (*See* Dkt. No. 2.)[3] On January 9, 2014, the Court held a pre-motion conference with all Parties. (*See* Dkt. (minute Entry for Jan. 9, 2014).) Following that conference, Plaintiff submitted a letter explaining the basis for filing an amended complaint, and attaching his PAC. (*See* Dkt. No. 20.)[4] Plaintiff never formally moved to file his PAC, which contains all of the factual allegations in his Complaint, as well as additional allegations.

[3]  In June 2014, the Court so ordered a stipulation between Plaintiff and Defendant Nales to dismissal of the claims against that Defendant. (*See* Dkt. No. 35.)

[4]  Plaintiff's PAC also is filed as an attachment to Plaintiff's Memorandum of Law in Opposition, (*see* Dkt. No. 46 Ex. A), and as an attachment to an affidavit submitted by the City in connection with its Memorandum of Law, (*see* Dkt. No. 26 Ex. A).

**\*5** On May 23, 2014, the City moved to dismiss the claims against the City and the City Police Officer Defendants, and to oppose the filing of Plaintiff's PAC as to the claims against the City and the City Police Officer Defendants. (*See* Dkt. No. 25.) Similarly, the Town moved to dismiss the claims against the Town and Defendant Ransom, and to oppose the filing of Plaintiff's PAC as to the claims against the Town and Defendant Ransom. (*See* Dkt. No. 29.)

*II. Discussion*

*A. 12(b)(5) Motion To Dismiss*

The City of Newburgh moves to dismiss the claims against the City Police Officer Defendants for failure to serve, pursuant to Federal Rule of Civil Procedure 12(b)(5).

*1. Standard of Review*

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l. Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430–31, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano,* 604 F.3d 732, 752 (2d Cir.2010) (brackets and internal quotation marks omitted).

In deciding a Rule 12(b)(5) motion, the Court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *C3 Media & Mktg. Grp., L.L.C. v. Firstgate Internet, Inc.,* 419 F.Supp.2d 419, 427 (S.D.N.Y.2005) (internal quotation marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.,* No. 07–CV–10680, 2009 WL 859084, at \*3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to dismiss, consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." (brackets and internal quotation marks omitted)). For a plaintiff to satisfy his burden of proving adequate service, *see Mende v. Milestone Tech., Inc.,* 269 F.Supp.2d 246, 251 (S.D.N.Y.2003), "[c]onclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served," *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 658 (S.D.N.Y.1997), *aff'd,* 173 F.3d 844 (2d Cir.1999). Similarly, defective service is not cured or overcome "on the mere assertion that a defendant had actual notice." *Weston Funding, L.L.C. v. Consorcio G Grupo Dina, S.A. de C.V.,* 451 F.Supp.2d 585, 589 (S.D.N.Y.2006) (internal quotation marks omitted).

*2. Analysis*

The Parties agree that service was attempted as follows. "[A] summons addressed to each defendant was delivered to the City Clerk's office, 83 Broadway, Newburgh, N.Y. 12550" in August 2013. (Pl.'s Mem. 9.) Plaintiff asserts that this service was proper because 83 Broadway "is the usual and typical place to serve Newburgh officers," the process server Michael Root of Majestic Process Service, Inc. went to the police department at 55 Broadway, Newburgh, N.Y. 12550, and was told by a sergeant "that the place to serve Newburgh officers was 83 Broadway," and "Mr. Root asked

2015 WL 1379652

Ms. [Autumn] Resto, a paralegal at Newburgh City Hall, if she could accept service on behalf of the officer[s]," "she checked with a supervisor, read the documents, and agreed to accept service on behalf of the officers." (*Id.* at 9–10; *see also id.* Ex. C (Decl. of Michael Root) ("Root Decl.") ¶¶ 1, 3–7.)

**\*6** In support of its Motion To Dismiss, the City submitted an affidavit from Michelle Kelson, Corporation Counsel for the City of Newburgh. (*See* Aff. of Michelle Kelson (April 24, 2014) ("April 24 Kelson Aff.") ¶ 1 (Dkt. No. 27).) Ms. Kelson avers that she was notified that the City Clerk's office had received "several summons[es] and one copy of the verified complaint" for this case, and that there was "one summons for the City and one for each individual police officer." (*Id.* ¶ 2.) Ms. Kelson appended the documentation that that City Clerk's office received-seven summonses and one copy of the verified complaint. (*Id.* at Ex. A.) The City also submitted an affidavit from Ms. Resto, who averred:

> My instructions from the Corporation Counsel are to take whatever legal papers are given to me. I do not offer an opinion as to whether giving me these papers is proper service. I have no authority to accept service on behalf of an individual employee of the City of Newburgh. I have never been appointed an agent to accept service on behalf of any Newburgh employee.

(Aff. of Autumn Resto ("Resto Aff.") ¶ 3 (Dkt. No. 49).) In Reply, the City submitted a second affidavit from Ms. Kelson, who averred:

> Employees in my office, including Ms. Resto, have standing instructions to take legal papers delivered to this office. No one here, including myself, is authorized to accept service on behalf of any employee of the City of Newburgh. Pursuant to CPLR § 311(A) (3), the Corporation Counsel's office is a designated agent for receipt of process for the City but not its employees.

> No employee of the Corporation Counsel's office has been designated as an agent to receive[ ] process pursuant to CPLR § 318.

> The Corporation Counsel's office is on the second floor of City Hall located at 83 Broadway, Newburgh, New York.

It is a separate building from the police station which is located a few hundred yards away at 55 Broadway. No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business.

(Aff. of Michelle Kelson (June 17, 2014) ("June 17 Kelson Aff.") ¶¶ 2–4 (Dkt. No. 48).)

Under Federal Rule 4(e), Plaintiff could serve the City Police Officer Defendants pursuant to state law, *see* Fed.R.Civ.P. 4(e)(1), or by delivering a copy of the summons and of the Complaint to each individual personally, leaving a copy of each at each individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or by delivering a copy of each to an agent authorized by appointment or law to receive service of process, *See* Fed.R.Civ.P. 4(e)(2). The City argues, and Plaintiff does not contest, that service was not properly effected pursuant to Rule 4(e)(2). The summons and complaint were not delivered to each person individually, nor were they delivered to each individual's dwelling or usual place of abode. Finally, service was not effected by delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process; the evidence shows that Ms. Resto was not an agent authorized to receive service for the City Police Officer Defendants, nor does Plaintiff even dispute that fact. (Resto Aff. ¶ 3.)

**\*7** Thus, the question is whether the City Police Officer Defendants were properly served under state law, as is permissible under Federal Rule of Civil Procedure 4(e)(1). Section 308 of the New York C.P.L.R. ("CPLR") governs personal service upon natural persons, and provides that service may be effected

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing

2015 WL 1379652

the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, ... or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318[.]

N.Y. C.P.L.R. § 308. Again, service was not effected by personal delivery to the City Police Officer Defendants or by delivery at their dwelling places or usual places of abode, nor is there any evidence that Ms. Resto was an agent for service designated under CPLR § 318. Thus, the question is whether the City Police Officer Defendants were served by delivery of the summonses to a person of suitable age and discretion at their actual place of business and by mailing the summonses to the individuals at their last known residences or actual places of business. [5]

[5]     The Court notes that Plaintiff only asserts that service was proper pursuant to N.Y. C.P.L.R. § 308(2). (*See* Pl.'s Mem. 9–11 .)

Here, Plaintiff has failed to establish that the City Police Officer Defendants were served at their "actual place of business" pursuant to CPLR § 308(2). "A person's 'actual place of business' must be where the person is physically present with regularity, and that person must be shown to regularly transact business at that location." *Selmani v. City of New York,* 100 A.D.3d 861, 954 N.Y.S.2d 580, 581–82 (App.Div.2012); *see also Sajimi v. City of New York,* No. 07–CV–3252, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011) ("The term 'actual place of business' has been defined as a place where the defendant is regularly physically present or regularly transacts business."); *Varela v. Flintlock Const., Inc.,* 148 F.Supp.2d 297, 301 (S.D.N.Y.2001) ("Actual place of business is statutorily defined as any location that the defendant, through regular solicitation or advertisement, has held out as its place of business. For a location to be a person's actual place of business for service pursuant to CPLR § 308(2), that person must be shown to regularly transact business at that location." (citation and internal quotation marks omitted)). Plaintiff makes no such showing. Indeed, the only evidence submitted on this issue is from Ms. Kelson, who averred, "No police officers report to City Hall at the beginning or end of their shifts or receive their work assignments here. All police officers' place of business is the police department. The individual defendants in this case are not stationed at City Hall and, as to the performance of

their job duties, City Hall is just another location within the City to which they are occasionally dispatched for official police business." (June 17 Kelson Aff. ¶ 4.) Plaintiff has failed to meet his burden of proving that service was effected at Defendants' place of business. *See GMA Accessories, Inc. v. Solnicki,* No. 07–CV–3219, 2010 WL 3749213, at *4 (S.D.N.Y. Sept. 24, 2010) (noting that the plaintiff has the burden of showing service was made at the defendant's place of business and holding that the plaintiff failed to meet this burden when it failed to submit any evidence). [6] Accordingly, service was improper under New York law. *See Davis v. City of New York,* No. 07–CV–1395, 2008 WL 2511734, at *3 (S.D.N.Y. June 19, 2008) (holding that an attempt to effect service on individual police officers at the office of the city's corporation counsel was invalid because the "police precinct to which they report and where they conduct their business is their actual place of business" and the plaintiff "made no effort to serve the officers personally or at their actual residences"); *Moultry v. City of Poughkeepsie,* 154 F.Supp.2d 809, 812 (S.D.N.Y.2001) (holding that service was improper under New York law where the plaintiff tried to serve police officer defendants at the city chamberlain's office, and the defendants worked at police department headquarters, reported to work at headquarters at the beginning and end of each shift, and "[u]nless they [were] testifying in [c]ity [c]ourt, the officers ha[d] no official police business in [c]ity [h]all, and they [did] not work for or with the [c]ity [c]hamberlain"). Furthermore, even if Mr. Root went to the Police Department at 55 Broadway, was told by a sergeant to go to the City Attorney at 83 Broadway, and was told by Ms. Resto that she could accept service on behalf of the officers, as Mr. Root declared, service was still improper. (*See* Root Decl. ¶¶ 3–7.) *See Moultry,* 154 F.Supp.2d at 811–12 (holding that service on individual police officers at the city chamberlain's office was improper even though a clerk for the chamberlain accepted service on behalf of the individual police officers and "told the process server that he had come to the right place, and that she was empowered to accept personal service for the individual police officers"). [7]

[6]     Mr. Root's declaration that 83 Broadway is the usual and typical place to serve all Newburgh officers and employees, (Root Decl. ¶ 3), is the type of "conclusory statement[ ]" that is insufficient to carry the burden that service was adequate. *Doe v. Alsaud,* 12 F.Supp.3d 684, 687–88 (S.D.N.Y.2014) (internal quotation marks omitted).

Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)

2015 WL 1379652

[7]

Under New York law, when serving a *corporation*, a process server may rely on the representations of employees of the corporation with respect to who may accept service on the corporation's behalf. *See Melkzan Int'l Inc. v. Flavor Innovation Inc.,* 167 F.R.D. 634, 642 n. 6 (E.D.N.Y.1996). Here, however, Mr. Root was serving individuals and, indeed, not even serving them at their place of business.

**\*8** Additionally, when effecting service under state law, a plaintiff must, at the very least, serve a summons and notice. Specifically, "[i]f the complaint is not served with the summons, the summons shall contain or have attached thereto a notice stating the nature of the action and the relief sought, and ... the sum of money for which judgment may be taken in case of default." N.Y. C.P.L.R. § 305(b). Here, Plaintiff served a summons for the City and summonses for each of the six individual City Police Officer Defendants, but only one copy of the Complaint. (*See* April 24 Kelson Aff. Ex. A.) None of the summonses contained any notice of the claims. (*Id.*) Thus, at least five of the summonses served on the City Police Officer Defendants did not have attached or contain either a copy of the Complaint or notice of the claims, and therefore were invalid under New York law.

Next, Plaintiff argues that, if the Court found service to be improper, it "should be cognizant of the fact that, at the time of the filing of this case, Plaintiff was pro se" and therefore should be granted special leniency regarding procedural matters. (Pl.'s Mem. 11.) However, Plaintiff was pro se for only a very short portion of this case. Plaintiff filed his Complaint pro se on June 14, 2013. (Dkt. No. 2.) On August 21, 2013, Roberta D. Asher [8] entered a notice of appearance on behalf of Plaintiff. (Dkt. No. 4.)[9] Thus, when service was attempted on August 29, 2013, Plaintiff was represented by counsel. (Pl.'s Mem. Ex. D.) Therefore, the Court sees no reason to extend special solicitude to Plaintiff regarding his inadequate service on the basis of his temporarily pro se status. *Cf. Marchand v. Simonson,* 16 F.Supp.3d 97, 106–07 (D.Conn.2014) (noting that the court would "take[ ] into consideration [the] plaintiff's pro se status at the time he filed his amended complaint," but that because the plaintiff was represented at the time he filed opposition to a motion, the court "need not apply the liberal pro se construction in considering [the] plaintiff's opposition" (italics omitted)); *Neely v. RMS Residential Mortg. Solution, L.L.C.,* No. 12–CV–1523, 2013 WL 752636, at \*12 (E.D.N.Y. Feb. 26, 2013) ("Although the

[c]ourt liberally construed [the][p]laintiff's pro se [o]riginal [c]omplaint, since [the] [p]laintiff is now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)); *Eaves v. Strayhorn,* No. 09–CV–394, 2010 WL 2521449, at \*9 (S.D.Ohio June 15, 2010) ("[The] [p]laintiff cannot use the initial pro se filing to obscure the fact that he, with counsel, allowed the statute of limitations to run before re-filing his complaint." (italics omitted)); *Khan v. Abercrombie & Fitch, Inc.,* No. 01–CV–6163, 2003 WL 22149527, at \*10 (S.D.N.Y. Sept. 17, 2003) (refusing to allow a plaintiff to amend her complaint at a late stage of litigation despite her argument she should be afforded deference based on her pro se status, where she was pro se when the case was filed but "has been represented by counsel since the earliest stages of [the] action").

[8]

The Clerk of the Court is respectfully requested to change the name of the attorney appearing for Plaintiff from Stacy Nicole Baden to Roberta D. Asher, as indicated on the notice of appearance. (*See* Dkt. No. 4.)

[9]

Plaintiff's second counsel, David A. Zelman, entered a notice of appearance on Plaintiff's behalf on December 19, 2013. (Dkt. No. 18.)

**\*9** Prior to 1993, "the former Rule 4(j) ... provided that if service was not made within 120 days, and the serving party cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice ." *Zapata v. City of New York,* 502 F.3d 192, 195 (2d Cir.2007) (internal quotation marks omitted). Following the 1993 amendments, the relevant rule, now codified in Rule 4(m), states, "If a defendant is not served within 120 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m). Thus, the amendment provided "district courts [with] discretion to grant extensions even in the absence of good cause." *Zapata,* 502 F.3d at 196; *see also Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) ("[I]n 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120–day period even if there is no good cause shown." (internal quotation marks omitted)).

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 22 of 102
Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)
2015 WL 1379652

Here, Plaintiff has not shown good cause—or indeed even tried to argue that good cause existed, instead merely arguing that service was proper and that Plaintiff should get solicitude as he previously was pro se. (Pl.'s Mem. 9–11.) "Good cause is deemed to exist in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Ligon v. City of New York,* No. 12–CV–2274, 2013 WL 3502127, at *1 (S.D.N.Y. July 12, 2013) (internal quotation marks omitted). "[A]ttorney inadvertence or negligence does not establish good cause," nor does "ignorance of the law." *Novak v. Nat'l Broad. Co. Inc.,* 131 F.R.D. 44, 45–46 (S.D.N.Y.1990). "Additionally, a mistaken belief that service was proper does not establish good cause." *Bernstein v. Vill. of Piermont,* No. 11–CV–3677, 2012 WL 6625231, at *3 (S.D.N.Y. Dec. 20, 2012) (internal quotation marks omitted). The Court sees no basis for making a finding that there was good cause for Plaintiff's failure to timely serve the City Police Officer Defendants.

Thus, the only remaining question is whether, in the absence of good cause, the Court should exercise its discretion to grant an extension. Importantly, if the Court were to dismiss the claims against the City Police Officer Defendants, Plaintiff would not be able to bring the claims again because they would be time-barred. Because Section 1983 "does not provide a specific statute of limitations," "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir.2013). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Id.* The events giving rise to this suit occurred on June 17, 2010. (Compl. ¶ 10 (Dkt. No. 2); PAC ¶ 10.) Thus, the statute of limitations expired on June 17, 2013, three days after this suit was filed. (*See* Dkt. No. 2.) "Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice," there must be "sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." *Zapata,* 502 F.3d at 197 (footnote omitted).

**\*10** When courts are deciding whether to exercise their discretion to extend the service deadline in the absence of good cause, they are to consider the following factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service;

and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *E. Refractories Co. v. Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 506 (S.D.N.Y.1999). Regarding the first factor, as explained above, the applicable statute of limitations would bar the refiled action, so Plaintiff would be prejudiced if the Court declined to grant an extension. Though this factor weighs in favor of an extension, it "does not guarantee an extension for every case that may be time-barred if refiled." *Bunim v. City of New York,* No. 05–CV–1562 et al., 2006 WL 2056386, at *3 (S.D.N.Y. July 21, 2006) (internal quotation marks omitted). Therefore, the Court must consider the other factors. There are no indications that the City Police Officer Defendants have actual notice of the claims asserted or that they attempted to conceal the defect in service. However, there are also no allegations that these Defendants would be prejudiced if the Court granted an extension. *See Alvarado v. Am. Freightways, Inc.,* No. 04–CV–9536, 2005 WL 1467891, at *6 (S.D.N.Y. June 21, 2005) (holding that allowing service after the statute of limitations has expired does not, by itself, constitute prejudice). Here, because Plaintiff "would be time-barred from refilling and the defendants allege no prejudice if Rule 4(m) relief is granted, the balance of equities tips in favor of [Plaintiff]." *Id.; see also Gore v. RBA Grp., Inc.,* No. 03–CV–9442, 2009 WL 884565, at *7 (S.D.N.Y. Mar. 27, 2009) ("Since the statute of limitations would bar the plaintiff from re-filing his suit against [the defendant] and nothing in the record indicates that an extension of the time for service will prejudice the defendant, the balance of equities tips in favor of the plaintiff."). "Granting ... [P]laintiff[ ] a discretionary extension also furthers the principle that litigation should generally be resolved on the merits." *Alvarado,* 2005 WL 1467891, at *6. Therefore, the Court will grant Plaintiff 21 days from the date of this Opinion to properly serve the City Police Officer Defendants, or else face dismissal of his claims against these Defendants. However, no further extensions will be given, in the absence of good cause.

*B. 12(b)(6) Motion To Dismiss and Opposition to PAC*
Next, the City and Town move under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim under *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and the Town moves to dismiss the claims against the Town Police Officer Ransom. Additionally, the Defendants move that the Court deny Plaintiff's request to file his PAC.

*1. Standard of Review*

**\*11** Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed.R.Civ.P. 15(a)(2). However, " '[i]t is within the sound discretion of the district court to grant or deny leave to amend.' " *Barbata v. Latamie,* No. 11–CV–7381, 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012) (quoting *Green v. Mattingly,* 585 F.3d 97, 104 (2d Cir.2009)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). However, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002). "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991); *see also Alaska Laborers Emp'rs Ret. Fund v. Scholastic Corp.,* No. 07–CV–7402, 2011 WL 3427208, at *2 (S.D.N.Y. Aug.3, 2011) ("[A] court should not grant a plaintiff the right to amend [a complaint] when such amendment ... could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." (citations and internal quotation marks omitted)). The adequacy of the proposed amended complaint is judged by the same standard as that applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.; see also Gen. Elec. Capital Fin., Inc. v. Bank Leumi Trust Co. of N.Y.,* No. 95–CV–9224, 1999 WL 33029, at *5 (S.D.N.Y. Jan.21, 1999).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (second alteration in original) (citations omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to

raise a right to relief above the speculative level," *id.,* and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed." *Id.; see also Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2))).

**\*12** "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *see also Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir.2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences ."); *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.,* 737 F.3d 166, 176 (2d Cir.2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we ... accept all factual allegations in the complaint as true ...." (alterations and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court ... draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res ., Inc.,* 992 F.Supp.2d 302, 304 n. 1 (S.D.N.Y.2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir.2012)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 24 of 102
Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)
2015 WL 1379652

quotation marks omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (noting that the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citation omitted)).

*2. Analysis*

*a. Section 1983 Claims Against the City and Town*
Plaintiff brings claims under 42 U.S.C. § 1983 against the City and Town. "To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.,* 723 F.3d 399, 405–06 (2d Cir.2013). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell,* 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008); *cf. Salvatierra v. Connolly,* No. 09–CV–3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Apr.16, 2010); *Arnold v. Westchester County,* No. 09–CV–3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr.16, 2010) (dismissing a claim against the county because the complaint "[did] not allege the existence of an unconstitutional custom or policy"), adopted sub nom. *Arnold v. Westchester Cnty. Dep't of Corr.,* 2010 WL 3397372 (S.D.N.Y. Aug.15, 2010). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *see also Newton v. City of New York,* 566 F.Supp.2d 256, 270 (S.D.N.Y.2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (italics omitted); *see also Vassallo v. Lando,* 591 F.Supp.2d 172, 201 (E.D.N.Y.2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.' " *Davis v. City of New York,* 228 F.Supp.2d 327, 336 (S.D.N.Y.2002), *aff'd,* 75 F. App'x 827 (2d Cir.2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton,* 566 F.Supp.2d at 271; *see also City of Okla. v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle,* 200 F.Supp.2d 411, 427 (S.D.N.Y.2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

**\*13** A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York,* 705 F.Supp.2d 261, 276–77 (S.D.N.Y.2010) (citations omitted); *see also Roe,* 542 F.3d at 36 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida,* 375 F.3d 206, 226–27 (2d Cir.2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff also

must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle,* 471 U.S. at 824 n. 8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis in original)); *Roe,* 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." (quoting *Brown,* 520 U.S. at 404)); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York,* No. 06–CV–9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, of course, Plaintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief. Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), a complaint does not "suffice if it tenders naked assertion [s] devoid of further factual enhancement," *Iqbal,* 556 U.S. at 678 (alteration in original) (internal quotation marks omitted). Thus, to survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City,* 847 F.Supp.2d 573, 576 (S.D.N.Y.2012) (citing *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)). Put another way, mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details.

**\*14** Of the four categories among which a *Monell* plaintiff must establish, Plaintiff's allegations do not include the first two. Plaintiff does not allege that there was a formal policy calling for the use of excessive force, nor does he allege any

actions by government officials who were responsible for any offending policies. Rather, Plaintiff's allegations implicate the third and fourth categories-a consistent practice of use of excessive force, that supervisors were aware of and tolerated the use of excessive force, a failure to train officers in the use of force, and/or a failure to supervise officers with regard to their use of force when arresting suspects.

Plaintiff makes a number of general allegations against both the City and Town in his PAC. Plaintiff alleges that the event in question "was not an isolated incident," and, in fact, that the City and Town "have been aware for years (from lawsuits, notices of claim and complaints filed with the municipalities themselves and their police departments) that many of their police officers are insufficiently trained with respect to the laws and regulations regarding use of force during an arrest." (PAC ¶ 40.) Plaintiff further alleges that the municipalities are "aware that such improper training has often resulted in a deprivation of civil rights," and that "[d]espite such notice, the municipalities have failed to take corrective action." (*Id.*) Additionally, Plaintiff alleges that the City and Town "are also liable because they have been on notice that the defendant police officers lack the objectivity, temperament, maturity, and discretion to be members of their respective police departments," and retaining the police officers amounts to "gross negligence and deliberate indifference." (*Id.* ¶ 41.) Plaintiff further alleges that "upon information and belief, in 2010, Defendants had a policy or routine practice of using excessive force when effectuating arrests." (*Id.* ¶ 42.)

Plaintiff's PAC also contains allegations specifically against the City, apart from the allegations generally against the City and Town. First, Plaintiff alleges that the City "has a policy or practice of using excessive force when effectuating arrests, and fails to train and/or discipline its employees to prevent violations of arrestee's [sic] constitutional rights." (*Id.* ¶ 22.) Plaintiff also alleges that "upon information and belief, it was the policy and/or custom of [D]efendant City of Newburgh to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees." (*Id.* ¶ 43.) Plaintiff alleges that "as a result of the above described policies and customs, the officers, staff, agents and employees of [the City] believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated," and that these customs

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 26 of 102
Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)

2015 WL 1379652

and policies "demonstrate a deliberate indifference on the part of the policymakers of Defendant City of Newburgh to the constitutional rights of the arrestees and were the cause of the violations of Plaintiff's rights alleged herein." (*Id.* ¶¶ 44– 45.) By themselves, these general allegations are "conclusory, and therefore must be disregarded. *Simms v. City of New York,* No. 10–CV–3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept.28, 2011) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency) (citing *Iqbal,* 556 U.S. at 678–79), *aff'd,* 480 F. App'x. 627 (2d Cir.2012); *see also Triano v. Town of Harrison,* 895 F.Supp.2d 526, 535–37 (S.D.N.Y.2012) (holding that "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details" and collecting cases); *Duncan v. City of New York,* No. 11–CV–3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that New York City had a custom of making and tolerating false arrests and of using excessive force "[were] insufficient to state a claim of municipal liability under *Monell* "); *Moore v. City of New York,* No. 08–CV–8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar.2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence, are plainly insufficient." (internal quotation marks omitted)); *Bradley v. City of New York,* No. 08–CV–1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language- that the [c]ity 'fail[ed] to adequately train, discipline, and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees-is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the][p]laintiffs to be arrested without probable cause." (citation omitted)).

**\*15** The only remaining allegation against the Town is that it "was a municipal corporation," and "was the employer and supervisor" of Defendant Ransom. (PAC ¶ 8.) Therefore, Plaintiff alleges, the Town "was responsible for [Defendant Ransom's] training, supervision and conduct," as well as "for enforcing the regulations of the Town of Newburgh Police Department and for ensuring that Town of Newburgh police personnel obey the laws of the State of New York and of the United States." (*Id.*) This allegation would only support a claim for vicarious liability, and does not state a claim for municipal liability under *Monell. See City of Canton,* 489 U.S. at 385 ("Respondeat superior or vicarious

liability will not attach under § 1983." (italics omitted)); *Hughes v. Salerno,* No. 11–CV–9094, 2012 WL 6097775, at *4 (S.D.N.Y. Dec.5, 2012) ("*Monell* does not provide a cause of action for vicarious liability."). Therefore, Plaintiff's claim for municipal liability against the Town is dismissed and the Court denies Plaintiff's request to file his PAC with regard to this claim .[10]

[10]    In its Memorandum of Law in Support of its Motion To Dismiss, the Town argued that the Complaint and PAC "are devoid of factual allegations supporting the inference that the alleged policies actually exist." (Town's Mem. 6.) Though Plaintiff responded to the City's arguments regarding his *Monell* claims, he did not respond to the Town's arguments regarding municipal liability. (*See generally* Pl.'s Mem.) The Town argues in reply that "Plaintiff's failure to raise any argument in opposition to the Town's motion constitutes an abandonment of the claim, and as such, the claims against the Town must be dismissed." (Town of Newburgh and Sergeant William Ransom's Reply Br. in Further Supp. of their Mot. To Dismiss ("Town's Reply") 3 (Dkt. No. 50) (citing *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 724 (S.D.N.Y.2005)).) Though the Court dismisses Plaintiff's *Monell* claims against the Town on the merits, it alternatively holds that Plaintiff has abandoned this claim, as Plaintiff offered no response to the Town's arguments in support of its Motion To Dismiss the *Monell* claim. *See Baity v. Kralik,* —— F.Supp.3d ——, 2014 WL 5010513, at *16 (S.D.N.Y. Sept.30, 2014) (holding that the court "could find [the][p]laintiff to have abandoned any claim that *Monell* liability applies" when the plaintiff's memorandum in opposition made no mention of the defendant's arguments on that issue, and collecting cases); *Chamberlain v. City of White Plains,* 986 F.Supp.2d 363, 392 (S.D.N.Y.2013) (holding, in the context of a § 1983 *Monell* claim, that "[a] court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

Plaintiff does offer more specific allegations in support of his two theories of *Monell* liability against the City. For example, Plaintiff alleges that the City "has an extensive history of lawsuits and other complaints alleging the use of excessive

force by its employees." (PAC ¶ 23.) As noted, Plaintiff specifically identifies nine lawsuits he represents were filed in the five years before the incident in question, at least five of which "involved allegations of unnecessary and excessive dog bites." (*Id.; see also id.* ¶¶ 24–32.) Plaintiff alleges that the "City of Newburgh routinely reached settlement agreements with the plaintiffs in the above-mentioned cases," and further alleges that "upon information and belief, most, if not all, of the above-mentioned cases settled for amounts well in excess of nuisance value." (*Id* . ¶¶ 33–34.) Plaintiff also alleges "[u]pon information and believe," that "the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (*Id.* ¶ 34.)

Additionally, Plaintiff alleges that the City of Newburgh "was also on notice of allegations of excessive force by its officers through public forums, including on February 11, 2008," when "the Newburgh City Council held a public comment session, at which numerous residents testified regarding the excessive and unnecessary use of police dogs during arrests, as well as additional perceived problems within the Police Department, including the lack of a civilian review board." (*Id.* ¶ 35.)

Finally, Plaintiff alleges that Matrix Consulting Group published its final report, titled "An Assessment of the Culture, Community Relations, Use of Force, Training, Disciplinary Practices of the Police Department–City of Newburgh, New York," on August 1, 2013. (*Id.* ¶ 36.) According to Plaintiff,

> **\*16** Among the many findings and recommendations in the report is that discipline guidelines and decisions are unstructured-the report therefore recommended, *inter alia,* that the Chief should direct improvements to the Internal Affairs process, including assigning a specific investigator and requiring a formal report, which was not previously required. In addition, only 43% of sworn officers who responded to the polling in the report agreed that they received appropriate training to do their job well. This report's findings support the proposition that [the City's] training and discipline procedures are inadequate to prevent violations of arrestees['] constitutional rights.

(*Id.*)

These allegations fail to plausibly state that there is a City practice of using excessive force during arrests, generally, or using police dogs so consistent and widespread as to constitute a custom or usage. Under the third category of *Monell* claims, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Brown,* 520 U.S. at 404, which is to say, that it is a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *see also Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"); *Jeffes v. Barnes,* 208 F.3d 49, 61 (2d Cir.2000) (discussing *Jett* ). Therefore, a plaintiff may establish municipal liability by demonstrating that a municipality "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau,* 467 F.Supp.2d 308, 314 (E.D.N.Y.2006). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik,* 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law' " (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation marks omitted))); *Davis* 228 F.Supp.2d at 346 (explaining that "[w]idespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; well-settled means that the [unconstitutional acts in question] have achieved permanent, or close to permanent, status."). As the Supreme Court emphasized in *Monell,* Congress enacted § 1983 to impose liability on municipalities "because of the persistent and widespread discriminatory practices of state officials," and out of recognition that such practices could become "so permanent and well settled as to constitute a

'custom or usage' with the force of law." *Monell,* 436 U.S. at 691 (citation and internal quotation marks omitted).

**\*17** The lawsuits cited by Plaintiff in the PAC, even when combined with the allegations regarding the public forum comments and the Matrix Report, are insufficient to plausibly support an inference of a widespread custom. To begin, even if the civil complaints involved comparable conduct to that alleged here, "none result[ed] in an adjudication of liability." *Walker v. City of New York,* No. 12–CV–5902, 2014 WL 1259618, at \*3 (S.D.N.Y. Mar.18, 2014); *see also Collins v. City of New York,* 923 F.Supp.2d 462, 479 (E.D.N.Y.2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability," because they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand, or "involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"); *accord Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir.1985) (holding, even pre-*Twombly* and *Iqbal,* that allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed, without more, indicates nothing," as "[p]eople may file a complaint for many reasons, or for no reason at all," and "[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist"); *Rikas v. Babusch,* No. 13–CV–2069, 2014 WL 960788, at \*3 (N.D.Ill. Mar.12, 2014) ("[T]he fact that prior lawsuits were filed against [one of the defendants accused of excessive force] does not support [the plaintiff's] *Monell* claim nor does it evidence a widespread municipal practice."); *Xian Ming Wu v. City of New Bedford,* No. 12–CV–11648, 2013 WL 4858473, at \*2 (D.Mass. Sept.11, 2013) (holding that a complaint's reference to two other similar complaints is insufficient to survive a motion to dismiss). And though numerous cases, discussed below, look to unsubstantiated allegations in lawsuits and complaints by residents to establish municipal liability, these cases do so through the framework of deliberate indifference failure-to-train and failure-to-supervise cases and their reasoning is therefore not persuasive here. *See e .g., Walker,* 2014 WL 1259618, at \*3 (holding that failure-to-train cases, such as *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), are inapposite to *Monell* claims alleging a widespread custom). Simply put, the fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions

of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom. *Walker,* 2014 WL 1259618, at \*1–3 (holding that the allegation that ten similar complaints were filed against New York City in the ten preceding years was insufficient to state a claim because the "paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim"). (See also Aff. of David L. Posner ("Posner Aff.") Ex. D (Matrix Report), at 59 (Dkt. No. 26) (noting that the City made "a total of 2,478 arrests in 2012").) [11]

[11]     The City puts forward several documents not attached to Plaintiff's Complaint or PAC, specifically, a redacted settlement stipulation from one of the cases Plaintiff refers to in the PAC, releases signed by some plaintiffs in the cases referred to by Plaintiff in the PAC, and an excerpt of the Matrix Report. (*See* Aff. of David L. Posner ("Posner Aff.") Ex. B–D (Dkt. No. 26).) The Court considers the Matrix Report because it is incorporated by reference into the PAC, as Plaintiff specifically cites to the Report and its findings. *See Wilson v. Med. Unit Officials at George R. Vierno Ctr. Jail at 09–09 Hazen St.,* No. 10–CV–1438, 2011 WL 6780934, at \*2 (E.D.N.Y. Dec. 27, 2011) ("Because they are explicitly cited in [the] plaintiff's complaint, the court shall deem the ultrasound reports incorporated by reference and shall consider them in assessing [the] defendants' motion to dismiss."); *Harrison v. Metro. Life Ins. Co.,* 417 F.Supp.2d 424, 431 (S.D.N.Y.2006) (considering a document outside the complaint where the plaintiff "cites to" the document in her complaint and specifically quoted from one part of it). Furthermore, Plaintiff does not dispute the veracity of the Report provided by the City.
The other documents provided by Defendants, however, are not material to the Court's determination of the City's Motion, so the Court need not assess whether they are properly considered.

**\*18** Additionally, in Plaintiff's Memorandum in Opposition, he argues that the City has a police force of 75, and that Plaintiff alleges that there were at least 15 to 20 police officers

surrounding him, meaning that "Plaintiff's allegations, taken as true, would mean that at least one-fifth of the entire City of Newburgh Police Department was present for the assault of Plaintiff, and both tolerated the abuse of plaintiff's constitutional rights and did not fear retribution." (Pl.'s Mem. 8.) However, the size of the City's police force is not a fact alleged in the Complaint or PAC, and the Court cannot consider additional factual allegations contained in Plaintiff's papers. *See Paul v. Bailey,* No. 09–CV–5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[A]s a general rule, ... courts should not consider factual allegations made for the first time in opposition papers."); *Friedman v. MiraMed Revenue Grp., L.L.C.,* No. 12–CV–5328, 2012 WL 5992163, at *3 (S.D.N.Y. Nov. 19, 2012) ("[T]he [c]ourt declines to consider the additional facts set forth in [the] plaintiff's opposition papers that are not in his complaint."). [12] In any event, the allegation that 15 to 20 officers were present during Plaintiff's arrest does nothing to establish that the alleged excessive force happened as part of a well-established practice or custom. Instead, this allegation only supports, at best, a single instance where numerous officers allegedly used excessive force. This is not an akin to establishing a custom of use of excessive force. *See Tuttle,* 471 U.S. at 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* [.]"); *Triano,* 895 F.Supp.2d at 532 ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and internal quotation marks omitted)). For the above reasons, Plaintiff fails to state a *Monell* claim for relief against the City of Newburgh on the theory that the City of Newburgh has a custom of using excessive force during arrests so widespread to have the force of law.

[12]    "[W]here a pro se plaintiff has submitted other papers to the [c]ourt, such as legal memoranda, the [c]ourt may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Sommersett v. City of New York,* No. 09–CV–5916, 2011 WL 2565301, at *3 (June 28, S.D.N.Y.2011) (italics and internal quotation marks omitted). Here, however, Plaintiff was not pro se when he submitted the PAC, so the Court does not have an obligation read the PAC with the special solicitude due to pro se plaintiffs. *See Neely,* 2013 WL 752636, at *12 ("Although the [c]ourt liberally construed [the][p]laintiff's pro se [o]riginal [c]omplaint, since [the][p]laintiff is

now represented by counsel, the [c]ourt has no obligation to construe the [p]roposed [a]mended [c]omplaint liberally[.]" (brackets, italics, and internal quotation marks omitted)).

The Court next considers whether Plaintiff has adequately pleaded a claim for relief against the City under a deliberate indifference theory, the fourth category of *Monell* claims. "*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007) (citing *Jett,* 491 U.S. at 737); *see also City of Canton,* 489 U.S. at 394–95 (O'Connor, J., concurring in part and dissenting in part) ("Where ... a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution."); *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 129 (2d Cir.2004) (citing *City of Canton* for the proposition that a "municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training"); *Johnson,* 2011 WL 666161, at *3 (explaining that a plaintiff may demonstrate the existence of a custom or policy by alleging "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees"). However, such a failure to act, train, or supervise can constitute a municipal custom "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds,* 506 F.3d at 192 (citing *City of Canton,* 489 U.S. at 390); *see also Marte v. N.Y.C. Police Dep 't,* No. 10–CV–3706, 2010 WL 4176696, at *2 (S.D.N.Y. Oct. 12, 2010) (noting that a municipality's failure to train its employees can support § 1983 liability only where " 'the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.' " (quoting *City of Canton,* 489 U.S. at 388)).

**\*19** In *City of Canton,* the Supreme Court established the "deliberate indifference" standard in the context of a claim for failure to train, but "the stringent causation and culpability requirements set out in that case have been applied

to a broad range of supervisory liability claims," including claims for failure to supervise and failure to discipline. *Reynolds,* 506 F.3d at 192 (citing *Amnesty Am.,* 361 F.3d at 127 (failure to supervise); *Berry v. City of Detroit,* 25 F.3d 1342, 1354 (6th Cir.1994) (failure to discipline)); *see also Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (noting that "deliberate indifference" is a "stringent standard" requiring "proof that a municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)). [13]   In this context, the Supreme Court has held that "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983.' " *Amnesty Am.,* 361 F.3d at 126 (quoting *City of Canton,* 489 U.S. at 388); *see also Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995) (holding that a plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the [unconstitutional action by its employees], exhibited deliberate indifference"); *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 871 (2d Cir.1992) (stating that municipal liability lies where the subordinate's misconduct is "so manifest as to imply the constructive acquiescence of senior policy-making officials").

[13]     The Supreme Court has emphasized that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 131 S.Ct. at 1359; *see also Tuttle,* 471 U.S. at 822–23 ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell."* ).

Plaintiff has attempted to allege two types of deliberate indifference claims: failure to train and failure to supervise/ discipline. Indeed, "[a] § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann,* 72 F.3d at 1049. To establish deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must "show that the need for more or better supervision to protect against constitutional violations was obvious," which may be established "by showing that there were repeated complaints of civil rights violations," and "deliberate indifference may be inferred if the complaints

are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers,* No. 11–CV–6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept.27, 2012) (internal quotation marks omitted). The Second Circuit has set out three requirements that must be met before a municipality may be liable under either theory: first, that a policymaker knows " 'to a moral certainty' " that his or her employees will confront a given situation; second, " 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;' " and third, " 'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.' " *Jenkins v. City of New York,* 478 F.3d 76, 94 (2d Cir.2007) (quoting *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992)).

**\*20**  Applying these principles to this case, the Court concludes that Plaintiff has sufficiently alleged that the need for more or better supervision was obvious. There is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be. The City asserts that the complaints relied on by Plaintiff regarding excessive force incidents that occurred between 2005 and 2008 are too sparse and too remote to support an inference of obviousness. (Def.'s Mem. of Law in Supp. of Dismissal ("City's Mem.") 10 (Dkt. No. 28); Newburgh's Reply Br. in Supp. of 12(b)(5) and 12(b)(6) Dismissal ("City's Reply") 5–6 (Dkt. No. 47).) However, the City provides no authority to support the notion that a plaintiff must cite a certain number of complaints in a certain time period to make out a *Monell* claim. Indeed, the case law supports Plaintiff's position here. For example, in *McCants v. City of Newburgh,* No. 14–CV–556, 2014 WL 6645987 (S.D.N.Y. Nov.21, 2014), *clarified on denial of reconsideration,* 2014 WL 7398910 (S.D.N.Y. Dec.9, 2014), the court denied a motion to dismiss a *Monell* claim on deliberate indifference grounds. In that case, the court found it sufficient that the plaintiff's pleadings referred to other lawsuits demonstrating that the municipality "was on notice to the possible use of excessive force by its police officers on seventeen different occasions." *Id.* at *4. There, the seventeen excessive force claims were made "in the seven-year time period prior to" the incident resulting in the suit. *Id.* In *Farrow v. City of Syracuse,* No. 12–CV–1401, 2014 WL 1311903, (N.D.N.Y. Mar. 31, 2014), the Northern District of New York noted in dicta that were the court deciding a motion to dismiss,

Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)

2015 WL 1379652

the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient state a plausible failure to train case. *Id.* at *8 n. 7; *see also Shepherd,* 2012 WL 4477241, at *10 (holding, on a motion to dismiss where the complaint relied on a Department of Justice ("DOJ") report finding evidence of unconstitutional activity in 2008 to support a claim that such a custom existed in 2010, that the court "[was] obligated to draw all reasonable inferences in [the] [p]laintiff's favor and thus [took] as true for purposes of th[e] motion practice the assertion that the deficiencies found by the DOJ existed at the time of the alleged assault against [the][p]laintiff"). The Court does not see any material difference between the seventeen excessive force claims in seven years in *McCants,* the fifteen excessive force claims in five years in *Farrow,* [14] and the thirteen claims alleged in nine lawsuits in five years here. [15] While there may be questions about the quantum of proof Plaintiff has regarding these other complaints at summary judgment, Plaintiff's allegations allow the Court to plausibly infer that the City was on notice that the police officers were using excessive force in making arrests. *See Osterhoudt v. City of New York,* No. 10–CV–3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) ("Mere allegations have little, if any, probative force and by themselves would hardly prevent summary judgment. But in the context of Rule 12, where plausibility is in issue, it is hard to ignore these cases, which suggest that the conduct complained of is not limited to the four corners of [the plaintiff's] complaint.").

[14]     Indeed, the fifteen cases referred to in *Farrow* were *filed* against the city in the preceding five years, so the underlying claims likely occurred even outside that timeframe.

[15]     Unlike in cases such as *Perez v. N.Y.C. Dep't of Corr.,* No. 10–CV–2697, 2012 WL 3704744 (E.D.N.Y. Aug.27, 2012), there is no doubt here that the City knew about the complaints. *Id.* at *3 (reasoning that "[w]hile a court may consider complaints made against a municipality and its response to them to determine whether the municipality acted with deliberate indifference," the plaintiff's claims must be dismissed because the "plaintiff does not allege who, if anyone, at [the department of corrections] and/or the [c]ity knew about the alleged incidents, or how and through whom these entities may have responded to the alleged incidents").

Additionally, the Court concludes that it can consider all of the other lawsuits cited by Plaintiff, not just the ones involving police dogs, as Plaintiff alleges a custom involving a broad array of unconstitutionally excessive force during arrest, resulting not only in him being attacked by a police dog, but also being punched and beaten severely during his arrest. (*See* PAC ¶¶ 14–16.)

**\*21** However, an allegation of numerous claims of excessive force by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise. Instead, a plaintiff must allege that "meaningful attempts to investigate repeated claims of excessive force are absent." *Hart v. City of Binghamton,* No. 10–CV–1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012) (internal quotation marks omitted). Put another way, "[f]or deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Id.* (internal quotation marks omitted); *see also Lawrence v. City of Rochester,* No. 09–CV–6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb.6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (internal quotation marks omitted)); *Aretakis v. Durivage,* No. 07–CV–1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same). Here, Plaintiff does not offer any allegations plausibly establishing that the City failed to investigate the listed complaints of excessive force. The *only* allegation Plaintiff makes regarding the City's response to the other lawsuits and the complaints made in the public forum is that "[u]pon information and belief, the officers that were the subject of these lawsuits were not disciplined by [the City] for their actions." (PAC ¶ 34.) This is insufficient.

There are two ways to plausibly plead deliberate indifference with respect to failure to supervise/discipline. First, a plaintiff may plead (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that the municipality *consistently failed to investigate* those allegations. Second, a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality *consistently failed to discipline* those involved. However, what Plaintiff alleges here is (1) that there was a pattern of allegations of or complaints about similar unconstitutional activity and (2) that those allegedly involved were not disciplined. This does not plausibly plead a claim for deliberate indifference. There is no basis for the

Court to conclude that Plaintiff plausibly alleged that the past conduct was *actually* unconstitutional, and therefore it would not be deliberately indifferent of the City to fail to punish police officers for conduct that was not improper or that they did not commit. Indeed, to plausibly allege a deliberate indifference failure to discipline claim under the second strategy, Plaintiff must allege a consistent pattern of a failure to discipline unconstitutional action. *See Posr v. City of New York,* 835 F.Supp. 120, 125 (S.D.N.Y.1993) (holding, in granting a motion to dismiss a failure to discipline case, that while "[i]t is true that a consistent failure to discipline can give rise to a finding that a municipality has a policy of not disciplining," "[n]o court ... has ever held that a municipality is required to discipline every officer upon a finding of wrongdoing"), *aff'd,* 22 F.3d 1091 (2d Cir.1994); *see also Hart,* 2012 WL 1565085, at *4 (holding, in the context of a summary judgment motion, that "while [the][p]laintiff [had] cited to numerous cases concerning citizen complaints of the use of excessive force," he "[had] not provided evidence tending to indicate that any [of] the [ ] complaints were of substance," thus the "failure to find any of the officers engaged in excessive force alleged in the complaints does not mean *a fortiori,* that the [c]ity was deliberately indifferent to the well being of its citizens"); *cf. Bertuglia v. City of New York,* 839 F.Supp.2d 703, 738 (S.D.N.Y.2012) (denying a motion to dismiss a deliberate indifference claim where "[t]he plaintiffs have pleaded that the [c]ity has a longstanding, de facto policy of never disciplining prosecutors who commit specified types of prosecutorial misconduct and not otherwise training them to avoid misconduct"). Finally, Plaintiff's allegation that the Matrix Report concluded that the City's "discipline guidelines and decisions are unstructured" and recommended that certain changes be made is insufficient to plausibly plead that there was a consistent failure to investigate allegations of misconduct or punish incidents of unconstitutionally excessive force to meet the stringent standard of deliberate indifference. In particular, Plaintiff alleges no causal link between the allegedly "unstructured" discipline guidelines and the unconstitutional practice of not investigating allegations of use of excessive force. For the above reasons, the Court holds that Plaintiff has not plausibly alleged a failure to supervise/discipline case against the City.

**\*22** The Court now turns to the additional requirements for a failure to train claim. To allege a failure to train claim, a plaintiff must plausibly allege a specific deficiency in the municipality's training. In *Amnesty America,* the Second Circuit suggested that to state a claim for a municipality's failure to train its employees, a plaintiff "need only plead

that the city's failure to train caused the constitutional violation," because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." 361 F.3d at 130 n. 10. However, since *Twombly* and *Iqbal,* "courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Simms,* 2011 WL 4543051, at *2 n. 3 (collecting cases), *aff'd sub nom. Simms v. City of New York,* 480 F. App'x 627 (2d Cir.2012); *see also Simms,* 480 F. App'x at 631 n. 4 ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (citation omitted)); *Santos,* 847 F.Supp.2d at 577 ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice." (citation omitted)). To state a claim for municipal liability based on failure to train, Plaintiff therefore must allege facts that support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries. *See Acosta v. City of New York,* No. 11–CV–856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where plaintiff merely alleged that the city "failed to train its police officers as to display a deliberate indifference," because plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused ... [the] alleged violations of [the] plaintiff's rights"); *Simms,* 2011 WL 4543051, at *2 (dismissing failure to train claim where there was "not enough factual material in the [c]omplaint for the court to reasonably infer that the police misconduct [the plaintiff] allege [d] was the result of anything other than individual acts of the arresting officers"); *Johnson,* 2011 WL 666161, at *4 (holding that a complaint that "contain[ed] only an unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" could not withstand a motion to dismiss because the plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program" (internal quotation marks omitted)); *Araujo v. City of New York,* No. 08–CV–3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where the plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct").

**\*23** Other than Plaintiff's boilerplate assertions discussed above, the sole fact Plaintiff pleaded with respect to the City's failure to train its officers is that, "only 43% of sworn officers who responded to the polling in the [Matrix Report] agreed that they received appropriate training to do their job well." (PAC ¶ 36.) This factual allegation is just not enough to nudge Plaintiff's claim from possible to plausible. The polling data is not specific as to training regarding the use of excessive force. Nor has Plaintiff pleaded any facts suggesting that an alleged training deficiency *caused* his constitutional injury, for example by identifying "procedural manuals or training guides" or by "highlight[ing] relevant particular aspects of police training or supervision." *Marte,* 2010 WL 4176696, at \*3. The allegation that, three years after the incident in question took place, only 43% of officers who responded to polling stated that they received appropriate training to do their job well does not allow the Court to plausibly conclude that, at the time of the incident, the City's training as to the use of force during arrest was insufficient and that that insufficiency led to Plaintiff's injuries. *See Hunter v. City of New York,* 35 F.Supp.3d 310, 325–26 (E.D.N.Y.2014) (dismissing a *Monell* failure to train claim because the pleadings did not plausibly state a claim that there was "a specific deficiency in the city's training program and that the deficiency is closely related to [the plaintiff's] ultimate injury, such that it actually caused [the plaintiff's] constitutional deprivation" (internal quotation marks omitted)); *Triano,* 895 F.Supp.2d at 539 (dismissing a *Monell* failure to train claim where the plaintiff "merely alleged that the [t]own fail[ed] to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train"); *Khanukayev v. City of New York,* No. 09–CV–6175, 2012 WL 3538729, at \*4 (S.D.N.Y. Aug.13, 2012) (dismissing a failure to train claim where "the complaint [does not] ... allege ... the manner in which there was a failure to train"); *Doe v. City of New York,* No. 09–CV–9895, 2012 WL 2900483, at \*2 (S.D.N.Y. July 2, 2012) ("The [a]mended [c]omplaint contains no facts elaborating on (or even theorizing as to) the defective nature of the NYPD training program, let alone an allegation as to how a defect in training or supervision caused her harm."); *Simms,* 2011 WL 4543051, at \*3 ("While this assertion does specify what type of training the officers lacked, it does not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency."); *Johnson,* 2011 WL 666161, at \*4 (dismissing a failure to train claim where plaintiff did not plead "any facts that plausibly allege[d] a specific deficiency in the training or supervision program that accounts for deprivation of [his] constitutional rights" and "[did] not identify procedural manuals or training guides, nor [did he] highlight relevant particular aspects of police training or supervision" (internal quotation marks omitted)); *Brown v. City of New York,* No. 09–CV–2337, 2010 WL 4077925, at \*2 (S.D.N.Y. Oct.13, 2010) (dismissing a failure to train claim where the plaintiff "[did] not allege any ... specific deficiencies in the officers' training, nor [did] he allege any facts from which the court could infer that such ... deficiencies existed"); *Williams v. City of New York,* 690 F.Supp.2d 338, 345–46 (S.D.N.Y.2010) (dismissing a plaintiff's failure to train claim where the plaintiff's complaint "once mention[ed] the [c]ity's inadequate training program," but did "not set forth a single factual allegation relating to the program"). For the foregoing reasons, Plaintiff fails to state a claim against the City under *Monell.* However, the Court will give Plaintiff one last chance to plead a *Monell* claim against the City.

### b. Claims against Defendant Ransom

**\*24** Plaintiff's PAC contains the following allegation against Defendant Ransom. The City Police Officers "gave chase to [P]laintiff in a number of police vehicles," and "[a]t some point soon thereafter, and prior to Plaintiff stopping his vehicle," Defendant Ransom joined the chase. (PAC ¶ 12.) That is the only allegation specifically referring to Defendant Ransom. However, the Complaint and PAC also contain a number of allegations against "the defendant police officers," a term defined in the Complaint as the City Police Officer Defendants and unknown police officers 1–5, (Compl.¶ 4), and not defined in the PAC. Plaintiff alleges that, after he pulled over, Defendant Maguire "opened the truck door and ordered his police dog to attack [P]laintiff," and Plaintiff was attacked by the police dog and punched by Defendant Maguire. (PAC ¶ 14.) Plaintiff further alleges that although he was "not resisting the police officers in any way," he was "dragged from the truck and thrown to the ground by [Defendant Maguire] and additional officers," and was "thereupon beaten severely by the defendant officers, who at this point were laughing and telling the dog what a good job he had done." (*Id.* ¶ 15.) Then, after Plaintiff was handcuffed and secured, the "police dog was again ordered to attack" Plaintiff. (*Id.* ¶ 16.) Additionally, Plaintiff alleges that "the defendant police officers are liable for failing to intervene ... because (1) the officers had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officers' position would have known that the plaintiff's constitutional

rights were being violated, and (3) the officers did not take reasonable steps to intervene." (*Id.* ¶ 39.)

In response to the Town's Motion To Dismiss, Plaintiff argues that Defendant Random "does not deny being present at the scene," and cites to Defendant Ransom's testimony at Plaintiff's criminal trial to establish his presence at the scene. (Pl.'s Mem. 11–13.) Plaintiff then argues that this is sufficient at the pleading stage because Plaintiff has sufficiently alleged that Defendant Ransom was present and Plaintiff need not plead the "specific involvement of each and every officer while he was being assaulted and bitten by a police dog [.]" (*Id.* at 12.) However, there is simply no basis for the Court to consider the testimony given at trial in the manner that Plaintiff would like. This testimony, attached as Exhibit B to Plaintiff's Memorandum in Opposition, is not attached to the PAC, nor is it integral to the PAC or incorporated by reference into the PAC. *See Rosenblum v. Thomson Reuters (Markets) L.L.C.,* 984 F.Supp.3d 141, 146 (S.D.N.Y.2013) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, ... documents incorporated by reference in the complaint [, and] a document, not incorporated by reference, where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." (footnotes and internal quotation marks omitted)). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents[.]" *Bill Diodato Photography L.L.C. v. Avon Products, Inc.,* No. 12–CV–847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks omitted). "[T]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Id.* (internal quotation marks omitted). Here, Plaintiff clearly has notice of the document, since he is the one who submitted it to the Court. *See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 124 (S.D.N.Y.2010) ("[T]here is no dispute that, pursuant to the first prong of the integrality test, plaintiffs had 'actual notice' of the extraneous information since they enclosed the extrinsic documents with their opposition brief."). The Complaint and PAC make no reference whatsoever to Defendant Ransom's testimony at Plaintiff's criminal trial, and thus do not incorporate this document by reference. Moreover, there is no evidence that Plaintiff relied on this trial testimony in framing the Complaint or PAC. And, the fact that it was Plaintiff, himself, who submitted this document as an attachment to his opposition memorandum, counsels against the Court considering it. *Id.* at 122–23 (noting that "[c]ourts in [the Second] Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss" and collecting cases).

**\*25** Finally, the Court "may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint." *Munno v. Town of Orangetown,* 391 F.Supp.2d 263, 268 (S.D.N.Y.2005). However, even if this trial testimony is appropriate for judicial notice, the Court would consider it "only to establish [its] existence and legal effect, or to determine what statements [it] contained not for the truth of the matters asserted." *Liang v. City of New York,* No. 10–CV–3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (alterations and internal quotation marks omitted) (quoting *Twine v. Four Unknown N.Y. Police Officers,* No. 10–CV–6622, 2012 WL 6184014, at *7 (S.D.N.Y. Dec. 12, 2012)); *see also Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) ("If the court takes judicial notice, it does so in order to determine *what* statements [the document] contained —but *again not for the truth of the matters asserted.*" (internal quotation marks omitted)).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted). There are two ways a plaintiff can establish personal involvement of a police officer in the use of excessive force. "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Vesterhalt v. City of New York,* 667 F.Supp.2d 292, 297 (S.D.N.Y.2009). Additionally, to be liable the officer must "observe[ ] or ha[ve] reason to know that an individual's constitutional right has been violated[.]" *Brooks v. County of Nassau,* –––– F.Supp.3d ––––, 2014 WL 5093277, at *5 (E.D.N.Y. Oct.9, 2014) (internal quotation marks omitted).

Plaintiff does not allege that Defendant Ransom directly participated in the assault, therefore the question is whether he sufficiently alleges that Defendant Ransom was present and failed to intercede, even though he had a reasonable opportunity to do so. First, Plaintiff's allegation that all "the

defendant police officers are liable for failing to intervene ... because (1) the officers had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officers' position would have known that the plaintiff's constitutional rights were being violated, and (3) the officers did not take reasonable steps to intervene" is a conclusory allegation that does nothing more than provide a formulaic recitation of the elements of a cause of action, and is therefore not entitled to the presumption of truth. (PAC ¶ 39.) *See Iqbal, 556 U.S. at 678* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... In keeping with [this] principle[ ] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *Twombly, 550 U.S. at 555* ("[A] formulaic recitation of the elements of a cause of action will not do."). To state a claim against each individually named defendant, Plaintiff must include allegations as to that defendant. *See Ochre L.L.C. v. Rockwell Architecture Planning & Design, P.C., No. 12–CV–2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012)* ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."), *aff'd, 530 F. App'x 19 (2d Cir.2013); Appalachian Enters., Inc. v. ePayment Solutions, Ltd., No. 01–CV–11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec.8, 2004)* ("A plaintiff fails to satisfy *Rule 8,* where the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." (alterations and internal quotation marks omitted)).

**\*26** In a claim for excessive force or for failure to intervene with respect to excessive force, courts in the Second Circuit have allowed plaintiffs to use a flexible approach, recognizing the difficulty that plaintiffs may have in pleading who did what. For example, "[a] plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. Rossi, 275 F.Supp.2d 463, 474 (S.D.N.Y.2003), aff'd sub nom. Jeffreys v. City of New York, 426 F.3d 549 (2d Cir.2005).* However, this does not eliminate Plaintiff's burden to allege facts supporting a plausible inference of personal involvement by Defendant Ransom. For example, it is sufficient to allege "who was present during the assaults, and that these defendants *either* directly participated in the excessive force *or* failed to intervene." *Snoussi v. Bivona, No. 05–CV–3133, 2010 WL 3924255, at *3 (E.D.N.Y. Feb. 17, 2010)* (emphasis added), *adopted by 2010 WL 3924683 (E.D.N.Y. Sept.29, 2010).* But,

a plaintiff fails to state a claim for which relief can be granted if he does not make any factual allegations that any officer "was present" or "had an opportunity to intercede." *K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F.Supp.2d 197, 207 (S.D.N.Y.2013)* (discussing failure to intervene in the context of an alleged due process violation). In assessing the sufficiency of Plaintiff's claims, the Court is also mindful that the activities he describes—being handcuffed, thrown on the ground, beaten, and attacked by a dog—"are likely to have prevented [P]laintiff from identifying which of the defendant officers specifically engaged in the bad acts." *Snoussi, 2010 WL 3924255, at *3* (brackets and internal quotation marks omitted).

Here, though, Plaintiff fails to meet this liberal standard with respect to his allegations against Defendant Ransom. Plaintiff merely pleads that Defendant Ransom joined the police chase. (PAC ¶ 12.) Plaintiff does not sufficiently plead personal involvement, because he does not even plead that Defendant Ransom was present at the scene of the alleged unconstitutional conduct, and therefore also does not sufficiently plead that a reasonable person in Defendant Ransom's position would know that Plaintiff's rights were being violated and that Defendant Ransom had a reasonable opportunity to intervene but failed to do so. Plaintiff argues that Defendant Ransom was at the scene, relying not on allegations in the Complaint or PAC but rather on a document outside the pleadings that the Court is not permitted to consider, and based on an inference he suggests that "[a]t no point does Ransom claim that he left the scene, so he was presumably also present when Plaintiff was thrown to the ground and beaten, and attacked by the police dog a second time while in handcuffs." (Pl.'s Mem. 12.) However, Plaintiff never alleged that Defendant Ransom was at the scene. But, in light of Plaintiff's citation to Defendant Ransom's trial testimony, the Court will give Plaintiff one more opportunity to amend his Complaint to include any additional allegations against Defendant Ransom.

### III. Conclusion

**\*27** For the above reasons, the Town's Motion To Dismiss is granted; the claims against the Town are dismissed with prejudice; and the claims against Defendant Ransom are dismissed without prejudice. The City's Motion To Dismiss is granted in part and denied in part. In particular, the claims against the City are dismissed without prejudice, but Plaintiff may file his PAC against the City Police Officer

**Tieman v. City of Newburgh, Not Reported in F.Supp.3d (2015)**

2015 WL 1379652

Defendants. Plaintiff shall properly serve the City Police Officer Defendants within 21 days of the date of this Opinion, or else face dismissal of the claims against those Defendants. Additionally, Plaintiff is given 21 days to file an amended complaint to supplement his allegations against Defendant Ransom and the City. The Clerk of the Court is respectfully requested to terminate the pending Motions. (*See* Dkt. Nos. 25, 29.)

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1379652

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 118939
United States District Court, N.D. New York.

Alton THOMAS, Plaintiff,

v.

TOWN OF LLOYD; Town of Lloyd Police Department;
Town of Lloyd Former Police Officer Michael Henry;
John Does, presently unidentified members of the Town
of Lloyd Police Department; Town of Plattekill; Town
of Plattekill Police Department; Town of Plattekill
Former Police Officer Arkeem Gorham; Michael
Moe #1 being presently an unidentified member of
the Town of Plattekill Police Department, Michael
Moe #2 being presently an unidentified member of
the Town of Plattekill Police Department, Michael
Moes, presently unidentified members of the Town of
Plattekill Police Department; New York State Police;
NY State Trooper Theresa Diluvio, Shield No. 2631
(retired); Paul Poe #1, being presently an unidentified
member of the New York State Police; Paul Poe #2,
being presently an unidentified member of the New
York State Police; and Paul Poes, presently unidentified
members of the New York State Police, Defendants.

1:21-CV-1358
|
Signed January 11, 2024

**Synopsis**
**Background:** Plaintiff who was arrested during a police
welfare check and committed to psychiatric facility brought
§ 1983 action against towns, police departments, and police
officers for false arrest, excessive force, unreasonable search,
deprivation of due process and equal protection, and First
Amendment retaliation, as well as claims for violation of the
Americans with Disabilities Act (ADA) and Rehabilitation
Act and state-law claims for false arrest and imprisonment,
assault and battery, and trespass. Defendants filed motion to
dismiss for failure to state a claim.

**Holdings:** The District Court, David N. Hurd, J., held that:

[1] plaintiff stated § 1983 claim for false arrest;

[2] plaintiff stated § 1983 claim for failure to intervene;

[3] plaintiff stated § 1983 claim for excessive force;

[4] plaintiff stated § 1983 claim for unreasonable search;

[5] plaintiff failed to state § 1983 claim for First Amendment
retaliation;

[6] plaintiff failed to state *Monell* claim against town; and

[7] plaintiff stated claims for violation of ADA and
Rehabilitation Act.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss for Failure to
State a Claim.

West Headnotes (45)

**[1]    Municipal Corporations** 🔑 Capacity to sue
or be sued in general

Under New York law, police departments that are
merely administrative arms of a municipality do
not have a legal identity separate and apart from
the municipality and, therefore, cannot sue or be
sued. Fed. R. Civ. P. 17(b)(3)(A).

1 Case that cites this headnote

**[2]    Civil Rights** 🔑 Criminal law enforcement;
prisons

Were proper defendants named?**No**
Town police departments lacked separate legal
identities under New York law, and thus
departments could not be named as defendants
in plaintiff's § 1983 action alleging false arrest,
excessive force, and deprivation equal protection
and due process. U.S. Const. Amends. 4, 14; 42
U.S.C.A. § 1983; Fed. R. Civ. P. 17(b)(3)(A).

More cases on this issue

**[3]    Civil Rights** 🔑 Persons Liable in General

To establish a defendant's individual liability in
a suit brought under § 1983, a plaintiff must

show the defendant's personal involvement in the alleged constitutional deprivation. 42 U.S.C.A. § 1983.

**[4]    Civil Rights    Liability of Public Employees and Officials**

State actors are considered "personally involved" in a constitutional deprivation, and therefore liable on a § 1983 claim, when they directly participate in, or when they fail to intervene to prevent, a constitutional deprivation. 42 U.S.C.A. § 1983.

1 Case that cites this headnote

**[5]    Civil Rights    Arrest and detention**

A § 1983 false arrest claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizure. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[6]    Civil Rights    Arrest and detention**

To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. 42 U.S.C.A. § 1983.

**[7]    Civil Rights    Arrest and detention**

For purposes of a § 1983 claim for false arrest, the question of whether police confinement of an individual was "privileged" depends upon whether the arresting officer had probable cause or is otherwise protected under the doctrine of qualified immunity. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[8]    Civil Rights    Arrest and detention**

Plaintiff stated § 1983 claim against police officers for false arrest, regarding arrest which occurred at plaintiff's home, even though it

was state troopers, rather than police officers, who performed arrest; plaintiff alleged that one officer held his legs while state troopers rear-handcuffed him, alleged that other officer assisted troopers by picking him up off ground and taking him outside, alleged that he did not commit crime in any of responding officers' presence, and alleged that police were only dispatched to perform a welfare check. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[9]    Search, Seizure, and Arrest    Obstructing justice, bribery, and perjury**

Under New York law, there can be no probable cause to arrest based solely on allegations that the plaintiff resisted an unlawful arrest. U.S. Const. Amend. 4.

**[10]    Civil Rights    Failure to act or protect or to enforce law**

To succeed on a § 1983 failure-to-intervene claim, a plaintiff must demonstrate that: (1) the defendant had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated, and (3) the defendant did not take reasonable steps to intervene. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[11]    Civil Rights    Criminal law enforcement; prisons**

For purposes of a § 1983 claim for failure to intervene, whether a police officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[12]    Civil Rights    Arrest and detention**

Plaintiff stated § 1983 claim against police officers for failure to intervene, regarding

arrest which occurred during welfare check at plaintiff's home; plaintiff alleged that officers were on scene immediately prior to and during his arrest and adequately alleged that officers reasonably should have known that his constitutional rights were being violated because there was no probable cause for arrest, and plaintiff did not allege that either officer took any reasonable steps to intervene on his behalf, as evidenced by his incapacitation and subsequent confinement that lasted until he was placed into ambulance. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[13]**   **Search, Seizure, and Arrest** 👈 Application of Fourth Amendment and state equivalents

     **Search, Seizure, and Arrest** 👈 Application of Fourth Amendment and state equivalents

When a § 1983 plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[14]**   **Search, Seizure, and Arrest** 👈 Reasonableness in general; objective or subjective test

Determining whether a seizure was "reasonable" under the Fourth Amendment for purposes of a § 1983 claim requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[15]**   **Civil Rights** 👈 Arrest and detention

Plaintiff stated § 1983 claim against police officers for excessive force, regarding arrest which occurred during welfare check at plaintiff's home, even though plaintiff attributed such force to state troopers who used stun gun and handcuffed him; plaintiff alleged that

one officer held his legs during handcuffing process and that other officer then picked him up and brought him outside, and plaintiff plausibly alleged that he posed no immediate threat to officers' or others' safety and that officers had reasonable opportunity to intervene to prevent him from being confined without excessive force. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[16]**   **Search, Seizure, and Arrest** 👈 Validity; reasonableness

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. U.S. Const. Amend. 4.

**[17]**   **Search, Seizure, and Arrest** 👈 Providing medical aid

     **Search, Seizure, and Arrest** 👈 Preventing Injury or Harm

Under the emergency aid exception to the Fourth Amendment's search warrant requirement, police officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. U.S. Const. Amend. 4.

**[18]**   **Civil Rights** 👈 Searches and seizures

Plaintiff stated § 1983 claim against police officers for unreasonable search, regarding warrantless entry into his home during welfare check, after which he was committed to psychiatric facility; plaintiff did not allege that he was in imminent danger of self-harm or that he was experiencing life threatening side effects from taking excess of his anti-psychotic medication that morning, as would have allowed warrantless entry into home under emergency aid exception to search warrant requirement, and plaintiff clearly alleged that officers entered his home without warrant or consent. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**[19]    Constitutional Law** 🔑 Retaliation

The government may not retaliate against an individual for engaging in protected speech under the First Amendment. U.S. Const. Amend. 1.

**[20]    Constitutional Law** 🔑 Retaliation in general

To prevail on a § 1983 First Amendment retaliation claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury; the plaintiff must demonstrate that the government defendant would not have taken the adverse action absent the retaliatory motive. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

**[21]    Constitutional Law** 🔑 Arrest

**Search, Seizure, and Arrest** 🔑 Retaliatory or discriminatory arrest

Plaintiff failed to state § 1983 claim against police officers for First Amendment retaliation, regarding arrest which occurred at his home during welfare check; plaintiff did not allege any causal connection between protected First Amendment speech and adverse actions taken by officers, did not allege that he spoke to officers before adverse actions were taken, and did not allege that officers manifested retaliatory animus toward him or took actions because of it, and allegations did not plausibly support claim that officers failed to intervene to prevent retaliation. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

**[22]    Constitutional Law** 🔑 Arbitrariness

The touchstone of due process under the Fourteenth Amendment is protection of the individual against arbitrary action of government whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. U.S. Const. Amend. 14, § 1.

**[23]    Constitutional Law** 🔑 Procedural due process in general

A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process. U.S. Const. Amend. 14, § 1.

**[24]    Constitutional Law** 🔑 Duration and timing of deprivation; pre- or post-deprivation remedies

When the loss of a protected liberty interest is the result of random, unauthorized act of state employees rather than established state process, a claim for deprivation of due process is complete only when the state fails to provide a meaningful post-deprivation remedy. U.S. Const. Amend. 14, § 1.

**[25]    Civil Rights** 🔑 Arrest, search, and detention

Plaintiff failed to state § 1983 claim against police officers for deprivation of procedural due process regarding his commitment to psychiatric facility after being arrested at his home during welfare check; plaintiff alleged that he was deprived of his freedom but did not allege that officers deprived him of established state process or allege that officers' random deprived him of his liberty, followed by failure to receive meaningful post-deprivation remedy, and his complaint was silent as to what occurred after transfer to psychiatric facility. U.S. Const. Amend. 14, § 1; 42 U.S.C.A. § 1983.

**[26]    Constitutional Law** 🔑 Rights and interests protected; fundamental rights

**Constitutional Law** 🔑 Egregiousness; "shock the conscience" test

A substantive due process claim requires plaintiff to (1) identify the constitutional right at stake and (2) demonstrate that the state action was so egregious, so outrageous, that it may fairly be

Thomas v. Town of Lloyd, --- F.Supp.3d ---- (2024)
Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 41 of 102
2024 WL 118939, 117 Fed.R.Serv.3d 1346

said to shock the contemporary conscience. U.S. Const. Amend. 14, § 1.

**[27]**    **Constitutional Law**    Conduct

**Search, Seizure, and Arrest**    Application of Fourth Amendment and state equivalents

**Search, Seizure, and Arrest**    Particular cases in general

Dismissal of plaintiff's substantive due process claim against police officers was warranted in § 1983 action regarding arrest at his home during welfare check and subsequent commitment to psychiatric facility, where any such claim was covered by more specific theories under his Fourth Amendment claims for false arrest, excessive force, and unreasonable search. U.S. Const. Amend. 14, § 1; 42 U.S.C.A. § 1983.

**[28]**    **Constitutional Law**    "Class of one" claims

**Constitutional Law**    Enforcement, application, or administration in general

Both the "selective enforcement" and the "class-of-one" theories for Equal Protection violations require that a § 1983 plaintiff to make a showing of different or unequal treatments. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

**[29]**    **Constitutional Law**    Commitment, confinement, or placement in general

**Constitutional Law**    Criminal Law

**Mental Health**    Admission or Commitment Procedure

**Search, Seizure, and Arrest**    Retaliatory or discriminatory arrest

Plaintiff failed to state claim against police officers for deprivation of equal protection in § 1983 action regarding arrest at his home during welfare check and subsequent commitment to psychiatric facility, where plaintiff did not allege that he was member of identifiable group or was treated differently from a comparable individual. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

**[30]**    **Civil Rights**    Governmental Ordinance, Policy, Practice, or Custom

To bring a claim for municipal liability under *Monell*, a plaintiff must plausibly allege the existence of an official policy or custom that caused him to be denied a constitutional right.

2 Cases that cite this headnote

**[31]**    **Civil Rights**    Arrest, search, and detention

Plaintiff failed to state *Monell* municipal liability claim against towns in § 1983 action alleging false arrest, excessive force, unreasonable search, and deprivation of due process and equal protection, regarding arrest at his home and subsequent commitment to psychiatric facility, where plaintiff's allegations were wholly conclusory and did not identify any specific policy, procedure, or custom that caused him to be denied a constitutional right. U.S. Const. Amends. 1, 4, 14; 42 U.S.C.A. § 1983.

**[32]**    **Civil Rights**    Complaint in general

Boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim for municipal liability.

2 Cases that cite this headnote

**[33]**    **Civil Rights**    Elements of discrimination claims in general

To assert a claim under the Americans with Disabilities Act (ADA) or Rehabilitation Act, a plaintiff must establish that (1) they are qualified individuals with a disability, (2) that the defendants are subject to the ADA, and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities. 42 U.S.C.A. § 12102(1); 29 U.S.C.A. § 705(20)(A).

[34]    **Civil Rights**  🔑  Publicly assisted programs

To establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding. 29 U.S.C.A. § 705(20)(A).

[35]    **Civil Rights**  🔑  Acts of officers and employees in general;  vicarious liability and respondeat superior in general

Municipalities are susceptible to vicarious liability under the Americans with Disabilities Act (ADA) and Rehabilitation Act. 42 U.S.C.A. § 12101 et seq.; 29 U.S.C.A. § 701 et seq.

[36]    **Civil Rights**  🔑  Criminal law enforcement;  prisons

Plaintiff's allegation that police officers arrived at his home in response to call for welfare check on adult male suffering from psychiatric or extreme mental health episode was sufficient to plausibly allege that officers knew they were dealing with mentally troubled person, and thus plaintiff stated claims against towns, pursuant to theory of vicarious liability, for disability discrimination and failure to accommodate disabilities in violation of Americans with Disabilities Act (ADA) and Rehabilitation Act, based on arrest at his home and subsequent commitment to psychiatric facility, even though he did not allege that he or anyone else made explicit request for accommodation which police officers ignored or refuse. 42 U.S.C.A. § 12102(1); 29 U.S.C.A. § 705(20)(A).

[37]    **Limitation of Actions**  🔑  Amendment of defects

Plaintiff's second amended complaint adding individual police officers as defendants in his action against towns and police departments related back to his original pleading naming "John Does" and "Michael Moes," and thus his claims against officers for false arrest, false imprisonment, assault and battery, and trespass were timely under New York law; plaintiff sent towns and departments notice of his lawsuit and requested waiver of service, in which he requested that defense counsel identify "John Does" and "Michael Moes," so that they could be properly named in pleadings and properly served, and plaintiff exercised due diligence within statute of limitations period when he amended pleading and promptly served officers upon learning their identities. Fed. R. Civ. P. 15(c)(1)(A); N.Y. CPLR § 1024.

More cases on this issue

[38]    **False Imprisonment**  🔑  Liability of officer or other person making arrest and persons assisting officer

Plaintiff stated claims against police officers for false arrest and false imprisonment under New York law regarding arrest at his home during welfare check, even though it was state troopers, rather than police officers, who performed arrest; plaintiff alleged that one officer held his legs while state troopers rear-handcuffed him, alleged that other officer assisted troopers by picking him up off ground and taking him outside, alleged that he did not commit crime in any of responding officers' presence, and alleged that police were only dispatched to perform a welfare check.

[39]    **Assault and Battery**  🔑  Battery in general

Under New York law, civil battery requires an intentional wrongful physical contact with another person without consent.

[40]    **Assault and Battery**  🔑  Persons Liable

Plaintiff stated claims against officers for assault and battery under New York law regarding arrest at his home during welfare check, even though plaintiff attributed such force to state troopers who used stun gun and handcuffed him; plaintiff alleged that one officer held his legs during handcuffing process and that other officer then picked him up and brought him outside, and plaintiff plausibly alleged that he posed no immediate threat to officers' or others' safety

and that officers had reasonable opportunity to intervene to prevent him from being confined without excessive force. U.S. Const. Amend. 4.

**[41]    Trespass** 🔑 Trespass to Real Property

Under New York law, the requisite elements for a claim of trespass are (1) the intentional entry by defendants on to the plaintiff's land and (2) the wrongful uses without justification or consent.

**[42]    Trespass** 🔑 Exercise of authority or duty

Under New York law, law-enforcement officials have a privilege to enter private property to perform their legal duties, but the scope of that privilege is still constrained by the Fourth Amendment. U.S. Const. Amend. 4.

**[43]    Trespass** 🔑 Exercise of authority or duty

**Trespass** 🔑 Consent or license

Plaintiff stated claim against police officers for trespass under New York law, regarding warrantless entry into his home during welfare check, after which he was committed to psychiatric facility; plaintiff did not allege that he was in imminent danger of self-harm or that he was experiencing life threatening side effects from taking excess of his anti-psychotic medication that morning, as would have allowed warrantless entry into home under emergency aid exception to search warrant requirement, and plaintiff clearly alleged that officers entered his home without warrant or consent. U.S. Const. Amend. 4.

**[44]    Labor and Employment** 🔑 Scope of Employment

**States** 🔑 State Liability for Acts of Employees, Officers, and Agents; Scope of Employment

Under New York's common-law doctrine of respondeat superior, an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment.

**[45]    Towns** 🔑 Torts

Plaintiff stated claim against towns for respondeat superior liability based on claims against police officers for false arrest, false imprisonment, assault and battery, and trespass under New York law, regarding arrest which occurred at his home during welfare check, where it was plausible that officers' alleged state-law violations were made in scope of their employment and in furtherance of towns' interests.

**Attorneys and Law Firms**

JEFFREY A. ROTHMAN, ATTORNEY AT LAW, JEFFREY A. ROTHMAN, ESQ., Attorney for Plaintiff, 305 Broadway Suite 100, New York, NY 10007.

THOMAS K. MURPHY, ESQ., MURPHY BURNS LLP, Attorneys for Municipal Defendants, 407 Albany Shaker Road, Loudonville, NY 12211.

HON. LETITIA JAMES, New York State Attorney General, DAVID C. WHITE, ESQ., Ass't Attorney General, Attorneys for State Defendants, The Capitol, Albany, NY 12224.

**DECISION and ORDER**

David N. Hurd, United States District Judge

**I. INTRODUCTION**

 **\*1**   On December 20, 2021, plaintiff Alton Thomas ("Thomas" or "plaintiff") filed this civil action against defendants Town of Lloyd, Town of Lloyd Police Department, an unspecified number of unidentified Town of Lloyd Police Department officers referred to as John Does, Town of Plattekill, Michael Moe #1, Michael Moe #2 an unspecified number of unidentified Town of Plattekill Police Department officers referred to as Michael Moes, New York State Police, NY State Trooper Theresa Diluvio ("Trooper Diluvio"), NY State Police Sergeant Courtney J. Nielson ("Sergeant Nielson"), Paul Poe #1, Paul Poe #2, and an

Thomas v. Town of Lloyd, --- F.Supp.3d ---- (2024)
2024 WL 118939, 117 Fed.R.Serv.3d 1346

unspecified number of unidentified New York State Police officers referred to as Paul Poes for violations of his civil rights that occurred during an altercation in his home during a welfare check. Dkt. No. 1.

Thomas filed an amended complaint as of right on March 1, 2022. Dkt. No. 11. Thereafter, defendants New York State Police, Trooper Diluvio, and Sergeant Nielson (collectively, the "State Defendants") answered plaintiff's amended complaint. Dkt. No. 16.

On April 5, 2022, the Town of Lloyd, Town of Lloyd Police Department, the Town of Plattekill, and Town of Plattekill Police Department moved to dismiss plaintiff's amended complaint under the Federal Rules of Civil Procedure ("Rule") Rule 12(b)(6) for failure to state any plausible claims for relief against them. Dkt. No. 19. That motion was granted on May 31, 2022. Dkt. No. 26.

On May 31, 2023, after conducting some discovery, Thomas filed a second amended complaint—now the operative pleading. Dkt. No. 43. This pleading reasserts plaintiff's claims against the State defendants, who have since filed an answer, and names additional defendants Town of Lloyd Former Police Officer Michael Henry ("Officer Henry") and Town of Plattekill Police Former Officer Arkeem Gorham ("Officer Gorham"). Dkt. Nos. 43, 56.

Thomas's second amended complaint alleges nine federal claims arising under 42 U.S.C. § 1983, Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act (the "Rehabilitation Act"). Dkt. No. 43. Plaintiff's second amended complaint also alleges four related claims under state law. Id.

On July 12, 2023, defendants the Town of Lloyd, Town of Lloyd Police Department, Officer Henry, the Town of Plattekill, Town of Plattekill Police Department, and Officer Gorham (collectively, the "Municipal Defendants") moved under Rule 12(b)(6) to dismiss plaintiff's second amended complaint. [1] Dkt. No. 55.

---

[1]    New York State Police, Trooper Diluvio, and Sergeant Nielson answered the second amended complaint on July 24, 2023. Dkt. No. 56.

The motion has been fully briefed and will be considered on the basis of the submissions and without oral argument. Dkt. Nos. 59–61.

## II. BACKGROUND

Thomas's claims arise out an altercation with state and local police that occurred during a welfare check at his home. Second Am. Compl. ("SAC") ¶¶ 14, 27–28.

 **\*2**  At age twenty-four, Thomas was diagnosed with bipolar disorder and depression. SAC ¶ 18. The symptoms of plaintiff's bipolar disorder and depression have an enormous impact on his daily life and generally cause him to feel withdrawn, edgy, and frightened. Id. ¶¶ 19, 21. In addition to limiting his ability to obtain an education and learn a trade, plaintiff's symptoms cause him great difficulty communicating with others. Id. ¶ 21. In the past, these symptoms have even caused plaintiff to attempt suicide. Id. ¶ 24.

To abate these symptoms, Thomas takes an anti-psychotic, calming medication known as Seroquel. SAC ¶ 25. By August 27, 2020, plaintiff was taking Seroquel four times per day for his symptoms. Id. ¶ 25. On the morning of the 27th, however, plaintiff took an "excessive amount" of his medication, which triggered a psychiatric episode. Id. ¶ 26. During this episode, plaintiff spoke with his sister on the phone and made a joke that made her worry that he was suicidal again. Id. ¶ 27. Out of concern for his well-being, plaintiff's sister called the police and asked them to conduct a welfare check. Id. ¶ 27.

State and local law enforcement units were dispatched to Thomas's home. See SAC ¶ 27. The New York State Police were the first to arrive. Id. ¶ 29. At some point after, officers from the Town of Plattekill Police Department and the Town of Lloyd Police Department also arrived at plaintiff's home. Id. ¶¶ 54, 78.

From his porch, Thomas saw three New York State Troopers emerge from two squad cars: Trooper Diluvio, Trooper Nielson, and an unidentified Trooper (collectively, the "Troopers"). [2] SAC ¶¶ 29, 32. After arriving, Trooper Diluvio asked plaintiff to come down and speak with her near the squad cars parked in his driveway. Id. ¶ 33. Plaintiff informed Trooper Diluvio that he would not speak with her unless she could tell him what he had done wrong. Id. ¶ 34. When Trooper Diluvio did not explain why she wanted to speak

Thomas v. Town of Lloyd, --- F.Supp.3d ---- (2024)

2024 WL 118939, 117 Fed.R.Serv.3d 1346

with plaintiff, plaintiff retreated inside his home and closed the door. *Id.* ¶ 35.

[2]    According to Thomas, either Paul Poe #1 or Paul Poe #2 was Trooper Neilson. SAC ¶ 30.

According to Thomas, his refusal made Trooper Diluvio very angry, and she told the other individuals at the scene that she would "just tase [p]laintiff." SAC ¶ 36. Following this remark, the Troopers, followed by Officer Henry, entered plaintiff's home without his consent. *Id.* ¶¶ 41, 82.

Once inside Thomas's home, the Troopers began to search through his medications and other property. SAC ¶ 42. The Troopers told plaintiff that they wanted to get him checked out and asked him what medications he had taken that day. *Id.* ¶ 103. Plaintiff told the Troopers to put down his property. *Id.* ¶ 43. However, the Troopers ignored plaintiff's request and continued to ask him about various pill bottles. *Id.* ¶ 44. Plaintiff told the Troopers that they were his daily medications. *Id.*

The critical moment of this interaction was when Trooper Diluvio would not put down one of the pill bottles, Thomas took it from her hand. SAC ¶ 45. Without a word, Trooper Diluvio tasered plaintiff in the stomach, which caused him to fall to the floor. [3] *Id.* ¶¶ 47–48.

[3]    Thomas's second amended complaint contains inconsistent and/or contradictory allegations supported by the deposition testimony of Officer Gorham and Officer Henry. For now, these allegations are construed as alternative pleadings consistent with Rule 8. *Compare* SAC ¶¶ 41–47, *with* SAC ¶¶ 87–91; *see Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (citing *MacFarlane v. Grasso*, 696 F.2d 217, 224–25 (2d Cir. 1982) ("Although these allegations were not specifically pleaded as 'in the alternative,' we have ruled that Rule 8(e)(2) offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss or for summary judgment."); *see also Ajinomoto Co. v. CJ CheilJedang Corp.*, 2021 WL 4430200, at *3–4 (S.D.N.Y. Sept. 27, 2021) (construing inconsistent factual allegations as alternative theories at the motion to dismiss stage).

**\*3**    After hearing the Taser discharge, Officer Gorham and other officers entered Thomas's home to provide backup. SAC ¶ X–71, 74, 78. [4] Officer Gorham began to aid the Troopers by holding plaintiff's legs while the Troopers rear-handcuffed him. *Id.* ¶¶ 72–73.

[4]    Thomas's second amended complaint labels the paragraph between ¶¶ 67 and 68 as "X." *See* SAC ¶¶ 67–68; *see also* Pl.'s Opp'n at 2 n.2 ("Due to an oversight, the paragraph between ¶¶ 67 and 68 is denoted as ¶ X.").

The Troopers fastened the handcuffs around Thomas's wrists with "an excessive and punitive tightness[.]" SAC ¶ 50. Plaintiff repeatedly told the Troopers that the handcuffs were too tight and asked for them to be loosened. *Id.* ¶ 51. Plaintiff also complained that the Taser barbs imbedded in his abdomen were causing him pain. *Id.* ¶ 97. Once restrained, plaintiff was taken outside where an ambulance and other law enforcement were waiting. *Id.* ¶¶ 52–53.

According to Thomas, both the emergency medical technicians ("EMTs") on the scene and his landlord asked the Troopers to remove plaintiff's "excessively tight" handcuffs. SAC ¶¶ 101–02. The Troopers refused these requests. *Id.* It was not until plaintiff was placed inside of the ambulance that his handcuffs were eventually removed. *Id.* ¶ 104. Plaintiff was then transported to a hospital, where he was committed to a psychiatric facility for two weeks. *Id.* ¶¶ 105–06.

The tight handcuffs caused Thomas to develop a lump on his wrist that remains present to this day. SAC ¶ 109. Plaintiff also suffered two wounds on his stomach from the taser barbs. *Id.* ¶ 114.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). So, while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV. DISCUSSION

Thomas's second amended complaint asserts twelve claims against the Municipal Defendants. Plaintiff alleges § 1983 claims for false arrest, excessive force, unreasonable search, retaliation, and violations of his due process and equal protection rights. Plaintiff also alleges a § 1983 *Monell* claim for municipal liability against the Towns. In addition to plaintiff's federal causes of action, he brings state-law tort claims for false arrest, false imprisonment, assault, battery, and trespass.

The Municipal Defendants have moved to dismiss all of these claims against them. In their view, (1) plaintiff fails to allege the requisite "personal involvement" of the individual Municipal Defendants in any of the alleged constitutional deprivations; (2) plaintiff fails to plausibly allege municipal liability under *Monell*; (3) plaintiff fails to state a claim under the ADA or the Rehabilitation Act; and (4) plaintiff's state-law claims are barred by the applicable statute of limitations. *See* Defs.' Mem., Dkt. No. 52-2. [5]

[5]    Pagination corresponds to CM/ECF.

### A. Proper Parties
**\*4**  As an initial matter, the Municipal Defendants argue that the Town of Lloyd Police Department ("LPD") and the Town of Plattekill Police Department ("PPD") must be dismissed from this action because they lack the capacity to be sued in federal court. Defs.' Mem. at 2–3

Upon review, defendants are correct. Rule 17 governs the capacity of an individual or entity to sue or be sued in federal court. FED. R. CIV. P. 17(b). As relevant here, Rule 17(b) requires that an entity have an independent legal existence. *See Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382–83 (2d Cir. 2021) (citing *Brown v. Fifth Jud. Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001) ("Rule 17(b)(3)(A) permits courts to imbue unincorporated

associations and partnerships with the capacity to sue. But this power does not extend to entities that lack legal existence.").

[1]  The question of whether an entity has an independent legal existence is resolved by reference to state law. FED. R. CIV. P. 17(b)(3). "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y., 2012) (citation omitted); *Freund v. Cnty. of Nassau*, 2017 WL 750480, at *2 (E.D.N.Y. Feb. 24, 2017) (citation omitted) (holding that the Nassau County Police Department and Nassau Sheriff's Department are not suable entities).

[2]  As the Municipal Defendants correctly point out, the LPD and PPD lack separate legal identities under state law. Thus, Rule 17(b) precludes them from being named as defendants. Accordingly, the LPD and PPD must be dismissed as defendant from this action. However, plaintiff's § 1983 claims against the Towns remain for consideration and will be discussed below.

### B. Section 1983 Claims
Thomas has asserted claims under 42 U.S.C. § 1983 against Officer Gorham and Officer Henry (the "Officers") for false arrest, excessive force, unreasonable search, First Amendment retaliation, and violations of his due process and equal protection rights. Plaintiff also alleges a § 1983 *Monell* claim for municipal liability against the Towns.

The Municipal Defendants argue that plaintiff's § 1983 claims must be dismissed because the second amended complaint does not allege the requisite "personal involvement" of the Officers. Defs.' Mem. at 3–5. According to the Municipal Defendants, the Officers were merely acting as "backup" for the Troopers and were not personally involved in causing any of plaintiff's injuries. *Id.*

[3]  Section 1983 itself is not a source of substantive federal rights, but a statutory mechanism for suing state actors where they are personally involved in deprivations of constitutional rights. *Whitton v. Williams*, 90 F. Supp. 4 420, 427 (S.D.N.Y. 2000); *see also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 489 (N.D.N.Y. 2017). "To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quotation omitted).

**[4]** State actors are considered "personally involved" for the purpose of § 1983 when they directly participate in, or when they fail to intervene to prevent, a constitutional deprivation. *See Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016); *see also Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) ("Police officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (cleaned up).

**\*5** Thomas's § 1983 claims are premised on theories of direct participation and/or a failure to intervene by the Officers. Thomas brings six claims against the Officers for: (1) false arrest; (2) excessive force; (3) unreasonable search; (4) First Amendment retaliation; (5) Due Process violations; (6) Equal Protection violations. SAC ¶ 117. The Municipal Defendants maintain that the Officers were not personally involved in, nor failed to intervene to prevent, any of the constitutional violations alleged. Defs.' Mem. at 3–5.

**1. False Arrest** [6]

[6]     Thomas's second amended complaint alleges claims of "false arrest and false imprisonment." SAC ¶ 117. However, as noted in the prior Memorandum-Decision and Order, Dkt. No. 26 at 11 n.2, false arrest and false imprisonment look and function identically and will simply be styled as "false arrest" for the purpose of consistency. *See Johnston v. City of Syracuse*, 2021 WL 3930703, at *5 (N.D.N.Y. Sept. 2, 2021) (citing *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 660 (S.D.N.Y. 2000)).

First, Thomas brings a § 1983 claim for false arrest against the Officers. SAC ¶ 117.

**[5]** **[6]** "A § 1983 false arrest claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures." *LaFever v. Clarke*, 525 F. Supp. 3d 305, 329 (N.D.N.Y. 2021) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *LaFever*, 525 F. Supp. 3d at 329 (citation omitted).

**[7]** In this context, whether the confinement was "privileged" depends upon the arresting officer had probable cause or is otherwise protected under the doctrine of qualified immunity. *See Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015).

**[8]** Upon review, Thomas has plausibly alleged that the Officers directly participated in in his arrest. SAC ¶¶ 73, 96. According to plaintiff, Officer Gorham held his legs while the Troopers rear-handcuffed him. *Id.* ¶ 73. While plaintiff does not allege that Officer Henry placed the handcuffs on him, he goes on to state that that Officer Henry assisted the Troopers by picking plaintiff up off the ground—while handcuffed—and taking him outside. *Id.* ¶ 96.

**[9]** Further, accepting Thomas's version of events as true for the purpose of this motion to dismiss, plaintiff has successfully pled the absence of probable cause.[7] Plaintiff alleges that he did not commit a crime in any of the responding officers' presence and that police were only dispatched to perform a welfare check. SAC ¶ 28. Insofar as Officer Henry may have perceived Thomas as resisting arrest, resistance to an *unlawful* arrest is not an independent basis for probable cause. The Second Circuit has made clear that under New York law, there can be no probable cause to arrest based solely on allegations that the plaintiff resisted an unlawful arrest. *Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003). Therefore, plaintiff has plausibly alleged that each of the Officers directly participated in his false arrest.

[7]     The Municipal Defendants do not raise qualified immunity as an affirmative defense of the Officers' conduct.

**[10]** **[11]** Thomas also successfully pleads a failure to intervene claim. To succeed on a failure to intervene claim, plaintiff must demonstrate that: (1) the defendant had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated; and (3) the defendant did not take reasonable steps to intervene." *Cornell v. Vill. of Clayton*, —— F. Supp. 3d ——, ——, 2023 WL 5965431, at *8 (N.D.N.Y. Sept. 13, 2023). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

**\*6**  **[12]**  Thomas alleges that the Officers were on the scene immediately prior to, and during, his arrest. *See* SAC ¶¶ 70–73, 82, 95–96. Plaintiff's allegations, taken as a whole, support the claim that the Officers reasonably should have known that plaintiff's constitutional rights were being violated because he was being arrested without probable cause. *See supra.* Finally, plaintiff does not allege that either of the Officers took any reasonable steps to intervene on his behalf, evidenced by plaintiff's incapacitation and subsequent confinement that lasted until he was placed into an ambulance. *Id.* ¶ 104.

Accordingly, plaintiff has plausibly alleged § 1983 false arrest claims against the Officers.

### 2. Excessive Force

Second, Thomas alleges that the Officers subjected him to excessive force during the course of his arrest. SAC ¶ 117.

**[13]**  **[14]**  "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton,* 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014). "Determining whether a seizure was 'reasonable' under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotations omitted) (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

**[15]**  Measured against this standard at the pre-answer stage, Thomas has plausibly alleged that the Officers' use of force was unreasonable under the Fourth Amendment. While for the most part, plaintiff's second amended complaint attributes the force he was subjected to during his arrest to the Troopers, plaintiff does allege that the Officers were present on the scene and assisted the Troopers with plaintiff's arrest. SAC ¶¶ 70–73, 82, 95–96.

In particular, Thomas alleges that Officer Gorham held his legs during the handcuffing process and that Officer Henry helped pick him up and bring him outside. SAC ¶¶ 73, 96. Importantly, plaintiff has plausibly alleged that he posed no immediate threat to the Officers' or others' safety that might warrant using any force to subdue him. *Id.* ¶¶ 46–47.

Therefore, plaintiff has plausibly alleged the Officers used excessive force through their direct participation in the arrest.

Thomas also advances a theory of failure to intervene against the Officers. SAC ¶ 117. Construing the factual allegations in the second amended complaint in a light most favorable to Thomas, he plausibly alleges that the Officers had a reasonable opportunity to intervene to prevent plaintiff from being confined with excessive force. As previously discussed, the Officers were present for plaintiff's arrest. *Id.* ¶¶ 70–73, 82, 95–96. Whether Officer Henry or Officer Gorham did or did not have a reasonable opportunity to intervene while plaintiff was being handcuffed, and whether they knew or should have known[8] that the Troopers lacked probable cause to seize the plaintiff, are matters that will be resolved in discovery—which is ongoing.

8   As discussed, questions of probable cause are not ordinarily properly decided at the pre-answer motion stage. *See Cornell,* ––– F. Supp. 3d at –––––, 2023 WL 5965431, at \*8 holding that questions of timing with respect to a failure to intervene question may not be resolved at the motion to dismiss stage).

Therefore, Thomas has plausibly alleged that the Officers subjected him to excessive force in violation of § 1983. Accordingly, the Municipal Defendant's motion to dismiss plaintiff's excessive force claims must be denied.

### 3. Unreasonable Search[9]

9   As noted in the prior Memorandum-Decision and Order, Dkt. No. 26 at 11 n.3, though Thomas has labeled this claim as a claim for "trespass," that claim has also been restyled as a claim for "unreasonable search" in accordance with the constitutional rights secured by the Fourth Amendment. *See, e.g., Wierzbic v. Howard,* 836 F. App'x 31, 33–36 (2d Cir. 2020) (summary order).

**\*7**  Third, Thomas alleges that the Officers subjected him to an unreasonable search when they entered his home without a warrant. SAC ¶ 117.

**[16]**  "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "Nevertheless, because the ultimate touchstone of the Fourth

Amendment is *reasonableness*, the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (emphasis added); *see also Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ("[W]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.").

 **[17]**  One such exception to the warrant requirement is the emergency aid exception. Under the emergency aid exception, "officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from *imminent* injury." *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) (emphasis added); *see also Mincey*, 437 U.S. at 392, 98 S.Ct. 2408 ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.")

 **[18]**  While there may be factual scenarios in which a suicidal individual's potential to cause imminent harm to himself triggers the emergency aid exception, *see Caniglia v. Strom*, 593 U.S. 194, 207, 141 S.Ct. 1596, 209 L.Ed.2d 604 (2021) (Kavanaugh, J. concurring), a review of Thomas's second amended complaint does not reveal that the Officers had any such knowledge that would permit them to form the belief that emergency aid was warranted. Plaintiff does not allege that he was in imminent danger of self-harm or that he was experiencing life threatening side effects from taking an excess of his anti-psychotic medication that morning. Thomas has, however, clearly alleged that the Officers entered plaintiff's home without a warrant or his consent. SAC ¶¶ 41, 72, 82.

Therefore, Thomas has plausibly alleged that the Officers subjected him to an unreasonable search. Accordingly, the Municipal Defendants' motion with respect to dismiss plaintiff's unreasonable search claim must be denied.

#### 4. First Amendment Retaliation

Fourth, Thomas alleges that the Officers retaliated against him for engaging in First Amendment protected speech. SAC ¶ 117.

 **[19]   [20]**  The government may not retaliate against an individual for engaging in protected speech under the First Amendment. *See Nieves v. Bartlett*, 587 U.S. ——, 139 S.Ct. 1715, 1722, 204 L.Ed.2d 1 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)). To prevail on a First Amendment retaliation claim, "plaintiff must establish a causal connection between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.' " *Id.* (citing *Hartman*, 547 U.S. at 259, 126 S.Ct. 1695). Put simply, plaintiff must demonstrate that the government defendant would not have taken the adverse action absent the retaliatory motive. *Id.* (citing *Hartman*, 547 U.S. at 260, 126 S.Ct. 1695.).

 **[21]**  Upon review, Thomas has not alleged any causal connection between any of his protected First Amendment speech and the adverse actions taken by the Officers. Plaintiff does not allege that he spoke to the Officers before adverse actions were taken against him. *See* SAC ¶¶ 34–41. Plaintiff's second amended complaint does not allege that the Officers manifested a retaliatory animus towards him or that either officer took adverse actions against him *because of* any retaliatory animus.

 **\*8**  As for any possible failure to intervene theory of relief, Thomas's allegations do not plausibly support a claim that Officers failed to intervene to prevent retaliation against plaintiff for engaging in protected speech. Accordingly, Thomas's First Amendment retaliation claims must be dismissed.

#### 5. Due Process

Fifth, Thomas alleges that the Municipal Defendants violated his Due Process rights secured by the Fourteenth Amendment. SAC ¶ 117.

 **[22]**  The Due Process Clause of the Fourteenth Amendment provides that "No State shall deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The touchstone of due process is protection of the individual against arbitrary action of government whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (cleaned up).

 **[23]   [24]**  "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236, 143 S.Ct. 955, 215 L.Ed.2d

218 (2023) (citation omitted). "Importantly, the Court has stated that a procedural due process claim is not complete when the deprivation occurs, rather, the claim is complete only when the State fails to provide due process." *Id.* (cleaned up). In cases where the loss of a protected liberty interest is the result of "random, unauthorized act of state employees" rather than established state process, the claim is complete only when the state fails to provide a "meaningful postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532–533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

**[25]** Upon review, any procedural due process claim would fail. Thomas alleges that he was deprived of his freedom when he was arrested and subsequently committed to a psychiatric facility. Plaintiff does not allege that he was deprived of established state process by the Officers. Nor does plaintiff allege that random unauthorized acts of the Officers deprived him of his liberty and that he did not receive a meaningful post-deprivation remedy. In fact, the second amended complaint is silent as to what occurred after plaintiff was transferred to the psychiatric facility.

Accordingly, to the extent that Thomas brings a procedural due process claim, that claim must be dismissed for failure to point to inadequate state process or post-deprivation remedy. *See Routhier v. Goggins*, 229 F. Supp. 299, 309 (D. Vt. 2017) (dismissing plaintiff's procedural due process claim because the complaint failed to allege availability of post deprivation procedures or whether they were insufficient).

**[26]** To the extent Thomas's second amended complaint might be understood to raise a *substantive* due process claim, it would also fail. A substantive due process claim requires plaintiff to (1) identify the constitutional right at stake and (2) demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (internal quotation omitted) (quoting *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir.), *cert. denied*, ––– U.S. ––––, 142 S. Ct. 109, 211 L.Ed.2d 31 (2021)).

**\*9** **[27]** Importantly, however, "[t]he Supreme Court has held that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Heidorf v. Town of*

*Northumberland*, 985 F. Supp. 250, 256 (N.D.N.Y. 1997) (cleaned up).

This is true of the Fourth Amendment. *Graham*, 490 U.S. at 395, 109 S.Ct. 1865 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

Therefore, any substantive due process claims available to Thomas are covered by more specific theories already discussed. Accordingly, the Municipal Defendants' motion to dismiss plaintiff's Due Process claim must be granted.

### 6. Equal Protection Violations

Sixth, Thomas alleges that the Municipal Defendants violated his Equal Protection rights secured by the Fourteenth Amendment. SAC ¶ 117.

"Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, the Second Circuit has long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 6 (S.D.N.Y.), *aff'd*, 705 F. App'x 50 (2d Cir. 2017) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)) (cleaned up).

**[28]** There exist two theories for this kind of Equal Protection violation: "selective enforcement" and "class of one" discrimination. *Bristol v. Town of Camden*, ––– F. Supp. 3d ––––, ––––. 2023 WL 3004104, at *11 (N.D.N.Y. Apr. 19, 2023) (citing *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)). However, both selective enforcement and class-of-one claims require the plaintiff to "make a showing of different or unequal treatment." *Bristol*, ––– F. Supp. 3d at ––––, 2023 WL 3004104, at *11.

**[29]** Upon review, Thomas has not done so. Nowhere has he alleged that he is a member of an identifiable group, or that he was treated differently from a comparable plaintiff. Accordingly, his Equal Protection claims must fail. *See e.g.*, *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353 (E.D.N.Y. 2010) (finding plaintiff's equal protection claim deficient as a matter of law because plaintiff's complaint

"failed to identify any comparators or similarly situated entities at all").

### 7. **Municipal Liability under** *Monell*

Thomas also brings § 1983 claims against the Town of Lloyd and Town of Plattekill under *Monell*. SAC ¶¶ 120–24. The Municipal Defendants defend this claim on the ground that plaintiff fails to provide specific factual allegations to support his *Monell* claim. Defs.' Mem at 5–7. The Municipal Defendants point to plaintiff's boiler plate language that "provides no factual details whatsoever nor ... identify any specific policy, procedure, or custom required to properly state a *Monell* claim." *Id.* at 7.

[30] To bring a claim for municipal liability under *Monell*, Thomas must plausibly allege the existence of an official policy or custom that caused him to be denied a constitutional right. *McDonald v. City of Troy*, 542 F. Supp. 3d 161, 174 (N.D.N.Y. 2021) (citing *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)). "[T]he Supreme Court has recognized that *Monell* liability may be established through: (1) a policy formally adopted and endorsed by the municipality; (2) actions taken by policymaking officials that caused the particular deprivation alleged; (3) practices by subordinate officials that are not expressly authorized but are so widespread and consistent that policymakers must have been aware of them; or (4) a failure by policymakers to train or supervise that amounts to deliberate indifference to the rights of those who come into contact with the inadequately trained or supervised municipal employees." *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 729 (N.D.N.Y. 2020) (internal quotation marks omitted) (citing *Deferio v. City of Syracuse*, 770 F. App'x 587, 589 (2d Cir. 2019) (summary order)).

**\*10** [31] [32] Upon review, Thomas has not plausibly alleged a *Monell* claim against either municipality. Although plaintiff identifies all four methods of proving a *Monell* claim, he fails to allege any *facts* that might tend to support any of them. As Judge Sharpe recently explained, "boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim." *Forrest v. Cnty. of Greene*, —— F. Supp. 3d ——, ——, 2023 WL 3864962, at *4 (N.D.N.Y. June 7, 2023), *reconsideration denied,* 2023 WL 5097970 (N.D.N.Y. Aug. 9, 2023).

Thomas's allegations are wholly conclusory and fail to provide the Court with any specific facts that could give rise to municipal liability under *Monell*. Accordingly, the Municipal Defendants' motion to dismiss plaintiff's *Monell* claims against the Towns must be granted.

### C. ADA and Rehabilitation Act Claims

Thomas also brings claims under the ADA and Rehabilitation Act. SAC ¶¶ 127–37. Thomas alleges that he was discriminated against because of his disabilities and that his disabilities were not accommodated by the Municipal Defendants. *Id.* ¶¶ 136–37.

The parties agree that Thomas has a "disability" within the meaning of both Acts. Plaintiff receives partial Social Security Disability because of his bipolar disorder and depression. *See* 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20) (A). However, the Municipal Defendants argue that plaintiff has not alleged that the Officers discriminated against him because of his disabilities or that he *made* any request for a reasonable accommodation that was denied or ignored by the Officers. Defs.' Mem. at 9.

[33] [34] Generally, claims brought under the ADA and the Rehabilitation Act are so similar that they may be analyzed together. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). "To assert a claim under the ADA or Rehabilitation Act, a plaintiff must establish that (1) they are qualified individuals with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Butchino v. City of Plattsburg*, 2022 WL 137721, at *9 (N.D.N.Y. Jan. 14, 2022) (quoting *Henrietta D.*, 331 F.3d at 272–73). "Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding." *Henrietta D.*, 331 F.3d at 272.

[35] While there is no individual liability under either Act, vicarious liability does exist for municipalities under the ADA and Rehabilitation Act. *Lalonde v. City of Ogdensburg*, 662 F.Supp.3d 289, 328–330 (N.D.N.Y. 2023) (collecting cases); *see also Williams v. First Transit, Inc.*, 2023 WL 7385570, at *3 (D. Conn. Nov. 8, 2023) (collecting cases).

As outlined in the previous Memorandum-Decision and Order issued in this case, interactions between a law enforcement officer and a disabled person qualifies as a service, program, or activity subject to accommodation under

the ADA and Rehabilitation Act. Courts have found two factual scenarios that give rise to ADA and Rehabilitation Act liability during an arrest: (1) when police arrest an individual because they misinterpret their disability to be criminal activity; and (2) when the police fail to reasonably accommodate an individual's disability during an arrest. *See Durr v. Slator*, 558 F. Supp. 3d 1, 27–28 (N.D.N.Y. 2021).

**\*11** The Second Circuit has held that a plaintiff is not required to specifically ask for a reasonable accommodation if his disability is apparent from the circumstances. *Durr*, 558 F. Supp. 3d at 33 (citing *Sage v. City of Winooski*, 2017 WL 1100882, at \*4 (D. Vt. Mar. 22, 2017)). In *Sage*, the court reasoned that where the police responded to an apparent trespass by a resident of a local adult-care facility, the police were effectively placed on notice of the suspect's mental disabilities by the nature of his residency. *Sage,* 2017 WL 1100882, at \*4 ("Here, the Complaint alleges that Mr. Sage's reference to Allen House should have communicated to the police that they were dealing with a mentally ill person.").

**[36]** Thomas has plausibly alleged that the Officers were aware—just as the officers in *Sage*—that they were dealing with a mentally ill person. *Sage*, 2017 WL 1100882, at \*4. Thomas's second amended complaint alleges that the Officers were responding to a call for a welfare check on an adult male suffering from a psychiatric, or "extreme mental health episode." SAC ¶ 28.

So, while Thomas does not allege that he or anyone else made an explicit request for an accommodation to the Officers that they ignored or refused, that failure alone does not defeat plaintiff's ADA and Rehabilitation Act clams at this early stage of the case. [10] *See Sage*, 2017 WL 1100882, at \*4. Therefore, plaintiff's ADA and Rehabilitation Act claims against the Municipal Defendants succeed on a theory of vicarious liability of the Towns for the involvement of the Officers. *See Lalonde*, 662 F.Supp.3d at 328–330. Accordingly, the Municipal Defendants' motion to dismiss plaintiff's ADA and Rehabilitation Act claims must be denied.

[10]    Thomas's second amended complaint only alleges that both the EMTs and his landlord requested that the Troopers loosen or remove his handcuffs—not the municipal defendants. SAC ¶¶ 51, 101–02.

### D. State-Law Tort Claims
Thomas also brings state-law tort claims against the Municipal Defendants. The Municipal Defendants claim that these claims must be dismissed against the Officers as untimely under the applicable statute of limitations. Defs.' Mem. at 9–10. Plaintiff argues that his claims against the Officers "relate back" to his original complaint, which was filed well within the applicable limitations period. Pl.'s Opp'n at 14.

Upon review, Thomas is correct. Rule 15(c)(1)(A) also permits relation back where "the law that provides the applicable statute of limitations allows relation back[.]" FED. R. CIV. P. 15(c)(1)(A). The Second Circuit has been clear that federal courts must look to the "entire *body* of limitations law that provides the applicable statute of limitations." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (emphasis original).

Courts therefore look to New York Civil Practice Law ("CPLR") § 1024, which governs claims brought against John Doe defendants. Section 1024 provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024 (McKinney).

"This provision allows substitution of John Doe defendants for named defendants *nunc pro tunc* where a plaintiff has met two requirements: (1) plaintiff exercised due diligence before the statute of limitations ran to identify the John Doe defendants by name and (2) plaintiff's description of the John Doe defendants fairly apprised the party that he is the intended defendant." *Curkin v. City of N.Y.*, 2020 WL 5628042, at \*9 (S.D.N.Y. Sept. 21, 2020) (cleaned up) (quoting *Hogan*, 738 F.3d at 518–19). In addition, the new party must be served with process within 120 days of the filing of the amended pleading naming them. *DaCosta v. City of N.Y.*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017) (citing *Bumpus v. N.Y. City Tr. Auth.*, 66 A.D.3d 26, 883 N.Y.S.2d 99 (2009)).

**\*12**  **[37]** Thomas clearly meets the liberal standard imposed by § 1024. Plaintiff provided the Municipal Defendants with notice of his claim on October 5, 2021. Ex. 1 to Decl. of Jeffrey A. Rothman, Dkt. No. 59-1. On December 21, 2021, Plaintiff sent the Municipal Defendants notice of his lawsuit and a request for waiver of service, in which he requested that defense counsel email plaintiff's counsel the identities of the then-unidentified John Does and Michael Moes so that they could be properly named in an amended pleading and properly served. Ex. 2 to Decl. of Jeffrey A. Rothman, Dkt. No. 59-2. Plaintiff therefore exercised his due diligence prior to the end of the applicable statute of limitations period. [11] Later, when plaintiff learned the Officer's identities and amended his pleading, he promptly served the Officers on June 21, 2023. Aff. Of Service, Dkt. No. 51.

[11]   Ordinarily "[s]ection 50–i [of the General Municipal Law] provides that a plaintiff must commence any action against a county for personal injury within one year and ninety days from the claim's accrual." *Rose,* 904 F. Supp. 2d at 248 (citing *Campbell v. City of N.Y.,* 4 N.Y.3d 200, 791 N.Y.S.2d 880, 825 N.E.2d 121, 122 (2005)). However, during the COVID-19 Pandemic, the then-acting Governor of the State of New York issued Executive Orders 202.8 and 202.72 thereby tolling the statute of limitations until November 3, 2020. Exec. Order No. 202.8 (Mar. 20, 2020); Exec. Order No. 202.72 (Nov. 3, 2020). Accordingly, the statute of limitations began to run on November 3, 2020, and ended on February 1, 2022.

Therefore, Thomas's second amended complaint adding Officer Gorham and Officer Henry relates back to his original pleading naming John Does and Michael Moes. Accordingly, plaintiff's state-law tort claims brought against the Officers are timely.

### 1. False Arrest and False Imprisonment

On the merits, Thomas brings a common-law tort claim for false arrest and false imprisonment. SAC ¶ 143.

**[38]**  "False arrest is a species of false imprisonment[.]" *Karen v. State,* 111 Misc.2d 396, 444 N.Y.S.2d 381 (N.Y. 1981) (citation omitted). Thomas has plausibly stated a claim for false arrest against the Officers for the reasons he has successfully pled a § 1983 claim for false arrest. *Weyant,* 101 F.3d at 852 ("[A] § 1983 claim for false

arrest ... is substantially the same as a claim for false arrest under New York law[.]"). Accordingly, the Municipal Defendants' motion to dismiss plaintiff's false arrest and false imprisonment claims must be denied.

### 2. Assault and Battery

Second, Thomas brings common-law assault and battery claims against the Officers for their participation in his arrest. SAC ¶ 146.

**[39]**  The elements of New York assault and battery and § 1983 excessive force claims are "substantially identical." *Tardif v. City of N.Y.,* 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Posr v. Doherty,* 944 F.2d 91, 94–95 (2d Cir. 1991). Further, civil battery under New York law merely requires "an intentional wrongful physical contact with another person without consent." *Tardif,* 991 F.3d at 410 (quoting *Charkhy v. Altman,* 252 A.D.2d 413, 678 N.Y.S.2d 40, 41 (1998)).

**[40]**  Therefore, for the same reason that Thomas's excessive force claims under § 1983 survive, so do his assault and battery claims. Accordingly, the Municipal Defendant's motion to dismiss plaintiff's assault and battery claims must be denied.

### 3. Trespass

Third, Thomas alleges that the Officers committed trespass when they entered his home without a warrant. SAC ¶ 149.

**[41]**  "The requisite elements for a claim of trespass are (1) the intentional entry by defendants on to plaintiffs' land and (2) the wrongful uses without justification or consent." *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.,* 578 F. Supp. 3d 511, 555 (S.D.N.Y. 2022) (citation omitted).

**[42]**  **[43]**  Plaintiff acknowledges that the Officers were dispatched to his home to complete a welfare check. SAC ¶ 28. Ordinarily, "law-enforcement officials have a privilege to enter private property to perform their legal duties." *Frederique v. Cnty. of Nassau,* 168 F. Supp. 3d 455, 489 (E.D.N.Y. 2016). But the scope of that privilege is still constrained by the Fourth Amendment. *See Kaplan v. Cnty. of Orange,* 528 F. Supp. 3d 141, 172 (S.D.N.Y. 2021) (collecting cases).

**\*13**  Therefore, Thomas's trespass claim survives for the same reasons Thomas's unreasonable search claim does.

Accordingly, the Municipal Defendant's motion to dismiss plaintiff's trespass claim must be denied.

#### 4. Vicarious Liability

Finally, Thomas brings a claim of *respondeat superior* liability against the Towns for the alleged state-law violations of the Officers. SAC ¶ 140.

[44] "Under the common-law doctrine of *respondeat superior,* an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment[.]" *Rivera v. State,* 34 N.Y.3d 383, 389, 119 N.Y.S.3d 749, 142 N.E.3d 641 (N.Y. 2019); *see also De Sole v. Knoedler Gallery, LLC,* 137 F. Supp. 3d 387, 416 (S.D.N.Y. 2015).

[45] Because this inquiry is fact-based, it is better suited for resolution after discovery. *Rivera,* 34 N.Y.3d at 390, 119 N.Y.S.3d 749, 142 N.E.3d 641. However, accepting all the factual allegations in Thomas's second amended complaint as true, it is plausible that the alleged state-law violations committed by the Officers were made in the scope of their employment and in the furtherance of the Towns' interests. Accordingly, the Municipal Defendants' motion to dismiss plaintiff's *respondeat superior* claims against the Towns must be denied.

### V. CONCLUSION

In sum, Thomas has plausibly alleged § 1983 claims against the Officers for (1) false arrest; (2) excessive force; and (3) unreasonable search. Plaintiff has also plausibly alleged state-law claims against the Officers for (1) false arrest and false imprisonment; (2) assault and battery; and (3) trespass. However, plaintiff has failed to plausibly allege § 1983 claims for First Amendment retaliation, Due Process violations, or Equal Protection violations. [12]

[12]    The State Defendants have not yet moved to dismiss Thomas's second amended complaint. However, plaintiff may wish to discontinue his First Amendment Retaliation, Due Process, and Equal Protection claims against the State Defendants for the same reasons that he fails to plausibly allege these claims against the Municipal Defendants.

As for the Towns, Thomas has failed to state a plausible § 1983 claim for municipal liability. Plaintiff has plausibly alleged that one or both of the Towns may be liable for alleged violations of the ADA and Rehabilitation Act when the Officers failed to provide plaintiff with a reasonable accommodation for his disabilities. Plaintiff has also plausibly alleged a theory of *respondeat superior*, or vicarious liability, against the Towns for the state-law claims against the Officers.

Therefore, it is

ORDERED that

1. The Municipal Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. The Municipal Defendants' motion to dismiss plaintiff's § 1983 claims for false arrest, excessive force, and unreasonable search is DENIED;

3. The Municipal Defendants' motion to dismiss plaintiff's § 1983 claims for First Amendment retaliation, due process violations, and equal protection violations is GRANTED;

4. The Municipal Defendants' motion to dismiss plaintiff's § 1983 claims for municipal liability is GRANTED;

5. The Municipal Defendants' motion to dismiss plaintiff's ADA and Rehabilitation Act claims is DENIED;

6. The Municipal Defendants' motion to dismiss plaintiff's state-law claims for false arrest and imprisonment, assault and battery, and trespass is DENIED;

*14 7. The Municipal Defendants' motion to dismiss plaintiff's state-law claim for *respondeat superior* against the Towns is DENIED.

8. The Municipal Defendants are ordered to file an ANSWER to plaintiff's remaining claims on or before January 30, 2024.

IT IS SO ORDERED.

#### All Citations

--- F.Supp.3d ----, 2024 WL 118939, 117 Fed.R.Serv.3d 1346

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Forrest v. County of Greene, Slip Copy (2023)

2023 WL 5097970

2023 WL 5097970
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Taylor FORREST et al., Plaintiffs,
v.
COUNTY OF GREENE et al., Defendants.

1:22-cv-276 (GLS/ML)
|
Signed August 9, 2023

**Attorneys and Law Firms**

Mark Fraiden, Fraiden & Fraiden LLP, Bronx, NY, for
Plaintiffs.

Thomas K. Murphy, Murphy Burns LLP, Loundonville, NY,
for Defendants.

### SUMMARY ORDER

Gary L. Sharpe, United States District Judge

**\*1** Plaintiffs Taylor Forest and Jimmy Diresta brought
this action alleging violations of the Fourth and Fourteenth
Amendments pursuant to 42 U.S.C. § 1983, Article I, §
12 of the New York Constitution, and New York State law
against the County of Greene, Sheriff of Greene County,
Meghan Downey, Charles Cole II, and Peter Kusminsky, in
their individual and official capacities. (Am. Compl., Dkt.
No. 12.) In a June 7, 2023 Memorandum-Decision and Order
(hereinafter "the Decision and Order"), the court granted in
part and denied in part a motion to dismiss the amended
complaint brought by the County, Sheriff of Greene County,
and Kusminsky. (Dkt. No. 21.) Specifically, the motion to
dismiss was: granted as to all claims against Sheriff of Greene
County, granted as to § 1983 claims against the County and
Kusminsky, granted as to plaintiffs' first cause of action for
unlawful search and seizure under New York State law, only
as against Kusminsky, and denied in all other respects. (*See id.*
at 25.) Now pending before the court is Kusminsky's motion
for reconsideration of the Decision and Order. (Dkt. No. 23.)
For the reasons that follow, Kusminsky's motion is denied.

Kusminsky requests that the court reconsider the Decision
and Order "to the extent that it permitted Plaintiffs' third
and fifth [c]auses of [a]ction for the intentional torts of false

arrest and failure to intervene under state law, respectively,
to proceed against [him]." (Dkt. No. 23, Attach. 1 at 1.)
Kusminsky's primary contention is that the court "erred in not
dismissing all claims against [him] after finding plaintiff[s]
failed to allege" he was personally involved in the underlying
events. (*Id.* at 2-4.) Plaintiffs argue that Kusminsky's motion
is null because he did not file and serve a notice of motion, [1]
that he fails to meet his burden of demonstrating a change in
controlling law, the existence of new evidence, or a need to
correct a clear error of law or to prevent manifest injustice,
that the court correctly determined that Kusminsky only
moved for dismissal of the § 1983 claims and the first cause
of action, [2] that the court did not use a strained, irrational,
or unintended interpretation of the complaint in concluding
the term "defendants" includes Kusminsky, and that plaintiffs
would be unduly prejudiced if the court were to impart a
different meaning to the plain language of the complaint.
(Dkt. No. 28, Attach. 1 at 4-7.)

[1]     On July 7, 2023, counsel for defendants explained
in a letter that Kusminsky did, in fact, file a
notice of motion, (Dkt. No. 25), and, on July 10,
2023, plaintiffs acknowledged this to be true and
withdrew their argument, (Dkt. No. 28).

[2]     The court granted the motion to dismiss as to the
first cause of action for unlawful search and seizure
under New York State law as against Kusminsky
because plaintiffs did not have a private right of
action when an adequate alternative remedy is
available under § 1983. (Dkt. No. 21 at 19-24.) The
Decision and Order notes that this theory may have
applied to the other causes of action brought under
New York State law against Kusminsky, however,
the motion only sought dismissal of the unlawful
search and seizure claim under this theory, not any
of the other state-constitutional claims. (*Id.* at 19,
n.9; Dkt. No. 16, Attach. 2 at 4-5.)

**\*2** Motions for reconsideration proceed in the Northern
District of New York under Local Rule 60.1 (formerly Rule
7.1(g)). [3] "In order to prevail on a motion for reconsideration,
the movant must satisfy stringent requirements." *In re C-TC
9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995).
Such motions "will generally be denied unless the moving
party can point to controlling decisions or data that the court
overlooked—matters, in other words, that might reasonably
be expected to alter the conclusion reached by the court."
*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The prevailing rule "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to re[-]litigate an issue already decided." *Shrader*, 70 F.3d at 257.

3        Local Rule 60.1 provides:

Unless otherwise provided by the Court, by statute or rule ..., a party may file and serve a motion for reconsideration or reargument no later than FOURTEEN DAYS after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2). The briefing schedule and return date applicable to motions for reconsideration shall conform to L.R. 7.1(a) .... The Court will decide motions for reconsideration or re-argument on submission of the papers, without oral argument, unless the Court directs otherwise.

First, Kusminsky contends that a review of plaintiff's fifth cause of action for failure to intervene under New York law "reveals that it expressly states it is being alleged against 'those defendants that were present [at the traffic stop] ... and failed to intervene,' " that the videos attached to the complaint demonstrate that only Downey and Cole were present, and that, therefore, he is not a defendant to this cause of action. (Dkt. No. 23, Attach. 1 at 2.) However, contrary to Kusminsky's contention, "a plain reading of the [a]mended [c]omplaint" demonstrates that the fifth cause of action was alleged against him. (*Id.* at 3.) The amended complaint alleges that Kusminsky, as sheriff of Greene County, was "responsible for the appointment, hiring, training, supervision, discipline, retention, and conduct of ... [Downey] and [Cole]." (Dkt. No. 12 ¶ 25.) The amended complaint also alleges that Kusminsky, acting through agents, servants, and/or employees, unlawfully seized plaintiffs and their property, falsely arrested plaintiffs, and unlawfully searched their property. (*Id.* ¶¶ 40, 42, 44, 47, 50, 51.) There is no intervening change in controlling law, new evidence not previously available, clear error of law, or manifest injustice that would justify reconsideration of the court's finding that Kusminsky was a party to the fifth cause of action —particularly in light of the fact that, on a motion to dismiss,

the complaint is construed in the light most favorable to the non-moving party.[4]

4        The court explicitly set out this well-settled standard of review for a motion to dismiss, as it applied to the fifth cause of action, in the Decision and Order and, therefore, any re-litigation of this point is improper and has not been taken into consideration. *See Shrader*, 70 F.3d at 257.

Second, Kusminsky asserts that plaintiffs' third cause of action for false arrest and false imprisonment under New York State law was alleged against "[t]he defendants" and that the court "erred in considering 'defendants' to include ... Kusminsky." (Dkt. No. 23, Attach. 1 at 3.) Kusminsky is, of course, a defendant to this action. (*See generally* Dkt. No. 12.) And, even if the words "the defendants" were ambiguous, as explained above, plaintiffs explicitly allege in the amended complaint that "[*Kusminsky*] acting through [his] agents, servants, and/or employees, *detained the plaintiffs and their property*" and "[*Kusminsky*] acting through [his] agents, servants, and/or employees, *falsely arrested the plaintiffs.*" (*Id.* ¶¶ 42, 44 (emphasis added).) As such, the third cause of action was alleged against Kusminsky on the face of the amended complaint.

**\*3** Third, Kusminsky contends that he "relied on the lack of any alleged personal involvement as the reason for all claims against [him] to be dismissed." (Dkt. No. 23, Attach. 1 at 3.) As explained in the Decision and Order, "personal involvement" is a requirement to maintain an action under § 1983. (Dkt. No. 21 at 17.) Kusminsky did not argue in his motion to dismiss that personal involvement was also required to maintain claims for false arrest, false imprisonment, or failure to intervene under New York law; Kusminsky argued, correctly, that personal involvement is required to maintain a § 1983 claim, explained why any § 1983 claim against him must be dismissed for this reason and then, without any authority to suggest the same standard applied to claims other than those brought pursuant to § 1983, suggested that "all claims" against him must be dismissed. (*See generally* Dkt. No. 16, Attach. 2.) He acknowledges that he did not explicitly move to dismiss these New York State claims, and, instead, blames the court for not dismissing them *sua sponte*. (Dkt. No. 23, Attach. 1 at 4) (citing *Alki Partners L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011).) While *Alki Partners L.P.* may support an argument that, under the proper circumstances, a court *may* dismiss a complaint as to a non-moving defendant, it does not,

**Forrest v. County of Greene, Slip Copy (2023)**

2023 WL 5097970

as Kusminsky ostensibly suggests, hold that it is an error of law when a court does not exercise this discretion. *See* 769 F. Supp. 2d at 499.

Kusminsky has merely demonstrated that he is dissatisfied with the Decision and Order and has not submitted any intervening change in controlling law, the availability of new evidence not previously available, or the need to correct a clear error of law or prevent manifest injustice. *See In re C-TC 9th Ave. P'ship,* 182 B.R. at 3 (citation omitted). Because he has failed to meet the stringent standard that governs reconsideration, Kusminsky's motion is denied.

Accordingly, it is hereby

**ORDERED** that Kusminsky's motion for reconsideration (Dkt. No. 23) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 5097970

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 59 of 102

Laspisa v. CitiFinancial, Not Reported in Fed. Supp. (2017)

2017 WL 3769570

2017 WL 3769570
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

John LASPISA, Plaintiff,

v.

CITIFINANCIAL; and Does 1 to 20, Defendants.

1:17-CV-0556 (GTS/DJS)
|
Filed 08/29/2017
|
Signed August 30, 2017

**Attorneys and Law Firms**

JOHN LASPISA, 166 Ballston Ave., Ballston Spa, New York 12020, Plaintiff, Pro Se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by John Laspisa ("Plaintiff") against the above-captioned entity and Does 1 to 20 ("Defendants"), is United States Magistrate Judge Daniel J. Stewart's Report-Recommendation recommending that this action be *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e) unless, within (30) days of the date of a Decision and Order adopting the Report-Recommendation, Plaintiff files an Amended Complaint that corrects the pleading defects identified in the Report-Recommendation. (Dkt. No. 5.) Plaintiff has not filed an objection to the Report-Recommendation, and the deadline in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Stewart's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. [1] Magistrate Judge Stewart

employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein.

[1]  When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation (Dkt. No. 5) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that this action shall be *sua sponte* **DISMISSED** pursuant to 28 U.S.C. § 1915(e) unless, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an Amended Complaint that corrects the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that, if Plaintiff files an Amended Complaint within the referenced thirty-day period, then the Amended Complaint shall be referred to Magistrate Judge Stewart for his review; if, however, Plaintiff fails to file an Amended Complaint within the referenced thirty-day period, then this action shall be dismissed without further Order of the Court.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3769570

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00172-MAD-TWD     Document 7     Filed 05/10/24     Page 60 of 102

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

2020 WL 409744
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Rodney JOSEPH, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

18-cv-7197 (NSR)

|

Signed 01/23/2020

**Attorneys and Law Firms**

Rodney Joseph, Napanoch, NY, pro se.

Rebecca Lynn Johannesen, NYS Office of the Attorney General, New York, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

**\*1** *Pro se* Plaintiff, Rodney Joseph ("Plaintiff"), formerly incarcerated at Sullivan Correctional facility, brings this action under 42 U.S.C. § 1983, asserting claims of deliberate indifference to his medical needs, forcible touching, assault, retaliation, denial of due process, and impeding religious practice. (*See* Complaint ("Compl."), ECF No. 2.) Plaintiff sues 44 medical staff members, kitchen staff members, correctional officers, and correctional officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), including Anthony Annucci, William Keyser, Edward Burnett, Gail Williams, Angelo Justiniano, Corey Proscia, Joseph Maxwell, Lane Kortright, Swany Reid, Frank Decker, Samuel Encarnacion, Stainislaus Ogbonna, Jefrysson Aldana, Scott Christie, Colleen Bennett, Tanya Pomeroy, Wladyslaw Sidorowicz, Janice Wolf, S.T. Herman, Epifanio Tolentio, Kevin Miller, Wayne Jordan, William Beach, Renee Askew, Michael Wood, Van Fuller, Gina Maliga, Heather Wyatt, William Elberth, Kellyanne Giminiani, Christopher Conway, Blain Reddish, Mark Puerschner, David Jurgens, Edward Bonnell, Shaun Braisington, Joseph Franke, Matthew DeFrank, Chester Stungis, Robert Depaolo, and Adam Jarosz (the "Represented Defendants"). [1] (*Id.*)

Defendants Ginger Eggler, "Ginsin," and Alan Hanson have not been served. (*See* ECF Nos. 10, 11, and 15; Defendants' Memorandum of Law in Support of Their Motion to Dismiss, ECF No. 80 ("Defs.' Mot.") at 8, n.1.)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Represented Defendants have moved to dismiss the Complaint. (*See* ECF No. 79.) Plaintiff has not responded to the motion; thus, per a memorandum endorsement dated August 5, 2019, the Court deemed the motion fully submitted. (*See* ECF No. 81.) For the following reasons, the Represented Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part.

BACKGROUND

**I. Factual Allegations**
The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

**a. Plaintiff's Medical Condition and Treatment**
Plaintiff asserts that in or about 2008, after suffering a heart attack, he was placed on diabetic medications by a Sullivan Correctional Facility ("Sullivan") doctor. (Compl. at 18.) Sometime in 2016, however, he was taken off the diabetic medications by the medical staff at Sullivan. (*Id.*) Shortly after being taken off the diabetic medications, Plaintiff began to suffer pain in his arms, difficulty breathing, and an increased heart rate. (*Id.*) He complained to the Medical Department on a sick call visit, but only received 30 days off from work. (*Id.*) Plaintiff asserts that the pain got worse and he kept going to sick call but nothing was done to alleviate his pain. (*Id.*) In or about June 2017, after going to emergency sick call with "unbearable pain," Plaintiff suffered another heart attack and was rushed to a hospital where he underwent quadruple-bypass heart surgery. (*Id.*) Plaintiff asserts the following: the medical staff taking him off the diabetic medications led to his heart attack; he is presently in severe pain but is not receiving all of the recommended medications prescribed by a specialist; and he is possibly suffering the symptoms of another imminent heart attack or stroke. (*Id.* at 18–19.)

2020 WL 409744

**b. January 11, 2018 Incident**

*2 Plaintiff also asserts forcible touching and assault claims against Defendant Correctional Officer Wyatt ("Wyatt") stemming from an incident that occurred on or about January 11, 2018. (*Id.* at 19.) Plaintiff alleges that, on January 10, 2018, he filed a grievance against Wyatt. (*Id.*) He alleges that after he filed the grievance, when he delivered feed-up bags for other inmates, Wyatt ordered him on the wall for a pat frisk although he had previously been pat frisked when he left the kitchen. (*Id.*) Plaintiff claims that while he was on the wall, Wyatt "started squeezing and poking in the areas where [he] had [his] quadruple-by-pass surgery, chest, arms, legs, and private parts." (*Id.* at 20.) Plaintiff alleges that Wyatt's actions caused him chest pains and led to a one-week hospital stay at Albany Medical Center because most of his arteries were blocked. (*Id.*)

**c. Officers' Retaliation**

Plaintiff asserts that Wyatt acted in retaliation for Plaintiff's filing of the grievance against her. (*Id.*) Plaintiff also claims that he was subjected to retaliation by other correction officers for the filing of grievances. (*Id.*) He claims the following retaliatory actions: he was issued a fabricated misbehavior report and his job assignment was taken away on or about June 20, 2018, despite an "excellent work evaluation"; DOCCS staff would not allow him to notify his family when he was admitted to an outside hospital, or allow him to call his family; his cell was unreasonably searched five out of seven days; he was denied access to medication; and his religious callout was cancelled without a security reason. (*Id.* at 21–22.)

**d. Incident with Correctional Officer Elberth**

Finally, Plaintiff alleges that while conducting a pat frisk, Correctional Officer Elberth ("Elberth") told him to reach back with his left hand and take off his right boot. (*Id.* at 22.) When Plaintiff told Elberth that he was unable to stretch out like that because of his medical issues, Elberth grabbed his left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall, causing him pain. (*Id.*) Plaintiff claims that Elberth then did the same thing to his right leg, despite Plaintiff informing Elberth that he was in pain. (*Id.*) After the incident, Plaintiff went to emergency medical and had to be rushed to the hospital for a "minor heart attack." (*Id.*) Plaintiff claims that the attack was caused by Elberth's actions, and now every time he sees Elberth, the officer threatens him. (*Id.*) Plaintiff asserts that Elberth also

sends unspecified threatening messages to him through other correction officers. (*Id.*)

**LEGAL STANDARD**

**I. Rule 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

*3 *Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

**II. Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction in a federal court bears

Case 1:24-cv-00172-MAD-TWD Document 7 Filed 05/10/24 Page 62 of 102

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

the burden of proving that jurisdiction by the preponderance of the evidence. *Id.* The court must take all facts in the complaint as true and draw all inferences in favor of the party asserting jurisdiction. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2000). As with Rule 12(b)(6), when dealing with Rule 12(b)(1), the Court construes the allegations in a *pro se* plaintiff's complaint in the light most favorable to the *pro se* plaintiff. *Makarova*, 201 F.3d at 113.

### III. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.' " *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

### I. Defendants Who Are Only Named in the Caption

As an initial matter, Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are only named in the caption and the complaint contains no allegations that they violated the law or otherwise caused injury to the Plaintiff.

Plaintiff fails to assert personal involvement on the part of these 40 defendants in this matter. In order to hold a defendant responsible for a constitutional deprivation, Plaintiff must demonstrate, *inter alia*, the defendant's personal involvement.

*Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). "[P]ersonal involvement of Defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C. § 1983.]" *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692–95 (1978). Supervisory officials may be personally involved within the meaning of § 1983 only if he or she participated in unlawful conduct. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). "A Plaintiff must thus allege a tangible connection between the acts of a Defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[A] Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In the context of a prisoner's lawsuit, a Plaintiff must show "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

**\*4** Here, Plaintiff fails to allege facts of any personal involvement by the 40 aforementioned defendants. They are named in the caption only. The body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured the Plaintiff in some manner. For this reason, the claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are dismissed without prejudice for lack of personal involvement.

### II. Eighth Amendment Medical Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1) an objectively serious medical need and (2) subjective

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 63 of 102

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, "the defendant's belief that his conduct poses no serious harm ... need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). Further, the charged official must be aware that there is a substantial risk of harm. *Id.*

Defendant does not allege that any Defendant was involved in his medical care or treatment—his Complaint mentions that "DOCCS Staff" took him off the diabetic medications, and that he made complaints to the "Medical Department" at sick call. (*See* Compl. at 18.) While chest pain resulting from clogged arteries and heart attacks surely constitute serious medical conditions, [2] Plaintiff has failed to allege any Defendant's involvement in, let alone any Defendant's deliberate indifference to, Plaintiff's medical care. Therefore, Plaintiff's Eighth Amendment claim is dismissed without prejudice.

[2]    "[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard." *Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *5 (S.D.N.Y. Mar. 29, 2016) (quoting *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005)); *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (noting that "ignoring a prisoner's complaints of chest pains where the prisoner later died of a heart attack" has been found to constitute a sufficiently serious injury).

It is possible that Plaintiff intended to bring claims against certain named defendants from the caption, whom he has identified as serving in medical roles at Sullivan: Ginger Eggler (Nurse Administrator 1); Colleen Bennett (Nurse Administrator 2); Wladyslaw Sidorowicz (Facility Doctor); and Janice Wolf a/k/a Janice Wolf-Friedman (Facility Doctor). To the extent that Plaintiff can provide more factual allegations relating to these four defendants with respect

to Plaintiff's alleged medical indifference claim, Plaintiff is granted leave to replead that claim.

## III. Retaliation Under the First Amendment

**\*5** Plaintiff's claims against several prison officials regarding alleged retaliatory action sound in the First Amendment. To properly assert a First Amendment retaliation claim, a plaintiff has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation ... Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds, Swierkewicz v. Sorema*, 534 U.S. 506 (2002) (citations omitted).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* In addition, the "casual connection" element requires plaintiffs to prove that an adverse action relates to protected First Amendment activity —that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.' " *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 64 of 102

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

virtually any adverse action taken against a prisoner by a prison official —even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.... Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

### a. January 11, 2018 Incident and Cell Searches

Plaintiff alleges that Defendant Wyatt retaliated against him because he filed a grievance against Wyatt on January 10, 2018, when Plaintiff discussed the grievance with Defendant Sergeant Fuller. (Compl. at 19.) Plaintiff alleges that this retaliation took the form of a pat frisk on January 11, 2018, in which Wyatt "squeez[ed]" and "pok[ed]" his chest, arms, legs, and "private parts." (*Id.* at 20.) Plaintiff further alleges that Area Sergeant Defendant Hanson told him that "if [he] did not sign off on this grievance, [he] was going to have a whole lot of problems." (*Id.* at 20.) Additionally, Plaintiff alleges that his cell was searched in an "unreasonable manner" five out of seven days. (*Id.* at 21.)

On these issues, Plaintiff has failed to state a claim for relief because "cell searches and pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim." *Amaker v. Fischer*, No. 10-CV-0977A SR, 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014), *report and recommendation adopted*, No. 10-CV-0977, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015). This is "because inmates have no reasonable expectation of privacy in their prison cells" and therefore "no constitutional right to be free from cell searches of any kind, including retaliatory cell searches." *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005); *see also Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010) ("Cell searches and pat frisks are an ordinary part of prison life and ... do not deter the average inmate from continuing to exercise ...

First Amendment rights"). Furthermore, the Complaint does not link the cell searches to any particular defendant. (*See* Compl. at 21.) Accordingly, even if retaliatory in nature, Plaintiff's claims against Defendants Wyatt, Hanson, and any other defendants regarding these incidents must be dismissed with prejudice. [3]

[3]     To the extent that Plaintiff's allegation suggest that Defendant Wyatt used excessive force, these allegations also fail to state a claim upon which relief can be granted. The actions alleged by Plaintiff do not rise to the level of a constitutional violation. *See Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at *7 (S.D.N.Y. Dec. 18, 2003) (rejecting Eighth Amendment claim where defendant's action in pressing plaintiff's face into a wall while conducting a pat frisk was "consistent with a good faith attempt to maintain prison discipline and order" and lacked "malicious" intent).

    To the extent that Plaintiff alleges that Defendant Wyatt committed offenses under the New York State Penal Law, this claim must be dismissed because the law does not provide a private right of action to enforce rights allegedly created by this provision. *See Casey Sys., Inc. v. Firecom, Inc.*, No. 94 CIV. 9327 (KTD), 1995 WL 704964, at *3 (S.D.N.Y. Nov. 29, 1995) ("As a general rule, when a statute is contained solely within the Penal Law Section, the legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction.").

### b. Loss of Job Assignment

**\*6**  Plaintiff further alleges that his job assignment was taken away from him due to a "fabricated misbehavior report" as retaliation for Plaintiff's filing of harassment grievances. (Compl. at 21.) Plaintiff notes that despite his "excellent work evaluation," the proffered basis for his termination was that Plaintiff "do[es] not get along with other inmates and staff." (*Id.*) This claim similarly fails on the pleadings.

Defendants are correct that inmates do not have any constitutional, statutory, or regulatory right to any prison job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedential right to his prison job.' "). Furthermore, the thin allegations contained in the complaint are "wholly conclusory with no plausible nexus between the grievance

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

and the misbehavior report." *White v. Bergenstock*, No. 08 Civ. 717, 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009). Plaintiff's Complaint does not contain any allegations as to the nature of the misbehavior report that led to the loss of his job, who wrote the misbehavior report, nor does it connect the writer of that misbehavior report to the grievances in any way. *See Bouknight v. Shaw*, No. 08 CIV 5187(PKC), 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (finding plaintiff's allegation that officer "wrote [him] up for revenge" was conclusory and insufficient to state a plausible retaliation claim).

Consequently, these claims are dismissed without prejudice. To the extent that Plaintiff can provide more factual allegations relating to the author of the misbehavior report and a connection between Plaintiff's grievance, the misbehavior report, and loss of Plaintiff's job, Plaintiff is granted leave to replead his claim.

**IV. First Amendment Freedom of Speech**

Plaintiff additionally asserts that "DOCCS staff" did not allow him to notify his family about his treatment at an outside hospital, and that he was not allowed to call them. (Compl. at 21.) This amounts to a First Amendment freedom of speech claim, which is a cognizable claim under § 1983. *See Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection."). First Amendment rights "may not be infringed without good cause," and "there must be a showing of a substantial governmental interest serving the legitimate and reasonable needs and exigencies of the institutional environment ... to warrant such limitations upon an individual inmate's rights to communicate." *Id.* (internal citations omitted). But, as courts considering prison telephone restrictions have agreed, "an inmate has no right to unlimited telephone use." *Pitsley v. Ricks*, No. 96-CV-0372NAMDRH, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000) (citing support from First, Sixth, Seventh, Eighth, Fifth, and Ninth Courts of Appeals). The same holds true with regard to mailing non-legal letters. *See Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972) ("[A] prisoner's right to mail letters to his family or friends is not absolute.").

In any case, allegations of infringement of rights must have some specificity. Again, Plaintiff has failed to allege that any Defendant in this action was involved in this denial. For the reasons outlined above, because a defendant's personal involvement is a necessary element of a 1983 claim, *see*

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), this claim must be dismissed without prejudice.

**V. First Amendment Free Exercise**

**\*7** Plaintiff's next claim pertains to the exercise of his religious beliefs, which he claims were infringed by an "intentional" cancellation of his religious "call-out." (Compl. at 22.) Plaintiff alleges that "there is no security reason for this." (*Id.*)

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore ... religious beliefs in accordance with the dictates of their conscience.' " *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Second Circuit has acknowledged, however, that "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted).

To establish a free exercise claim, courts in this Circuit have generally required inmate plaintiffs to plead that the disputed conduct substantially burdened a sincerely held religious belief. *See Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). Defendants "then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct[.]" *Salahuddin*, 467 F.3d at 275.

In the present action, Plaintiff has again failed to allege that any Defendant was involved in the cancellation of his religious call out. Plaintiff does not specify how often or why his callout was canceled. Without more, Plaintiff cannot plausibly allege that his sincerely held religious beliefs were "substantially burdened." *See Williams v. Weaver*, No. 9:03CV0912(LEK/GHL), 2006 WL 2794417, at *5 (N.D.N.Y. Sept. 26, 2006) (denial of access to two weekly religious services does not constitute substantial burden); *c.f. George v. Cty. of Westchester*, NY, No. 13 CV 4511 VB, 2014 WL 1508612, at *4 (S.D.N.Y. Apr. 10, 2014) (finding substantial burden plausibly alleged where plaintiff

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

was denied congregate religious services "repeatedly" over two periods totaling approximately ten months). Accordingly, this claim is also dismissed without prejudice.

## VI. Eighth Amendment Excessive Force

Next, Plaintiff's description of the incident with Correctional Officer Elberth may be read to present an Eighth Amendment excessive force claim. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. For a prisoner to prevail on a claim asserting that he was subjected to cruel and unusual punishment, he must prove both "an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or failed to act, with a 'sufficiently culpable state of mind.' " Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

**\*8** The objective prong, requiring the alleged conduct to be " 'sufficiently serious' to reach constitutional dimensions," Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013), is a context-specific standard that focuses on the harm done given "contemporary standards of decency." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). The Supreme Court has explained that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9. Therefore, "the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] per se ... whether or not significant injury is evident." Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999). Nevertheless, "a de minimis use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Lebron v. Mrzyglod, No. 14-CV-10290(KMK), 2019 WL 3239850, at \*14 (S.D.N.Y. July 18, 2019).

### a. Excessive Force Analysis

Here, during the course of a pat frisk, Plaintiff alleges that Elberth instructed him to reach back with his left hand and take off his right boot. (Compl. at 22.) Plaintiff did not comply, and instead told Elberth that "he could not reach back like that because he had a Qua[dru]ple By Pass and was unable to stretch back like that." (Id.) In response, Elberth grabbed Plaintiff's left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall.

(Id.) Plaintiff further specifies that Elberth retorted, "How does that feel?", to which Plaintiff responded that he was in pain. (Id.) Elberth then repeated the action using Plaintiff's right leg. (Id.) Subsequently, Plaintiff suffered a "minor heart attack." (Id.)

Defendants argue that the amount of force described by Plaintiff was commensurate with the need to conduct a pat frisk and does not rise to the level of a constitutional violation. The Court recognizes that "a pat frisk, involving some physical contact, is a standard procedure inside a prison." Beckles v. Bennett, No. 05 CIV 2000 (JSR), 2008 WL 821827, at \*20 (S.D.N.Y. Mar. 26, 2008). As such, allegations of aggressive pat frisks have generally not been found to be "sufficiently serious" to present viable excessive force claims. See Tavares v. City of New York, No. 08 CIV. 3782 PAE JCF, 2011 WL 5877550, at \*6 (S.D.N.Y. Oct. 17, 2011), report and recommendation adopted, No. 08 CIV. 3782 PAE, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011) (finding "actions taken consistent with a forceful pat frisk—the most serious contact alleged by the plaintiff—are not sufficiently 'repugnant to the conscience of mankind,' to give rise to an Eighth Amendment claim."); Kalwasinski v. Artuz, No. 02 CV 2582 (LBS), 2003 WL 22973420, at \*6 (S.D.N.Y. Dec. 18, 2003) (pressing inmate's face into the wall while conducting pat frisk was "commensurate with the need to conduct a pat frisk"); Rivera v. Goord, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (finding level of force applied in "aggressive pat frisks" does not rise to a constitutional violation); see also Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (no excessive force found where, while handcuffing plaintiff, officer pulled plaintiff's hands behind his back and pushed him against a bar).

While the level of force alleged here by Plaintiff may not, on its own, rise to the level of a constitutional violation, Plaintiff has alleged extenuating circumstances that distinguish his case from those involving run-of-the-mill pat frisks. Plaintiff alleges that he informed Elberth of his medical condition and heart surgery, which prevented him from moving his body as Elberth had instructed. Plaintiff further alleges that he did suffer physical pain as a result of Elberth's actions—and informed Elberth of this—but that Elberth disregarded Plaintiff's condition and continued to forcefully move Plaintiff's legs. Plaintiff has thus averred sufficient facts to plausibly claim that force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." Hudson, 503 U.S. at 6; see also Santiago v. Westchester Cty., No. 13–CV–1886, 2014 WL 2048201, at \*5 (S.D.N.Y. May

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

19, 2014) (finding allegations that a prison official "threw [the] [p]laintiff to the ground, twisted his arm, [and] picked him up off the ground while squeezing his throat ... lead to a plausible inference that the force inflicted was malicious and wanton").

**\*9** This conclusion is reached by construing the allegations in the Complaint in a light most favorable to Plaintiff, and bearing in mind Plaintiff's status as a *pro se* litigant. Evidence uncovered during discovery may ultimately prove that the force employed by Defendant Elberth was done in a good faith effort to maintain or restore discipline, but such a determination is best resolved on a motion for summary judgment or at trial. *See Olutosin v. Lee*, No. 14-CV-685 (NSR), 2016 WL 2899275, at \*9 (S.D.N.Y. May 16, 2016); *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) ("[T]he fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide.") (collecting cases). As such, Defendants' motion to dismiss is denied as to Plaintiff's excessive force claims against Defendant Elberth.

### b. Qualified Immunity Defense

Defendants argue that Defendant Elberth should be entitled to the defense of qualified immunity. The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.' " *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) whether the right was defined with "reasonable specificity"; (2) whether the Supreme Court and the applicable circuit court support the existence of the right; and (3) whether under existing law a reasonable defendant would have understood that the conduct was unlawful. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013). "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11 CV. 7450(PKC)(HBP), 2012 WL 4761582, at \*4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to

dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity).

It is well-settled that freedom from the use of excessive force is a clearly established constitutional right. *See, e.g., Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007). As discussed above, the Complaint sufficiently alleges a violation of Plaintiff's clearly established constitutional right to be free from excessive force under the Eighth Amendment. Further, "nothing at this stage of the proceedings suggests that [the defendant] reasonably believed his actions to be lawful at the time of the challenged act." *Santiago*, 2014 WL 2048201, at \*5. Consequently, the Court does not find the application of qualified immunity to be warranted at this juncture.

### VII. Defendant Fuller

The only other Defendant named in the Complaint, Defendant Fuller, is also not alleged to have been personally involved in any constitutional violation. Plaintiff's only allegation against Defendant Fuller is that Plaintiff and Defendant Fuller engaged in a discussion about Plaintiff's intent to file a grievance against Defendant Wyatt. (Compl. at 19.) These allegations fail to show Defendant Fuller's personal involvement in any constitutional violation, and for the same reasons as previously stated, he is therefore dismissed from this action without prejudice.

### CONCLUSION

**\*10** For the foregoing reasons, Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part. The motion is denied as to Plaintiff's excessive force claims against Defendant Elberth. The motion is granted as follows:

The following of Plaintiff's claims are dismissed *with prejudice*:

- Plaintiff's First Amendment retaliation claims against Defendants Wyatt, Hanson, and any other defendants regarding the January 11, 2018 incident and cell searches.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 68 of 102

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

The following of Plaintiff's claims are dismissed *without prejudice*:

- Plaintiff's Eighth Amendment medical indifference claims against Eggler, Bennett, Sidorowicz, and Wolf;

- Plaintiff's First Amendment retaliation claim regarding the loss of his job assignment;

- Plaintiff's First Amendment freedom of speech claim;

- Plaintiff's First Amendment free exercise claim; and

- All remaining claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, and Fuller.

Accordingly, the Clerk of the Court is respectfully directed to terminate the Represented Defendants' Motion to Dismiss at ECF No. 79.

Plaintiff shall have thirty-five days from the date of this Opinion, on or before February 27, 2020, to amend the Complaint as to those claims that are dismissed without prejudice. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Order—must be included in the amended complaint. An Amended Civil Rights Complaint form is attached to this Opinion. If Plaintiff elects to file an amended complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

If Plaintiff does not file an amended complaint within thirty-five days, and he cannot show good cause to excuse such a failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice, and the Complaint (ECF No. 2) will serve as the operative complaint in this action to which remaining Defendants should respond. The remaining Defendant Elberth is directed to file an answer to the Complaint on or before March 19, 2020. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before April 9, 2020.

The Clerk of the Court is respectfully directed to terminate Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, Fuller, Wyatt, and Hanson. The Clerk of the Court is directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

**\*11** SO ORDERED.

Attachment



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Write the full name of each plaintiff.

_____ CV _____
(Include case number if one has been assigned)

-against-

AMENDED
COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**
Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 69 of 102
2020 WL 409744

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other:

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name            Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                      State                  Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other:

Page 2

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name            Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                      State                  Zip Code

Defendant 2:

First Name            Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                      State                  Zip Code

Defendant 3:

First Name            Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                      State                  Zip Code

Defendant 4:

First Name            Last Name              Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                      State                  Zip Code

Page 3

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:

Date(s) of occurrence:

FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

Page 4

INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

Page 5

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**

2020 WL 409744

**VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |
| First Name        Middle Initial        Last Name | |
| Prison Address | |
| County, City        State        Zip Code | |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

--------------------------------------------------------------x

Plaintiff(s),

- against -

Defendant(s).

**CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

_____ CV _____ (NSR)

--------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.  All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.  This case [is] [is not] to be tried to a jury.

3.  Joinder of additional parties to be accomplished by _____.

4.  Amended pleadings may be filed until _____.

5.  Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.  First request for production of documents, if any, shall be served no later than _____.

7.  Non-expert depositions shall be completed by _____.

    a.  Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.  Depositions shall proceed concurrently.

    c.  Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10.  Expert reports shall be served no later than _____.

11.  Rebuttal expert reports shall be served no later than _____.

12.  Expert depositions shall be completed by _____.

13.  Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.  **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.  Any motions shall be filed in accordance with the Court's Individual Practices.

16.  This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.  The Magistrate Judge assigned to this case is the Hon. _____.

18.  If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.  The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge

**All Citations**

Not Reported in Fed. Supp., 2020 WL 409744

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 71 of 102

Boyde v. New York, Not Reported in Fed. Supp. (2016)

2016 WL 3573133

2016 WL 3573133
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Johnny W. BOYDE, Plaintiff,

v.

NEW YORK State, County of
Onondaga, City of Syracuse, Defendants.

5:16-CV-00555(LEK/TWD)

|

Signed 05/19/2016

**Attorneys and Law Firms**

JOHNNY W. BOYDE, 301 McCool Avenue, Apt. # 2, East
Syracuse, New York 13057, Plaintiff, pro se.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** The Clerk has sent to the Court for initial review the
Complaint in this 42 U.S.C. § 1983 civil rights action brought
by Plaintiff Johnny W. Boyde against Defendants New York
State, County of Onondaga, and City of Syracuse. (Dkt. No.
1.) Also before the Court are Plaintiff's application for leave
to proceed *in forma pauperis* ("IFP Application") and motion
for appointment of counsel. (Dkt. Nos. 2 and 3.)

**I. IFP APPLICATION**

The IFP Application submitted by Plaintiff is not the IFP
Application currently used in the Northern District of New
York. IFP Application AO 240, the form currently used in
the District and available on the District's website, requires
information regarding the applicant's monthly expenses such
as housing, transportation, and utilities and any debts or
financial obligations of the applicant not required on the
form submitted by Plaintiff. Because the information on the
outdated IFP Application submitted by Plaintiff does show
that he is not employed, has not received money from any
other source in the past twelve months, has no cash or
checking or savings accounts, and has nothing of significant
value, the Court grants his IFP Application solely for the
purpose of this initial review. (Dkt. No. 2)

**II. LEGAL STANDARD FOR INITIAL REVIEW OF
COMPLAINT**

Even when a plaintiff meets the financial criteria for *in forma
pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff
proceeds *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325
(1989). "An action is frivolous when either: (1) the factual
contentions are clearly baseless such as when the claims
are the product of delusion or fantasy; or (2) the claim is
based on an indisputably meritless legal theory." *Livingston
v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)
(citations and internal quotation marks omitted). Although
extreme caution should be exercised in ordering *sua sponte*
dismissal of a *pro se* complaint before the adverse party
has been served and the parties have had an opportunity to
respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983), the court still has a responsibility to determine that a
claim is not frivolous before permitting a plaintiff to proceed.
*See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)
(per curiam) (holding that a district court has the power to
dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint
must plead enough facts to state a claim that is "plausible
on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009). While Rule 8(a) of the Federal Rules
of Civil Procedure, which sets forth the general rules of
pleading, "does not require detailed factual allegations, ... it
demands more than an unadorned, the-defendant-harmed-me
accusation." *Id.* In determining whether a complaint states
a claim upon which relief may be granted, "the court must
accept the material facts alleged in the complaint as true and
construe all reasonable inferences in the plaintiff's favor."
*Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert.
denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet
that a court must accept as true all of the allegations contained
in a complaint is inapplicable to legal conclusions." *Iqbal*, 556

Boyde v. New York, Not Reported in Fed. Supp. (2016)

2016 WL 3573133

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 72 of 102

U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*2** Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. PLAINTIFF'S COMPLAINT

### A. Factual Background

Plaintiff was indicted by an Onondaga County grand jury on charges of sexual abuse in the first degree (Penal Law § 130.65(2)) for allegedly subjecting a Jane Doe to sexual contact when she was incapable of consent by reason of being physically helpless on July 21, 2010.[1] (Dkt. No. 1 at 22[2].) The grand jury also indicted Plaintiff on charges of sexual abuse in the second degree (Penal Law § 130.60(2)) and endangering the welfare of a child (Penal Law § 260.10(1)) arising out of the same incident. *Id.* Plaintiff entered a guilty plea to the charges in Onondaga County Court on or about February 15, 2011. *Id.* at 15. Plaintiff was thereafter sentenced to, *inter alia*, a term of incarceration of seven years and ten years post-release supervision. *Id.* at 32.

[1]   The indictment is included as an exhibit to Plaintiff's Complaint. In reviewing a plaintiff's complaint, a court may consider documents attached to the complaint as exhibits or incorporated by reference, and documents that are integral to, or explicitly mentioned in the complaint. *See I. Meyer Pincus & Assoc. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991). A court may also consider "matters of which judicial notice may be taken." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

[2]   Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

In February of 2014, the Appellate Division, Fourth Department reversed Plaintiff's judgment of conviction based on the guilty plea and remitted the matter to the Onondaga County Court for further proceedings. *People v. Boyde*, 995 N.Y.S.2d 428, 429 (4th Dep't 2014). Plaintiff has alleged in his Complaint that he had signed a confession under duress, and the Appellate Division struck down the confession on appeal. (Dkt. No. 1 at 2.) However, the Appellate Division Memorandum on the appeal shows that the judgment of conviction was reversed, not as a result of Plaintiff's confession being stricken, but because the Appellate Division found that the County Court had coerced Plaintiff's guilty plea by stating that it would impose the maximum sentence in the event Plaintiff was convicted following a trial if Plaintiff did not plead guilty, and vacated the guilty plea. *Boyde*, 995 N.Y.S.2d at 429.

Upon remittur, Plaintiff and his counsel appeared in Onondaga County Court on April, 29, 2015, and Plaintiff entered a plea of guilty to sexual abuse in the first degree. *Id.* at 15. An exhibit to the Complaint indicates that on April 27, 2015, Plaintiff had forwarded a handwritten letter to the County Court confirming that he wished to accept "time served with the Defendant (sic) appeal right(s)." *Id.* at 4. Plaintiff was released from incarceration on April 29, 2015. *Id.* at 2. On July 21, 2015, the County Court sentenced Plaintiff to time served and issued an order of protection. *Id.* at 15. Plaintiff was rated a Level 3 sex offender on July 21, 2015. *Id.* at 15.

**\*3** According to Plaintiff, after he was released from incarceration on April 29, 2015, Defendants individually, jointly or as part of a common plan thereafter told the media that a warrant had been issued for Plaintiff, that he was the number one fugitive in the area for the week of July 14, 2015, and that he was a sex offender. *Id.* at 2, 4, 9. Plaintiff went to the police station and was incarcerated by the City Police and County of Onondaga. A list of Plaintiff's State court appearances from November 11, 2014, to July 21, 2015, provided to Plaintiff by the Unified Court System of the Onondaga Supreme & County Courts on July 22, 2015, and included by Plaintiff as an exhibit, reveals that Plaintiff's sentencing on the April 29, 2015, guilty plea was adjourned on July 8, 2015, when Plaintiff failed to appear. *Id.* at 20. A bench warrant was issued on or about July 8, 2015, with

Boyde v. New York, Not Reported in Fed. Supp. (2016)

2016 WL 3573133

a return on the warrant on July 20, 2015, the day before Plaintiff's sentencing. *Id.* at 3, 20.

Plaintiff has alleged in his Complaint that a subsequent arrest warrant was issued on December 30, 2015, that he was re-arrested on February 26, 2016, and that he was released. *Id.* at 3. The Complaint is silent as to details of the re-arrest six months after he was sentenced to time served on his April 29, 2015, guilty plea.

**B. Claims Alleged**

Plaintiff has alleged claims against Defendants for false arrest as a sex offender, malicious prosecution, illegal and wrongful imprisonment, illegal re-imprisonment, libel and slander, a second false arrest and malicious prosecution, Court of Claims Act § 8-b, violation of the Constitution of the United States, the Constitution of New York State, the laws of the State of New York and the United States, and regulations of the United States, New York State, the County of Onondaga, and the City of New York. *Id.* at 3.

The Court construes the claim Plaintiff has attempted to allege under 42 U.S.C. § 1983 as one for false arrest "resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause" in connection with his arrest on a bench warrant in July of 2015 and possibly, although it is not entirely clear from the Complaint, his initial arrest on sexual abuse charges in or about July 2010 and his re-arrest in February 2016. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). (Dkt. No. 1 at 3-4, 9, 20, 22.)

A defamation claim can be brought as a § 1983 claim for violation of a liberty or property interest protected by due process when a plaintiff can demonstrate a stigmatizing statement plus deprivation of a tangible liberty or property interest. *See Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010). However, a "deleterious effect [flowing] from a sullied reputation, standing alone, does not constitute a plus under the stigma plus doctrine." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted). Plaintiff has, at best, alleged a deleterious effect on his reputation insufficient for a § 1983 claim.

The remainder of Plaintiff's claims appear to be state law claims.

**IV. ANALYSIS**

**A. State of New York**

Plaintiff has named the State of New York as a Defendant, although the Complaint appears devoid of specific allegations of wrongdoing by the State. [3] Under the Eleventh Amendment, "an unconsenting state is immune from suits brought in federal court by her own citizens as well as citizens of other states." *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation and internal quotations marks omitted). New York is an unconsenting state. *See Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39-40 (2d Cir. 1977). The Eleventh Amendment has been found to bar federal courts from hearing all § 1983 claims for legal or equitable relief brought by citizens, as well as state law claims, brought against unconsenting states and state agencies. *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (barring claims brought under § 1983); *Pennhurst*, 465 U.S. at 118-122 (barring state law claims even when asserted under pendent jurisdiction); *Tessler v. Paterson*, 768 F. Supp. 2d 661, 672 (S.D.N.Y. 2011) ("It is well-established that the Eleventh Amendment bars all claims against the state ... for alleged violations of state law without the state's consent").

[3]     New York Court of Claims Act § 8b, under which Plaintiff appears to be attempting to assert a claim against the State, provides jurisdiction in the State Court of Claims for claims by wrongfully convicted individuals who are innocent or whose convictions have been reversed within delineated provisions of New York State Criminal Procedure Law §§ 440.10 and 470.20.

**\*4** Therefore, the Court recommends that the action be dismissed with prejudice as against the State of New York on Eleventh Amendment grounds.

**B. County of Onondaga and City of Syracuse**

1. Section § 1983 Claim

Plaintiff has sued both the County of Onondaga and the City of Syracuse. He has not sued any individual officials of either municipal entity. Plaintiff claims that the City and County, along with the State, individually, jointly, and as part of a common plan told the media that a warrant had been issued for him, that he was the number 1 fugitive in the area, and that he was a sex offender. (Dkt. No. 1 at 2.) He also claims that after the warrant was issued, he went to the police station and was arrested by the "City Police and the County of Onondaga." *Id.*

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 74 of 102

Boyde v. New York, Not Reported in Fed. Supp. (2016)

2016 WL 3573133

The Court construes the allegations in Plaintiff's Complaint as an attempt to assert a § 1983 claim for false arrest under the Fourth Amendment, as well as state law claims for false arrest and libel and slander. (See Dkt. No. 1 at 2.)

Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County or the City of Syracuse which caused his alleged false arrest or libel and slander, and Plaintiff has not alleged facts plausibly showing that Onondaga County and the City of Syracuse failed to properly hire, supervise, and train subordinates in connection with his claims. *See Twombly*, 550 U.S. at 570; *Hall v. Smith*, 170 Fed.Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)

Given the foregoing, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendants County of Onondaga and the City of Syracuse without prejudice and with leave to amend.

### 2. State Law Claims

**\*5** The Court has construed Plaintiff's Complaint as attempting to assert state law claims for false arrest, libel, and slander against Defendants County of Onondaga and City of Syracuse. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger*, 437 U.S. 365, 374 (1978). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). Federal question jurisdiction exists where the "complaint established either that federal law creates the cause of action or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000) (internal quotation marks omitted).

The Court finds based upon the allegations in the Complaint that there is no federal question or diversity jurisdiction over Plaintiff's state law claims. Furthermore, because the Court is recommending dismissal of Plaintiff's § 1983 claim, it also recommends that the District Court decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law false arrest, libel, and slander claims, without prejudice and subject to refiling in state court and to reconsideration by the District Court in the event Plaintiff is granted leave to file an amended complaint and thereafter submits an amended complaint. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed).

### C. Motion for Appointment of Counsel

Plaintiff has moved for appointment of counsel. (Dkt. No. 3.) Even if the Court were not recommending dismissal of Plaintiff's Complaint on initial review, Plaintiff's motion for appointment of counsel would be denied without prejudice at this time.

"The court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Before appointment of counsel is even considered, an indigent person must demonstrate that he is unable to obtain counsel. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). Plaintiff has

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 75 of 102

Boyde v. New York, Not Reported in Fed. Supp. (2016)

2016 WL 3573133

failed to attach sufficient documentation evincing an attempt to obtain counsel, such as correspondence from attorneys declining to represent him in the case, nor has he documented any effort made to secure counsel on his own, such as listing the names of attorneys he has contacted and their reasons for not accepting her case.

In addition, "in deciding whether to appoint counsel ... the [court] should first determine whether the indigent's position seems likely to be of substance." *Hodge*, 802 F.2d at 61. Once this threshold is met, the court is required to consider other criteria "such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would probably lead to a more just resolution of the dispute." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Having recommended dismissal of Plaintiff's Complaint upon initial review, the Court cannot at this point find Plaintiff's claims "likely to be of substance." *Hodge*, 802 F.2d at 61.

In light of the Court's recommendation that Plaintiff's Complaint be dismissed and in consideration of the foregoing, Plaintiff's motion for appointment of counsel is denied without prejudice at this time.

**\*6  ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for the purpose of this initial review; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED WITHOUT PREJUDICE**; and it is hereby

**RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over the state law claims against the County of Onondaga and City of Syracuse asserted in Plaintiff's Complaint (Dkt. No. 1), without prejudice and subject to refiling in state court and to reconsideration by the District Court in the event Plaintiff is granted leave to file an amended complaint and submits an amended complaint that states a claim under § 1983; and it is

**RECOMMENDED** that Plaintiff's Complaint be **DISMISSED IN ITS ENTIRETY**, on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B), and that dismissal against the State of New York be **WITH PREJUDICE**, and dismissal against the County of Onondaga and City of Syracuse be **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is

**ORDERED** that in the event Plaintiff submits an amended complaint for filing in this action, he must submit a completed IFP Application in the form utilized in the Northern District of New York if he wishes to proceed *in forma pauperis*, and that he must otherwise pay in full the $400.00 filing fee; and it is

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation and a blank IFP Application.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

### All Citations

Not Reported in Fed. Supp., 2016 WL 3573133

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   5

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 76 of 102

Boyde v. New York State, Not Reported in Fed. Supp. (2016)

2016 WL 3580768

2016 WL 3580768
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Johnny W. BOYDE, Plaintiff,

v.

NEW YORK STATE, et al., Defendants.

5:16-cv-0555 (LEK/TWD)
|
Signed 06/28/2016

**Attorneys and Law Firms**

Johnny W. Boyde, East Syracuse, NY, pro se.

### **ORDER**

Lawrence E. Khan, U.S. District Judge

**\*1** This matter comes before the Court following a Report-Recommendation filed on May 19, 2016, by the Honorable Thérèse Wiley Dancks, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 5 ("Report-Recommendation").

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-0857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306-07, 306 n.2 (N.D.N.Y. 2008); see also Machicote v. Ercole, No. 06 Civ. 13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

No objections were filed in the allotted time period. See Docket. Plaintiff's filing on May 27, 2016, in response to the Report-Recommendation, styled as Objections, appears to instead constitute a proposed amended complaint. Dkt. No. 7. As the Court has reviewed the Report-Recommendation for clear error and has found none, the Court adopts the Report-Recommendation in full. Plaintiff's Complaint is therefore dismissed without prejudice. Since Plaintiff has submitted a Proposed Amended Complaint, this is accepted as the operative pleading in this action and referred to Judge Dancks for initial review.

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 5) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED without prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2); and it is further

**ORDERED**, that the Clerk of the Court forward the Proposed Amended Complaint (Dkt. No. 7) to U.S. Magistrate Judge Thérèse Wiley Dancks for initial review; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on Plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3580768

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)

2007 WL 607341

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).
|
Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

***DECISION and ORDER***

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)**

2007 WL 607341

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1] Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 79 of 102

Gencarelli v. Coca-Cola Company, Not Reported in Fed. Supp. (2020)

2020 WL 2561258

2020 WL 2561258
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James GENCARELLI, Plaintiff,

v.

The COCA-COLA COMPANY; Liberty
Coca-Cola Beverages, Defendants.

1:20-CV-85 (TJM/CFH)
|
Signed 04/13/2020

**Attorneys and Law Firms**

James Gencarelli, 510 Broadway (3G), Saratoga Springs,
New York 12966, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

Christian F. Hummel, U.S. Magistrate Judge

 **\*1** Plaintiff pro se James Gencarelli commenced this action
on December 26, 2019 with the filing of a complaint and, in
lieu of paying this Court's filing fee, an application for leave
to proceed in forma pauperis ("IFP"). Dkt. Nos. 1 ("Compl"),
2. Plaintiff also filed an application for a pro se ECF password
and log-in. Dkt. No. 3. After reviewing plaintiff's application,
the undersigned concludes that plaintiff may properly proceed
IFP. Dkt. No. 2.[1] Plaintiff filed an amended complaint on
April 6, 2020. Dkt. No. 6. Presently pending before the Court
is review of plaintiff's amended complaint pursuant to 28
U.S.C. § 1915.

[1]     Plaintiff is advised that, despite his IFP status, he is
        still required to pay all costs and fees he may incur
        in this action, including, but not limited to, copying
        fees and witness fees.

**I. Legal Standard**

Section 1915(e) of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ...
the action or appeal (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune

from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's
responsibility to determine that a plaintiff may properly
maintain his complaint before permitting her to proceed with
her action. Where, as here, a plaintiff proceeds pro se, "the
court must construe his submissions liberally and interpret
them to raise the strongest arguments that they suggest."
Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014)
(per curiam) (internal quotation marks omitted). However,
this does not mean the Court is required to accept unsupported
allegations that are devoid of sufficient facts or claims.
Although detailed allegations are not required at the pleading
stage, the complaint must still include enough facts to provide
the defendants with notice of the claims against them and
the grounds upon which these claims are based. See, e.g.,
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic
v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the
plaintiff must plead "enough facts to state a claim to relief that
is plausible on its face." Twombly, 550 U.S. at 570.

Pleading guidelines are set forth in the Federal Rules of
Civil Procedure. Specifically, Rule 8 provides that a pleading
which sets forth a claim for relief shall contain, inter alia,
"a short and plain statement of the claim showing that the
pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2).
"The purpose ... is to give fair notice of the claim being
asserted so as to permit the adverse party the opportunity to
file a responsive answer, prepare an adequate defense and
determine whether the doctrine of res judicata is applicable."
Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999)
(internal quotation marks and citations omitted). Rule 8 also
requires the pleading to include:

  (1) a short and plain statement of the grounds for the court's
  jurisdiction ...;

   **\*2** (2) a short and plain statement of the claim showing
  that the pleader is entitled to relief; and

  (3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is
required," the Federal Rules make clear that each allegation
contained in the pleading "must be simple, concise, and
direct." Id. at 8(d). Further, Rule 10 of the Federal Rules
provides in pertinent part that:

        [a] party must state its claims or
        defenses in numbered paragraphs,
        each limited as far as practicable to

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 80 of 102

Gencarelli v. Coca-Cola Company, Not Reported in Fed. Supp. (2020)

2020 WL 2561258

a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## II. Discussion

### A. Allegations in Complaint

Plaintiff contends that on July 16, 2019, he drank from a can of Coca-Cola that he purchased. Dkt. No. 6 at 1. After consuming "some quantity of the liquid plaintiff suffered intense painful burning on the lips, throat and mouth, causing

much pain, soreness, and discomfort." Id. Plaintiff provides that he had the can of soda tested, which resulted in findings that "[t]he PH was approximately 1 value lower than that of Coca-Cola (2.52). In layman's terms, this means it is nearly 10x more acidic that COCO-COLA [sic] it is intended to be." Id. He further provides that, "[u]nder further evaluation, using the addition of barium chloride to indicate the addition of specifically Sulfuric Acid, it was found to be positive." Id. at 2. Plaintiff alleges that Coca-Cola uses sulfuric acid to remove "oily residue" from cans as part of the canning process. Id.

*3 Plaintiff argues that this Court has jurisdiction of this matter pursuant to diversity jurisdiction as plaintiff is a citizen of New York and defendant The Coca-Cola Company is a citizen of Georgia. Dkt. No. 6 at 3. Plaintiff indicates that Liberty Coca-Cola Beverages LLC is a citizen of Pennsylvania, and indicates that Liberty "produces and supplies non-alcoholic beverages," "a range of soft drinks and bottled water, as well as offers packaging and distribution services. Liberty Coca-Cola Beverages serves customers in the United States. Id. at 3-4. Plaintiff demands $200,000 for "physical injury," $200,000 for "Non-pecuniary Damages" and "[f]urther relief as this Court may deem appropriate and equitable." Id. at 6-7.

### B. Analysis

#### 1. Venue

Plaintiff indicates [2] that he originally commenced this action in the United States District Court for the District of New Jersey. In an Order filed on November 11, 2019, the District of New Jersey granted plaintiff's IFP application and dismissed plaintiff's complaint "without prejudice for failure to state a claim upon which relief may be granted" and provided plaintiff with thirty days to file an amended complaint "addressing the issues outlined by the Court's Memorandum Opinion; failure to do so will result in closing of this matter." Dkt. No. 1-1 at 5. On November 22, 2019, plaintiff petitioned the Third Circuit Court of Appeals for a "writ of mandamus" after failing to hear from the District Court of New Jersey for five weeks after filing his complaint. Id. at 3. Plaintiff states that he "proceeded to motion for voluntary dismissal of the complaint, (pursuant to Fed. R. Civ. P. 41). (in lieu of negotiation with the defendants)." Dkt. No. 1-1 at 3. "On the 5th of December 2019, the DCNJ 'closed the matter without prejudice.' " Id. "On plaintiff's 'voluntary dismissal

2020 WL 2561258

of appeal' the Third Circuit 'dismissed the matter.' " Id. at 3. Plaintiff indicates that he has since moved to Saratoga County, New York and wishes to re-commence this matter in the Northern District of New York "in the venue where plaintiff resides." Id. He suggests that, because the District of New Jersey dismissed the matter without prejudice, venue should be considered proper in the Northern District of New York." Id.

2     Although plaintiff did not include these documents with his amended complaint, in light of special solicitude and for purposes of this Report-Recommendation & Order only, the Court will consider those documents appended to the original complaint relating to plaintiff's action before the District of New Jersey. See Dkt. No. 1-1; dkt. no. 6. No other portion of the original complaint has been considered in this review.

Although plaintiff included the Order from the District of New Jersey granting his IFP application[3] and dismissing his complaint without prejudice and opportunity to amend as well as the Order granting "voluntary dismissal" of his complaint without prejudice, he neglected to include the Memorandum Opinion[4] that reviewed the merits of his complaint. Within that Order, the District of New Jersey noted plaintiff's habit of commencing actions in various districts throughout the United States and concluded, on the merits, that plaintiff's complaint before that Court failed to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

3     The District of New Jersey expressed concern about plaintiff's access to additional assets, including those of his wife, but concluded, on balance, that IFP should be granted. The Court observes that plaintiff's IFP application to this District did not include his wife's assets. However, on balance, the Court will grant plaintiff's IFP application. As the District of New Jersey noted, however, should it be later determined that plaintiff has additional assets that he did not reveal to the Court, including access to his wife's assets, sanctions may be pursued.

4     The District of New Jersey's Memorandum Opinion is appended to this Report-Recommendation & Order.

**\*4** Here, the Court acknowledges that plaintiff appears to have a litigious history, bringing actions in various courts throughout the country, not solely limited to those in which he resides. See exh 1. Further, rather than seek to amend his complaint after the District of New Jersey identified pleading defects, despite being given the opportunity to do so, plaintiff sought dismissal of the case without prejudice and commenced a new action in a new court. Although the Court has some concern that plaintiff may be engaging in forum shopping, potentially seeking to commence an action within a district he may feel will be more favorable, on balance, because the matter had not proceeded beyond the initial review stage in the District of New Jersey and no defendants had been served, balancing of factors weighs in favor of finding venue to be proper in this District at this time.[5]

5     The undersigned notes that a different result may have occurred had plaintiff's complaint been served and defendants had appeared in the District of New Jersey.

## 2. Review of Complaint

New York law provides for product liability claims "under theories of negligence, strict liability, or breach of express or implied warranty." 28 Under New York law, "a plaintiff may allege that a product is defective for any one of the following three reasons: (1) design defect, (2) a failure to warn, or (3) defect as a result of a manufacturing flaw."

Ohuche v. Merck & Co., No. 11 CIV. 2385 SAS, 2011 WL 2682133, at *2 (S.D.N.Y. July 7, 2011).[6]

6     Unless otherwise noted, unpublished decisions cited herein have been provided to plaintiff.

### a. Vicarious Liability/Negligence

Addressing first plaintiff's "vacarious [sic] liability" claim, plaintiff contends that defendants failed to provide "reasonably safe facilities in the manufacture and production of their product" by "failing to oversee, supervise and instruct employees in the production and manufacture of their product to the public." Dkt. No. 6 at 3. Due to defendants' "negligence in failing to provide a duty of reasonably [sic] care, plaintiff suffered actual physical and emotional damages." Id. at 3-4.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 82 of 102

Gencarelli v. Coca-Cola Company, Not Reported in Fed. Supp. (2020)

2020 WL 2561258

Strict products liability is not vicarious liability, but like vicarious liability, it creates an exception to the usual rule that limits one's liability to one's own wrongdoing. It is the established rule that an employer is liable for personal injuries to or death of another person, or injury to another person's property occasioned by its employee's negligence, fraud, misconduct, or other unlawful act, when done within the scope of its authority. Thus, a druggist may be held liable for the negligent act of an employee.

86 N.Y. Jur. 2d Products Liability § 43. It is not clear if, in pleading "vicarious liability" that plaintiff is seeking to hold defendant Coca-Cola liable for the alleged actions of defendant Liberty. In addressing the applicability of vicarious liability in products liability cases, New York State courts have held that "[a]ny analogy to vicarious liability under the Labor Law (Allen v. Cloutier Constr. Corp., 44 N.Y.2d 290, 405 N.Y.S.2d 630, 376 N.E.2d 1276), respondeat superior, or the Vehicle and Traffic Law—instances in which liability is fixed upon another without regard to any volitional act —is clearly flawed." Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 26, 484 N.E.2d 1354, 1357 (N.Y. 1985) ("A strict products liability action is not analogous to vicarious liability, resulting in the imposition of liability without regard to fault. A manufacturer is held accountable as a wrongdoer, and, while the proof that must be adduced by a plaintiff is not as exacting as it would be in a pure negligence action, a prima facie case is not established unless it is shown, among other things, that in relation to those who will use it, the product was defective when it left the hands of the manufacturer because it was not reasonably safe."). Accordingly, it is recommended that plaintiff's "vicarious liability" claim be dismissed. However, as it is not entirely clear what plaintiff seeks to accomplish in pleading this claim, it is recommended that this dismissal be without prejudice should, at some future point, plaintiff be able to reasonably articulate his intention.

**b. Failure to Warn**

**\*5** As for plaintiff's "product liability" claim, plaintiff alleges that defendants' "product that caused the harm was not reasonably fit, suitable or safe for its intended purpose" insofar as the can of Coca-Cola plaintiff consumed "deviated from the original specifications and formula." Dkt. No. 6 at 4. Further, plaintiff contends that defendants "failed to issue adequate warnings or instructions." Id. Although plaintiff does not explicitly identify it as such, it appears he is attempting to plead a claim here for failure to warn.

"To make out a prima facie case for negligent failure to warn under New York law, 'a plaintiff must show that (1) the manufacturer had a duty to warn; (2) the manufacturer breached such duty so that the product is rendered defective, i.e. reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered loss or damage.' " Rogers v. Westfalia Associated Techs., Inc., 485 F. Supp. 2d 121, 128-29 (N.D.N.Y. 2007) (internal citation omitted). "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." In re N.Y.C. Asbestos Litig., 27 N.Y.3d 765, 59 N.E.3d 458, 470 (N.Y. 2016) (internal citation omitted). "Under New York law failure to warn claims are identical under strict liability and negligence theories." DiBartolo v. Abbott Labs., 914 F. Supp. 2d 601, 611 (S.D.N.Y. 2012).

Here, although lacking in detail, plaintiff has arguably sufficiently pleaded a cause of action for negligent failure to warn. Plaintiff does not explicitly provide facts for supporting his claim that defendants had a duty to warn him; however, in light of special solitude, his pleadings suffice at this early stage insofar as he contended that the product was defective insofar as it was not safe to consume due to its alleged contamination with sulfuric acid from the canning process and that he suffered injury from drinking the contaminated product. Further, although plaintiff does not explain how he suffered loss or damage from his consumption of the product, he does allege that he suffered injury. Thus, at this early stage and in light of special solicitude due to the pro se plaintiff, the undersigned is of the belief that he had adequately pleaded this claim and thus, it should proceed. [7]

[7]    As with all other claims, in so holding the undersigned makes no finding as to whether this claim will be able to withstand a properly filed and supported dispositive motion.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 83 of 102

Gencarelli v. Coca-Cola Company, Not Reported in Fed. Supp. (2020)

2020 WL 2561258

### c. Negligence Per Se

In plaintiff's negligence per se claim, plaintiff alleged that defendants owed him a duty of care as a member of a "class (protecting public from tainted, harmful and contaminated foods) for whose benefit those laws and safety regulations were passed." Dkt. No. 6 at 4. Plaintiff contends that defendants violated "21 U.S. Code § 1-26 Food Safety Modernization Act (FSMA), N.J.R.S. Title 24. Section 24:5-8 General Food Adulterations. 21 U.S.C. § 342. Adulterated Foods, New York Consolidated Laws, Agriculture and Market Law - AGM § 200." Id. at 5. Plaintiff specifies that defendants owed him a duty of care, suffered "the same type of harm that the laws, codes, and statutes were intended to prevent, resulting in without limitation, physical and emotional damages as set forth above, from the conduct of defendants, which was a substantial factor causing that harm." Id. at 5.

> State and federal statutes and regulations set forth standards by which many products are manufactured, marketed and sold. Violation of such requirements is generally treated as negligence per se. This doctrine relieves the plaintiff of establishing specific common law negligence elements that the defendant owed a duty to the plaintiff and that the defendant breached a duty to the plaintiff.

**\*6** City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369, 415 (E.D.N.Y. 2007) (citing Restatement (Second) of Torts §§ 282-288B (1965)). "[T]he mere '[v]iolation of a statute ... does not automatically constitute negligence per se. Only statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence per se for violation of the statute.' " Timperio v. Bronx-Lebanon Hosp. Ctr., 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (quoting German ex rel. German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995)).

Moreover, [i]n order to warrant a finding of negligence per se for a statutory violation, the statute must evidence "an intention, express or implied, that from disregard of [its] command a liability for resultant damages shall arise 'which would not exist but for the statute.' " Three factors are of central importance in this inquiry: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted, (2) whether a finding of negligence per se for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme.

Id. at 44-435 (quoting German, 896 F. Supp. at 1397) (additional citation omitted).

As for plaintiff's reference to the Food Safety Modernization Act, it is not clear on which section of this statute plaintiff is attempting to rely. He states that defendants "violated" "21 U.S. Code § 1-26 Food Safety Modernization Act (FSMA)" but the Court cannot locate § 1-26 of this statute. To the extent plaintiff means to argue that defendants violated sections one through twenty-six, the statute is also not categorized as such. Regardless, plaintiff's mere reference to this statute does meet minimum pleading requirements because plaintiff fails to explain how defendants violated this statute and how it applies here. Further, he fails to demonstrate that such statute would recognize a private right of action. Prohaska v. Sofamor, S.N.C., 138 F. Supp. 2d 422, 448 (W.D.N.Y. 2001) ("New York law holds defendants liable for negligence per se if the following factors are satisfied: (1) the plaintiff is among the class of people for whose particular benefit the statute had been enacted; (2) recognition of a private right of action would promote the legislative purpose behind the statute; and (3) creation of the right would be consistent with the overall legislative scheme.") (internal citation omitted).

Plaintiff makes passing reference to 21 U.S.C. § 342 which is the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301-399. Section 342 references "Adulterated Substances." Plaintiff does not explain how defendants "violated" this section, "whether the plaintiff is one of the class for whose benefit the statute was enacted," "whether a finding of negligence per se for violation of the statute would promote the legislative purpose," and "whether creation of such liability would be consistent with the legislative scheme." German, 896 F. Supp. at 1397

Next, plaintiff refers to New York Consolidated Laws, Agriculture and Market Law - AGM § 200. Again, he does

Case 1:24-cv-00172-MAD-TWD Document 7 Filed 05/10/24 Page 84 of 102

Gencarelli v. Coca-Cola Company, Not Reported in Fed. Supp. (2020)

2020 WL 2561258

not explain how this law applies or how he alleges defendants violated this law. This law appears to be a New York State counterpart to the FFDCA. For the same reasons plaintiff's claim must fail under the federal statutes he cites, plaintiff fails to demonstrate negligence per se with relation to this New York State statute as plaintiff does not explain how defendants "violated" this section, "whether the plaintiff is one of the class for whose benefit the statute was enacted," "whether a finding of negligence per se for violation of the statute would promote the legislative purpose," and "whether creation of such liability would be consistent with the legislative scheme." German, 896 F. Supp. at 1397.

**7** Lastly, plaintiff cites to a New Jersey State Law, N.J.R.S. Title 24. Section 24:5-8 General Food Adulterations. First, as plaintiff has chosen New York State to be his venue of choice, he fails to explain why New Jersey law should apply. Second, even if plaintiff can demonstrate that this Court has jurisdiction to review New Jersey state law, this claim still fails as plaintiff does not explain how defendants "violated" this section, "whether the plaintiff is one of the class for whose benefit the statute was enacted," "whether a finding of negligence per se for violation of the statute would promote the legislative purpose," and "whether creation of such liability would be consistent with the legislative scheme." German, 896 F. Supp. at 1397. Accordingly, for the reasons stated herein, it is recommended that plaintiff's negligence per se claim be dismissed in its entirety without prejudice.

#### d. Breach of Implied Warranty of Merchantability

Plaintiff next pleads a claim for breach of the implied warranty of merchantability. Dkt. No. 6 at 6. Plaintiff contends that defendants sold their product in a "defective condition" and, thus, are "liable for injury which results from use of the product when the product is used for its intended or reasonably foreseeable purpose." Dkt. No. 6 at 6. He further argues that, "[t]he law implies a warranty by a manufacturer which places its products on the market that the product is reasonably fit for the ordinary purpose for which it is intended. If it is, in fact, defective and not reasonably fit to be used for its intended purpose, the warranty is breached." Id.

"Establishing a breach of implied warranty claim requires that plaintiff prove: '(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident.'

" Lewis v. Abbott Labs., No. 08 CIV. 7480 SCR/GAY, 2009 WL 2231701, at *6 (S.D.N.Y. July 24, 2009) (quoting In re American Export Lines, Inc., 620 F.Supp. 490, 518 (S.D.N.Y. 1985)); see also Plemmons, 2007 WL 950137 at *3. "The 'implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used.' " Id. (citation omitted). "As is the case with a claim for breach of express warranty, a claim for breach of implied warranty requires the plaintiff to establish causation." Nealy v. U.S. Surgical Corp., 587 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) (citing Clarke v. Helene Curtis, Inc., 293 A.D.2d 701, 742 N.Y.S.2d 325, 327 (N.Y. App. Div. 2002)) ("The defendant established its prima facie entitlement to summary judgment by demonstrating that there was no causal relationship between its product and the plaintiff's disease, an essential element of the cause of action to recover damages for breach of implied warranty.") (additional citations omitted). "Liability under a theory of implied warranty of merchantability is 'essentially the same' as under a theory of strict products liability." O'Neil, 2020 WL 1149904, at *9.

Here, plaintiff's breach of implied warranty claim appears to plead that The Coca-Cola Company created a manufacturing defect of an improper pH balance in their product relating to the use of sulfuric acid in the canning process. Dkt. No. 6 at 2. He suggests that the soda he consumed was contaminated with sulfuric acid and resulted in an injury: "intense painful burning on the lips, throat and mouth, causing much pain, soreness, and discomfort." Dkt. No. 6 at 1. Although plaintiff does not explicitly plead that the use of the sulfuric acid was the proximate cause of his alleged injury, in light of special solicitude, at this early stage, he has plausibly pleaded causation. Accordingly, as plaintiff alleged that the product was not fit for its ordinary purpose of consumption because it was contaminated with sulfuric acid as a result of the canning/cleaning process and consumption of the contaminated product caused at least some injury, this claim should proceed.

#### e. Strict Liability

**8** Next, plaintiff's "strict liability" claim states as follows: that (1) the Coca-Cola he consumed was

> "defective" because it is not reasonably safe as marketed; (2)

Case 1:24-cv-00172-MAD-TWD   Document 7   Filed 05/10/24   Page 85 of 102

Gencarelli v. Coca-Cola Company, Not Reported in Fed. Supp. (2020)

2020 WL 2561258

the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have discovered the defect and apprehended its injury; and (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care."

Dkt. No. 6 at 5.

To state a claim for strict liability under New York law, a plaintiff must show: "(1) the product is 'defective' because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care." Fane v. Zimmer, Inc., 927 F.2d 124, 128 (2d Cir. 1991) (quoting Wolfgruber v. Upjohn Co., 72 A.D.2d 59, 423 N.Y.S.2d 95, 97 (1979), aff'd, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980)); see also Cosby v. City of White Plains, N.Y., No. 04 Civ. 5829, 2007 WL 853203, at *7 (S.D.N.Y. Feb. 9, 2007). "[T]o establish a prima facie case, the plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury." Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 209 (1983); see also Derienzo v. Trek Bicycle Corp., 376 F. Supp.2d 537, 560 (S.D.N.Y. 2005); Olsovi v. Salon DeBarney, 118 A.D.2d 839, 500 N.Y.S.2d 325, 326 (1986).

Nealy v. U.S. Surgical Corp., 587 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) (quoting Beckford v. Pantresse, Inc., 51 A.D.3d 958, 858 N.Y.S.2d 794, 795 (N.Y. App. Div. 2008)) ("Whether the action is pleaded in strict products liability, breach of warranty, or negligence, the consumer has the burden of showing that a defect in the product was a substantial factor in causing the injury.").

In New York, a plaintiff can raise three types of strict products liability claims: "(1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the

inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use."

O'Neil v. Argon Med. Devices, Inc., No. 3:17-CV-640 (DNH/TWD), 2020 WL 1149904, at *4 (N.D.N.Y. Feb. 13, 2020), report and recommendation adopted 2020 WL 1140511 (N.D.N.Y. Mar. 9, 2020) (citation omitted). Arguably, plaintiff seeks to proceed under a theory of strict liability for a manufacturing defect and a warning defect.

To state a claim of manufacturing defect, a plaintiff must allege (1) the product was defective due to "an error in the manufacturing process" and (2) this defect was the proximate cause of the plaintiff's injury. Rosen v. St. Jude Med., Inc., 41 F. Supp. 3d 170, 182 (N.D.N.Y. 2014); see also Williamson, 2013 WL 3833081, at *4. "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (citing Perazone v. Sears, Roebuck & Co., 515 N.Y.S.2d 908, 911 (App. Div. 1987)). A plaintiff may state a manufacturing defect claim by relying on the circumstances of the accident "if the product did not perform as intended and the possibility of other causes has been excluded." Richards v. Johnson & Johnson, Inc., No. 5:17-cv-00178 (BKS/ATB), 2018 WL 2976002, at *5 (N.D.N.Y. June 12, 2018) (citing Williamson, 2013 WL 3833081, at *5).

**\*9** O'Neil, 2020 WL 1149904, at *6. Under New York law, the elements of negligence claims based on design defect, manufacturing defect, and failure to warn theories are the same as those under a theory of strict liability. See Colon ex Rel. Molina v. BIC USA, Inc., 199 F. Supp.2d 53, 83 (S.D.N.Y. 2001) ("Courts have noted that, for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical.").

Here, the undersigned recognizes that plaintiff's strict liability claim is simply a recitation of the strict liability standard; however, as the undersigned finds that plaintiff has arguably sufficiently pleaded a claim for failure to warn under a negligence, it also finds that plaintiff's claim should proceed under a strict liability theory. See Colon, 199 F. Supp.2d at 83.

### III. Motion for Electronic Filing/Access

Gencarelli v. Coca-Cola Company, Not Reported in Fed. Supp. (2020)

2020 WL 2561258

Plaintiff's request to obtain an ECF password and log-in is denied without prejudice and leave to renew. Pro se plaintiffs are not automatically granted access to e-filing. As plaintiff has not presently demonstrated a special circumstance or need, there is no reason that permitting electronic filing, as opposed to filing traditionally, by mail, will impact plaintiff's ability to effectively litigate this matter. See generally General Order 22. Thus, plaintiff's motion for access to electronic filing is denied without prejudice.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's In Forma Pauperis application, dkt. no. 2, is **GRANTED** for the purpose of filing; and it is

**ORDERED**, that plaintiff's motion to obtain a pro se ECF account and password, dkt. no. 3, **is DENIED without prejudice**; and it is

**RECOMMENDED**, that plaintiff's "vicarious liability" and negligence per se claims be **DISMISSED without prejudice**; and it is further

**RECOMMENDED**, should the District Judge adopt this Report-Recommendation & Order, plaintiff be provided thirty (30) days from the filing date of the District Judge's Order adopting this Report-Recommendation & Order to file an amended complaint that cures the defects mentioned herein, and if plaintiff fails to file an amended complaint within that time-frame, that the District Judge will direct that the Clerk of the Court return this case to the Magistrate Judge for service

of the original complaint on defendants and any unamended claims therein shall be deemed abandoned; and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e). [8]

[8]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2561258

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 2559914

2020 WL 2559914
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James GENCARELLI, Plaintiff,

v.

The COCA-COLA COMPANY, and
Liberty Coca-Cola Beverages, Defendants.

1:20-CV-85 (TJM/CFH)
|
Signed 05/20/2020

**Attorneys and Law Firms**

James Gencarelli, Saratoga Springs, NY, pro se.

**DECISION & ORDER**

Thomas J. McAvoy, Sr. U.S. District Judge

**\*1** The Court referred this *pro se* civil action to Magistrate Judge Christian F. Hummel for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff proceeding *pro se* and *in forma pauperis*, alleges that Defendants, the Coca-Cola Company and a company contracted to bottle Coca-Cola beverages, damaged him by selling him an aluminum can contaminated by sulfuric acid. Plaintiff alleges that he injured his lips, throat, and mouth by drinking the product. His complaint alleges various types of products liability claims against the Defendants.

Magistrate Judge Hummel gave the Plaintiff's Amended Complaint an initial screening. His Report-Recommendation, dkt. # 7, issued on April 13, 2020, grants Plaintiff's motion to proceed *in forma pauperis* and recommends that the Court dismiss without prejudice Plaintiff's claims for vicarious liability and negligence per se. Magistrate Judge Hummel recommends that the Court and accept the rest of the Complaint for filing.

No party objected to the Report-Recommendation, and the time for such objections has passed. Plaintiff responded to the Report-Recommendation by filing an Amended Complaint. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice and the Court will accept and adopt the Report-Recommendation for the reasons stated therein. The Court will refer the Plaintiff's recently filed Second Amended Complaint to Magistrate Judge Hummel for appropriate action.

Accordingly,

The Report-Recommendation of Magistrate Judge Hummel, dkt. # 7, is hereby **ACCEPTED** and **ADOPTED**. Plaintiff's claims for vicarious liability and negligence per se are dismissed without prejudice to re-filing. Plaintiff's Second Amended Complaint, dkt. # 8, is hereby **REFERRED** to Magistrate Judge Hummel for appropriate action.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2559914

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 88 of 102

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

2017 WL 9487185

2017 WL 9487185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis AMATO, et al., Plaintiffs,

v.

Judge Anthony MCGINTY, et al., Defendants.

1:17-CV-593 (MAD/ATB)
|
Signed 06/06/2017

**Attorneys and Law Firms**

Frances Amato, Marlboro, NY, pro se.

John Doe, pro se.

Adrienne Auchmoody, pro se.

Toni Jean Kulpinski, pro se.

Vladimir Kulpinski, pro se.

Michaela Kulpinski, pro se.

Michelle Arzola, pro se.

Jane Doe, pro se.

Adrienne J. Kerwin, Office of Attorney General, David B. Cabaniss, Cabaniss Casey LLP, Albany, NY, for Defendants.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiffs Francis Amato, her son "John Doe," Adrienne Auchmoody, Toni Jean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, and Ms. Arzola's two children, who have also been referred to as Jane and John Doe. (Complaint ("Compl.") at 1). Plaintiffs have paid the filing fee for this action. However, the court will conduct an initial review of the complaint. [1] Plaintiff Amato has also filed a motion to obtain an ECF Login and Password. (Dkt. No. 10).

[1]    The court notes that on June 2, 2017, plaintiff Amato filed a motion for a Temporary Restraining

Order. (Dkt. No. 8). District Judge D'Agostino denied the motion on the same day. (Dkt. No. 9).

A complaint must allege " 'enough facts to state a claim to relief that is plausible on its face.' " *Preacely v. City of New York*, 622 Fed.Appx. 14, 15 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). A claim " 'has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ). A case is "frivolous" when either the factual contentions are "clearly baseless or when the claim is based upon "an indisputably meritless legal theory." " *Id.* (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ). A district court has inherent authority to dismiss a frivolous action sua sponte "even when the plaintiff has paid the required filing fee." *Id.* (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ). Finally, a federal court has a continuing and independent obligation to examine its subject matter jurisdiction sua sponte. *Robbins v. City of New York*, 254 F.Supp.3d 434, 436 (E.D.N.Y. 2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ). *See also Forde v. Hornblower New York, LLC*, 243 F.Supp.3d 461, ——, 2017 WL 1078585, at *2 (S.D.N.Y. 2017) (citations omitted).

**I. Complaint**

This civil rights action has been brought by plaintiffs Frances Amato, her son ("CB"), Adrienne Auchmoody (CB's grandmother), Toni Jean Kulpinski (CB's Aunt and Godmother), Vladimir Kulpinski (CB's Uncle and Godfather), Michaela Kulpinski (CB's cousin), and Michelle Arzola and her two minor children (CB's sister, niece, and nephew). (Compl. ¶¶ 1-7).

Plaintiffs appear to challenge the conduct of defendant Ulster County Family Court Judge Anthony McGinty relative to a custody proceeding involving CB. (Compl. ¶¶ 8, 16). Plaintiffs have also named Attorney Andrew Gilday, who plaintiffs state is a "Public Defender," but appears to be the assigned counsel for Patrick Bessmer—CB's father [2]—in the custody proceeding. (Compl. ¶ 9). Patrick Bessmer and his alleged "paramour," Pamela Augustine are also named as defendants. (Compl. ¶¶ 11, 12). Plaintiffs have also named Amy Ingram, Esq., CB's assigned attorney for the custody proceeding.

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 89 of 102

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

[2]    Plaintiff Amato and defendant Patrick Bessmer were apparently not married.

**\*2**  Plaintiffs allege that defendant McGinty was "highly abusive" to "all" plaintiffs; violated "constitutional" and "ADA rights;" caused "extreme pain, suffering, and trauma to "all" plaintiffs when he violated their constitutional rights; endangered the welfare of "a child;" and "illegally extended fictitious authority in CLEAR ABSENCE of subject matter jurisdiction." " (Compl. ¶ 18(a)-18(e) ). Plaintiff Amato then describes conduct that was allegedly directed at her.[3] (Compl. ¶ 20). Plaintiff Amato alleges that defendant McGinty denied access to " 'his court,' " denied plaintiff Amato her "rights to proper serving process," denied "any evidence into the court for purpose of record," and denied "the serious risk and harm to [her] child- who is currently and not by [her] consent in public governmental counseling for high risk children." (Compl. ¶ 20). Plaintiff Amato believes that the state proceedings "remain plagued by retributions [sic] for plaintiff's exercise of First Amendment rights to free speech and petition government [sic] for redress of grievances." (Compl. ¶ 19).

[3]    The court notes that, although there are multiple plaintiffs, most of the defendants' alleged conduct was directed at plaintiff Amato alone. Plaintiff Amato appears to allege that the defendants' conduct toward her and CB injured the other defendants because of their family relationship to plaintiff Amato and CB. (*See* Compl. ¶ 45) (stating that "no parties had a due process court hearing or trial, [and] were never served any form of order").

Plaintiff Amato alleges that she is an "outspoken advocate," working along side the District Attorney of Ulster County to compile evidence and to file numerous complaints against defendant McGinty. (*Id.*) Plaintiff Amato states that she has been interviewed by many local newspapers and television stations regarding her concerns about Ulster County Family Court and attorney Amy Ingram. Plaintiff claims she has been "very outspoken" regarding the "countless children" endangered by the "decisions of these judges and the negligence of these public servants and child attorneys mentioned [in the complaint.]" (*Id.*)

Plaintiff Amato lists a series of alleged violations which were committed by defendant McGinty, together with defendants Ingram and Gilday, resulting in the "kidnaping" and "endangerment of a minor." (Compl. ¶ 22).[4]  Plaintiff Amato

states that these three defendants intentionally inflicted emotional distress by removing her child, "altering the 9 year status quo from me and my entire family, violating **our** due process...." (Compl. ¶ 22(a) ). These three defendants also allegedly committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False and Unlawful Arrest," "Pre decided trial with no evidence allowed, Obstructing Justice," "Child Endangerment," and "Falsely placing mother and child on a missing persons clearinghouse...." (Compl. ¶ 22(b)-22(h) ).

[4]    There appears to be no ¶ 21 in the complaint.

The complaint contains three "Causes of Action," which contain additional facts and various citations to case law. (Compl. ¶¶ 30-41). The first cause of action is "First Amendment." (Compl. ¶¶ 30-33). The second cause of action is "Parental Impairment," and the third cause of action is "Due Process." (Compl. ¶¶ 34-37, 38-41). Because of the way that the complaint is written, rather than repeating all of the facts, the court will discuss the additional facts as necessary to the analysis of plaintiff's complaint.

## II. Judicial Immunity

### A. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*3**  Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief

2017 WL 9487185

was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F.Supp.2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) ). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself"—whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) ). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

### B. Application

Plaintiffs have named Ulster County Family Court Judge Anthony McGinty as a defendant. Plaintiff states that the "defendants" have violated "clearly established laws." (Compl. ¶ 31). Plaintiffs allege that defendant McGinty is biased, discriminates against women who are victims of domestic violence, and has retaliated against plaintiff Amato because she has spoken out against him and other Family Court judges, staff, and appointed counsel for her child.

Plaintiffs claim that the "federal funding law" rewards "states and judicial agents," based on the "number and size of child support orders." (Compl. ¶ 32). Based on this "fact," plaintiffs state that a "financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged proceedings." However, all of Judge McGinty's alleged "biased" or "illegal" conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on "funding," allegedly biased decisions in favor of defendant Bessmer, or making decisions that were not in the best interest of CB, these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity.

Plaintiff attempts to argue that Judge McGinty acted "in absence" of jurisdiction because he took over plaintiff's custody case from another judge in violation of N.Y. Judiciary Law § 21. (Compl. ¶ 18). Plaintiff Amato's argument is misplaced. N.Y. Judiciary Law § 21 reads as follows:

> A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.

N.Y. Jud. Law § 21. This means that a trial-level judge shall not decide factual issues that were tried before a different judge. *See People v. Hampton*, 21 N.Y.3d 277, 284-85, 970 N.Y.S.2d 716, 992 N.E.2d 1059 (2013). This applies to situations in which the new judge is called upon to make rulings based on an evaluation of testimony that he or she did not hear. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. It does not apply to motions involving pure issues of law. *Id.* at 285, 970 N.Y.S.2d 716, 992 N.E.2d 1059. This also does not mean that a judge cannot take over a custody case, or any other action, after another judge has recused herself. *See id.* Otherwise, no judge could ever be replaced after a case has begun.

**\*4** Plaintiff does not allege that there were motions pending that the previous judge did not address when Judge McGinty took over the case. In fact, the complaint indicates that Judge McGinty presided over the challenged proceedings himself. (Compl. ¶ 22(f) ). Plaintiff Amato states that Judge McGinty "pre-decided" the trial with no evidence allowed. (*Id.*) Plaintiff Amato states that defendant McGinty "struck from the record anything that was pertinent to the safety of the child and mother...." (*Id.*) Finally, plaintiff alleges that defendant McGinty and defendants Gilday and Ingram held a "mock trial." (*Id.*) Thus, the judge heard the factual issues in question, and plaintiff has not alleged a violation of Judiciary Law § 21.

In any event, even if the judge acted in violation of Judiciary Law § 21, the appropriate remedy in state court would be remand to the same judge for his or her own hearing of the issue and a subsequent decision. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. Although the state court has referred

2017 WL 9487185

to this statute as "jurisdictional," it is only with respect to the particular decision that the judge made without hearing the evidence him or herself. *Id.* It does not deprive the court of "jurisdiction" over custody cases. Judge McGinty was still a family court judge with jurisdiction over custody matters. At worst, if Judge McGinty decided a motion or issue improperly, he would have been acting "in excess" of jurisdiction, and he would still be entitled to judicial immunity.

Plaintiffs challenge rulings by Judge McGinty and complain of the way that he managed his courtroom, allegedly "denying access to what the judge called 'his court.' " (Compl. ¶ 20). Judge McGinty allegedly placed CB in "governmental counseling for high risk children" without plaintiff Amato's consent, "denied evidence ... for purpose of record; and "falsely" placed plaintiff Amato and CB on a "missing persons clearinghouse." " (Compl. ¶¶ 20, 22(h) ). Plaintiffs allege that on January 31, 2017, defendant McGinty "issued a directive to plaintiff [Amato] under penalty of imprisonment .... sixty days in county jail on a civil offense of a woman with no background at all because she wanted to protect her child from further addiction and domestic violence." (Compl. ¶ 24). Plaintiff Amato alleges that the court mocked her and endangered CB with its rulings. (*Id.*) Plaintiff Amato also claims that a "stay" was granted by the Appellate Division, which ordered plaintiff's immediate release from the Ulster County Jail "false arrest and abuse of power." (*Id.*)

Notwithstanding plaintiffs' allegations that the Judge made improper adverse rulings against plaintiff Amato during the custody proceeding with malice or in retaliation for her "exposing" abuses in Family Court, the judge was still performing judicial functions and presiding over plaintiff's custody action. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corruptly.

In *Koziol v. King*, the plaintiff sued a variety of judges in connection with custody and support proceedings. *Koziol v. King*, No. 6:14-CV-946, 2015 WL 2453481 (N.D.N.Y. May 22, 2015). In *Koziol*, then-Chief District Court Judge Gary Sharpe dismissed claims against County Court Judge King which related primarily to visitation and custody orders in matters pending before him, based on absolute immunity. *Id.* at *8. Plaintiff Koziol had also challenged that way that Judge King "managed his courtroom." *Id.*

In dismissing the claims against Judge King, Judge Sharpe cited *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014), in which the court held that a family court judge was protected by judicial immunity where the plaintiff alleged that the judge denied him custodial and visitation rights because he was a Muslim, which violated his civil rights. Thus, judicial immunity is not lost because plaintiff alleges that the judge's decision was unconstitutional. Plaintiffs in this case disagree with the judge's decisions. (Compl. ¶ 29). Plaintiff Amato quotes the judge's order awarding custody to defendant Bessmer, and states that the judge did not properly consider CB's father's drug dealing, drug abuse, arrests, domestic violence, and probation violations. (*Id.*)

**\*5** Plaintiff Amato also states that defendant McGinty abused his authority when he issued an order of protection without "a trial or hearing," and subjected plaintiff Amato to supervised visitation, allegedly contrary to New York law. (Compl. ¶ 35). Plaintiff discusses the proper procedure for "imposing supervised visitation," and faults the judge as well as the other defendants for imposing such restrictions on her. However, these decisions are also within the purview of the Family Court Judge. Even if the judge was incorrect in imposing the alleged restrictions to plaintiff Amato's visitation, it would not deprive Judge McGinty of judicial immunity.

Plaintiff Amato clearly has issues with the Family Court system and claims that the system has been abused by Judge McGinty. The complaint also contains two paragraphs which refer to "financially based custody laws" and states that "Plaintiff" seeks an order declaring Sections 236 and 240 of the Domestic Relations Law unconstitutional. (Compl. ¶¶ 36). Judge McGinty's application of the laws that he has jurisdiction to interpret does not deprive him of judicial immunity, even if those laws were unconstitutional. The constitutionality of state statutes is an issue separate from judicial immunity. [5]

[5]    Although plaintiffs' complaint asks that two sections of New York Domestic Relations Law be declared "unconstitutional," the court must first note that, to the extent that the claim could be asserted at all, it could only be asserted by plaintiff Amato because she is the only plaintiff who has been a party to the custody proceedings and to whom the statute would have been applied. In addition, none of the individuals

Case 1:24-cv-00172-MAD-TWD Document 7 Filed 05/10/24 Page 92 of 102

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

named as defendants are proper defendants in such an action. Finally, in cases involving Domestic Relations issues, the court must afford the state court appropriate deference in light of ongoing proceedings involving the plaintiff. *See Kahn v. Shaiswit*, 414 F.Supp. 1064, 1068 (S.D.N.Y. 1976) (dismissing an action by plaintiff husband in a divorce matter in which he challenged the constitutionality of New York Domestic Relations Law § 239). The court in *Kahn* cited *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), in which Judge Oakes stated in a concurring opinion, that " 'probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern.' " *Id.* at 1067 (quoting *Mendez*, 530 F.2d at 461). Thus, to the extent that plaintiff Amato may be attempting to challenge the constitutionality of sections of the New York Domestic Relations Law, the claim may be dismissed.

Plaintiff Amato claims in her third cause of action that she was denied the right to a "rational, orderly and timely court proceeding before a neutral and detached magistrate or judge." (Compl. ¶ 39). This is clearly an action that is judicial in nature, and Judge McGinty would be entitled to judicial immunity for any such claim. The same is true for plaintiff's state law claims of intentional and negligent infliction of emotional distress. Thus, plaintiffs' [6] complaint must be dismissed as against defendant McGinty.

[6] Judicial immunity applies to shield Judge McGinty's liability as to all the plaintiff's, although plaintiff Amato is generally the plaintiff to whom the complaint refers. Plaintiff Amato appears to attempt to include the other plaintiffs by stating that they did not get "hearings," they do not appear to have been parties to the custody case. To the extent that any of the other "plaintiffs," uncle, aunt, grandmother, sister, niece and nephew had dealings with Judge McGinty, it was only in connection with the custody action, and the judge is entitled to absolute immunity no matter who the plaintiff is.

**\*6** It has also been held that law guardians are entitled to absolute quasi-judicial immunity for their actions in representing children in Family Court. *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at \*5 (N.D.N.Y. Oct. 16, 2014) (citing inter alia *Yapi v. Kondratyeva*, 340 Fed.Appx. 683, 685 (2d Cir. 2009) (citations omitted) ); *Holland v.*

*Morgenstern*, No. 12-CV-4870, 2013 WL 2237550, at \*4 (E.D.N.Y. May 20, 2013) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 155, 2004 WL 1854082, at \*11 (S.D.N.Y. Aug. 19, 2004) (citations omitted). In *Lewittes*, the court held that the plaintiff would have other available remedies if the child's attorney were derelict in performing his or her duties. 2004 WL 1854082, at \*12. This holding is supported by New York State court decisions holding that such guardians are protected by quasi-judicial immunity. *Id.* at \*11-12, 112 S.Ct. 286 (citing inter alia *Bluntt v. O'Connor*, 291 A.D.2d 106, 737 N.Y.S.2d 471 (4th Dep't), appeal denied, 98 N.Y.2d 605, 746 N.Y.S.2d 279, 773 N.E.2d 1017 (2002) ). Thus, defendant Ingram, as the attorney for CB would also be entitled to absolute immunity, and the complaint must be dismissed as against her.

### III. State Action

#### A. Legal Standards

To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at \*5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at \*2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ).

Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful that conduct may be.' " *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 93 of 102

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

**B. Application**

Plaintiffs have sued Attorneys Andrew Gilday and Amy Ingram [7] as well as Patrick Bessmer and his girlfriend, Pamela Augustine. With respect to Attorneys Gilday and Ingram, it is well-established that private attorneys do not act under color of state law even if they are court-appointed attorneys, performing their traditional function as counsel. *See Harmon v. New York County Dist. Attorney's Office*, No. 13 Civ. 1711, 2014 WL 1044310, at *9 (S.D.N.Y. March 17, 2014) (citing inter alia *Brown v. Legal Aid Soc'y*, 367 Fed.Appx. 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ). *See also Licari v. Voog*, 374 Fed.Appx. 230, 231 (2d Cir. 2010) (private attorneys, even if they are court-appointed, and/or associated with a Legal Aid organization, do not act under color of state law when representing their clients). According to plaintiffs, defendant Gilday is the court-appointed attorney for defendant Bessmer, and defendant Ingram was appointed by the court as the attorney for CB.

[7]     As stated above, defendant Ingram is entitled to immunity. The lack of state action is an alternative basis for dismissal as against this defendant.

**\*7** Defendants Bessmer (CB's father) and Augustine are clearly private parties who do not act under color of state law for purposes of section 1983. Although plaintiffs allege that Bessmer and Augustine "conspired" with other defendants, plaintiff states no facts to support these conclusory statements that are dispersed throughout the complaint. (Compl. ¶¶ 11, 12). Conclusory allegations of conspiracy are insufficient to state a claim under the civil rights laws. *See Brown*, 367 Fed.Appx. at 216 (color of state law may be established if the individual conspired with a state actor, however, conclusory allegations of conspiracy are insufficient). The only state actor is Judge McGinty, and there is no indication, other than the judge's decision in Bessmer's favor, how defendant Bessmer or defendant Augustine would have "conspired" with the judge sufficient to establish that they acted under color of state law. [8]

[8]     Plaintiff alleges that she was verbally and physically threatened by defendants Bessmer and Augustine outside the court, and that Judge McGinty only issued an order of protection for plaintiff Amato and not for CB. (Compl. ¶ 29). The alleged attack by Bessmer and Augustine was

certainly a "private action," and the judge's failure to issue a protective order for CB is not alleged to have been the result of any "conspiracy."

Plaintiffs allege that defendants Gilday, Ingram, and Judge McGinty "co-conspired," violated her rights and placed CB in the custody of a dangerous criminal in violation of "Statute." (Compl. ¶ 22). "Merely resorting to the courts and being on the winning side of a lawsuit does not rise to the level of "conspiracy." " *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1988). Defendant Gilday was appointed to represent defendant Bessmer and had a duty to represent his interests in the custody proceeding. Defendant Ingram was appointed to protect the interests of CB during the proceedings. Plaintiff faults Attorney Ingram for being ill prepared, not returning plaintiff Amato's calls, and was generally an ineffective advocate for CB. Plaintiff claims that defendant Ingram also "fought vehemently" in favor of custody for defendant Bessmer (Compl. ¶ 26). Plaintiff also states that her "adversary," the judge, and the appointed child attorney "ganged up" on her. (Id.)

Defendant Ingram's alleged incompetence and the fact that the judge ultimately ruled in defendant Bessmer's favor does not indicate that the judge conspired with the attorneys regarding his ruling or that defendants Bessmer and Augustine somehow conspired with the judge to obtain a favorable result. Thus, the complaint may be dismissed in its entirety as against defendants Attorney Gilday, Attorney Ingram, Bessmer and Augustine.

**IV.** **Minor Child Plaintiffs**

**A. Legal Standards**

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. [9] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

[9]     An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case. An exception has also been established for parents representing their children in applications for Supplemental Security Income ("SSI"). *Machadio v. Apfel*, 276 F.3d 103, 106-07 (2d Cir. 2002). However, the interests of the child and the parent were "intertwined," and

2017 WL 9487185

the Social Security regulations provided for such
representation.

**B. Application**

Plaintiff's have listed various "John" or "Jane" Doe minors
as plaintiffs, including CB, plaintiff Amato's child. The adult
plaintiffs have all signed the complaint and added their John
or Jane Doe children under their names. [10] (Compl. CM/ECF
pp. 27, 28, 32). However, while the adults may represent their
own interests, they may not represent the interests of their
children. *See Cheung v. Youth Orchestra Found. of Buffalo,*
906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be
represented by counsel in bringing an action on behalf of his
or her child because the choice to appear pro se is not a true
choice for minors who, under state law, cannot determine their
own legal actions) (citing *Fed. R. Civ. P. 17(b)* ). The court in
*Cheung* further stated that it is not in the interests of minors
or incompetents that they be represented by non-attorneys.
*Id.* "Where they have claims that require adjudication, they
are entitled to trained legal assistance so their rights may
be fully protected." *Id.* Thus, the minor children may not
be plaintiffs on their own because they are minors, [11] and
the adult plaintiffs may not represent their children. *See also
Armatas v. Maroulleti,* 484 Fed.Appx. 576 (2d Cir. 2012).

[10]    One plaintiff has attempted to sign the complaint
        herself as a "minor," with her "guardian" signing
        the complaint underneath the minor's name.
        (Compl. at CM/ECF p.32).

[11]    Fed. R. Civ. P. 17(e).

**\*8** The court would also point out that although all the adult
plaintiffs have signed the complaint, they did not include
their addresses. The only specific contact information is
for plaintiff Amato. The complaint contains a description
of the various plaintiffs and generally where they live, [12]
but no specific addresses have been provided. (Compl. ¶¶
3-7). Plaintiff Amato may not act on behalf of any of the
other plaintiffs because she is not an attorney. This includes
accepting mail from the court and sending it to the other
plaintiffs. In any event, as discussed below, the adults, other
than the plaintiff have no standing to bring this action.

[12]    Most of the plaintiffs live in New York State, but
        Michelle Arzola and her two "Doe" "children" live
        in Ohio. (Compl. ¶ 7).

**V. Standing**

**A. Legal Standards**

A plaintiff bears the burden of establishing that he or she has
standing to bring an action in federal court. *Amidax Trading
Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011).
"To establish constitutional standing, a plaintiff must show
(1) an injury in fact, (2) causation between the injury and
the offensive conduct, and (3) 'a likelihood that the injury
will be redressed by a favorable decision.' " *Heath v. Banks,*
No. 16-3493-cv, slip. op. at 2 (2d Cir. June 5, 2017) (quoting
*Susan B. Anthony List v. Driehous,* —— U.S. ——, 134 S.Ct.
2334, 2341, 189 L.Ed.2d 246 (2014) ). In addition, there
is a "prudential standing rule" which states that, normally
litigants are barred from "asserting the rights or legal interests
of others in order to obtain relief from injury to themselves."
*Id.* (quoting *Rajamin v. Deutsche Bank Nat't Tr. Co.,* 757 F.3d
79, 86 (2014) ).

**B. Application**

In this case, plaintiff Amato has added other adult plaintiffs,
including her mother, CB's Aunt and Uncle, and CB's adult
cousin. None of these individuals are parties to the custody
action, and it is unclear how family that lives in Ohio,
(Compl. ¶ 7), would have standing to assert claims in this
case. According to the prudential standing rule, the additional
plaintiffs would be barred from asserting the legal interests
of either plaintiff Amato or CB even if the other plaintiffs
claimed that they are "injured" by any of the defendants'
actions. Thus, the complaint may also be dismissed for lack
of standing as against all plaintiffs other than plaintiff Amato
and CB.

**VI. *Rooker-Feldman*, The Domestic Relations Exception,
and *Younger v. Harris***

**A. The Domestic Relations Exception**

**1. Legal Standards**

Under the domestic relations exception to the jurisdiction of
federal courts, cases involving divorce, alimony, and child
custody remain outside federal court jurisdiction. *Marshal v.
Marshall,* 547 U.S. 293, 308, 126 S.Ct. 1735, 164 L.Ed.2d
480 (2006). This exception is based upon a policy dictating
that the states have traditionally adjudicated marital and child
custody disputes, developing "competence and expertise in
adjudicating such matters, which the federal courts lack."
*Thomas v. N.Y. City,* 814 F.Supp. 1139, 1146 (E.D.N.Y. 1993).

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 95 of 102

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578 (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action, sua sponte which raised very similar claims to the case herein. In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case, [13] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.* Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected her to "unfounded" charges. *Id.* at *1.

[13]    One of the rulings granted sole custody to the father of the child. 2017 WL 1592578, at *1.

### 2. Application

 **\*9** Plaintiffs in this case are making the same claims and challenging similar actions by the state court judge and the state court attorneys who appeared in plaintiff Amato's custody case. The plaintiff in *Bukowski* also raised "constitutional" issues, but the court recognized that the allegations essentially challenged a state domestic relations matter, and were therefore, outside the federal court's jurisdiction. 2017 WL 1592578, at *3 (citations omitted). A review of plaintiffs' request for relief in this case shows that they are essentially challenging the state court's action. In addition to substantial monetary damages, plaintiffs seek "immediate return" of CB, together with a judgment "declaring the orders, edicts, and processes described in this Complaint unconstitutional with an order permanently enjoining the enforcement of these orders." (Compl. at CM/ECF p. 26).

In order to return custody of CB to plaintiff, or to "enjoin" the state court's orders, this court would have to re-determine the judge's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F.Supp.3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Thus, the case may be dismissed based on the domestic

relations exception. To the extent that the custody case has been concluded, the court will also discuss alternate bases for dismissal.

### B. *Rooker-Feldman*

#### 1. Legal Standards

A dismissal pursuant to the *Rooker Feldman* [14] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

[14]    *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 17, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

There are four requirements to the application of *Rooker Feldman*: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must have been caused by the state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the judgment must have been rendered prior to filing the federal court action. *Bukowski*, 2017 WL 1592578, at *3 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ).

#### 2. Application

As Judge D'Agostino stated in her June 2, 2017 decision, under the *Rooker Feldman* doctrine, the district court also does not have subject matter jurisdiction over claims that effectively challenge state court judgments in general. (Dkt. No. 9) (quoting *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F.Supp.2d 146, 151 (E.D.N.Y. 2002) ). Although it is unclear whether the plaintiff's custody case is finally decided because plaintiff claims that the Judge scheduled a proceeding

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 96 of 102
Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

in "October" notwithstanding that the witnesses were ready to testify. [15] (Dkt. No. 8 at CM/ECF p.4). To the extent that plaintiff's custody case is terminated, or to the extent that plaintiff seeks review of decisions that the judge has already issued, this complaint is barred by *Rooker Feldman* because plaintiff is essentially challenging the state court's decision. Plaintiff lost in state court, her injuries are allegedly causes by the state court judgment that she seeks to overturn, plaintiff is asking this court to overturn Judge McGinty's rulings, and it appears that custody was awarded to Mr. Bessmer prior to plaintiff bringing this action. Thus, all the requirements for *Rooker Feldman* have been met with respect to orders that have already been issued by Judge McGinty.

[15]    Plaintiff Amato does allege that custody has already been awarded to defendant Bessmer.

## C. *Younger v. Harris* [16]

[16]    401 U.S. 37 (1971).

### 1. Legal Standards

**\*10**  In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. at 43-44. The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions [17] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts. [18] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of constitutional claims in state court. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Parent v. New York*, 485 Fed.Appx. 500, 503 (2d Cir. 2012) (quoting *Younger, supra; Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997) ).

[17]    *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

[18]    *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013), the Court revisited the analysis required to invoke abstention under *Younger*. In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah*, 569 Fed.Appx. 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S.Ct. at 591-94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 134 S.Ct. at 588). In *Sprint*, the Court used state-initiated custody proceedings in its analysis [19] as an example of civil proceedings which are akin to criminal proceedings. 134 S.Ct. at 592 (citing *Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents) ). *See also Davis v. Baldwin*, 594 Fed.Appx. 49, 51 (2d Cir. 2015) (same).

[19]    *Sprint* did not involve custody proceedings.

"If the federal court action falls into one of the three categories listed above, the court may then consider additional factors, such as "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." " *Torres v. Gaines*, 130 F.Supp.3d 630, 636 (D. Conn. 2015). In Judge D'Agostino's decision, she stated that "several courts in the Circuit have held that *Younger* abstention applies in similar circumstances as this case." (Dkt. No. 9 at 5) (citing *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 456 S.W.3d 545, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) ).

In *Graham*, the court stated that " 'there can be no doubt that a custody dispute ... raises important state interests.' " 2015 WL 1120121, at *3, 456 S.W.3d 545 (quoting *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989) ). In addition, the court held that plaintiff was able to raise any potential constitutional claims in state court. *Id.* Therefore, the court applied *Younger* to dismiss plaintiff's claims for injunctive relief. The same is true in this action to the extent that any of the issues upon which plaintiffs base their action are still pending or are to be tried in the

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 97 of 102

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

future.[20] In fact, plaintiff Amato has cited a quote from a letter, signed by Judge McGinty, telling plaintiff Amato that, if she is unhappy with the court's decision, her recourse is an appeal of that decision.[21] (Compl. ¶ 41).

[20]    *Younger* does not apply to monetary damages, thus, the dismissal of plaintiff's damage claims would be governed by the domestic relations exception and not *Younger.*

[21]    The letter is referring to a "decision" from 2016. It is unclear what that decision may have been or whether it was the judge's actual custody decision.

## VII. Opportunity to Amend

### A. Legal Standards

**\*11** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Because Judge McGinty and Attorney Ingram are entitled to absolute immunity, it would be futile to allow the plaintiffs to amend their complaint. No amendment will cure this deficiency. Defendant Gilday does not act under color of state law, and plaintiffs have made no sufficient allegations of a conspiracy with Judge McGinty that would be sufficient to establish state action by defendant Gilday. Thus, the court also recommends that no amendment be allowed. Defendants Bessmer and Augustine also do not act under color of state law, and defendant Bessmer is simply plaintiff Amato's adversary in the custody dispute. Defendant Augustine does not appear to be involved in the litigation at all. Thus, no amendment would change this court's recommendation with respect to defendants Bessmer and Augustine.

The court notes that, as stated above, in two of the paragraphs of her complaint, plaintiff appears to state that New York Domestic Relations Law §§ 236 and 240 are "unconstitutional," but her reasoning for this allegations is completely unclear. (Compl. ¶ 36). While plaintiff Amato

might in certain circumstances be entitled to challenge the constitutionality of laws as they applied to her without running afoul of the domestic relations exception, *Younger*, or *Rooker Feldman*, the other plaintiff's do not have standing to assert this claim because the laws have not been applied to them, and plaintiff Amato has not named any defendants that would be able to afford her the relief that she seeks with respect to the sections of the law that she appears to challenge. In addition, it is likely that even a proper challenge to the statute would have to be brought first in state court. *See Kahn, supra.* The court also points out that this claim does not appear in plaintiff's "relief" section. Thus, the court will recommend dismissing this claim without prejudice to filing an amended complaint with only plaintiff Amato as the plaintiff, against the proper defendant, at the proper time, and in the appropriate forum.[22]

[22]    Although plaintiff also mentions the Family Court Act in paragraph 36 of her complaint, she does not indicate which sections of the Act she believes to be unconstitutional.

## VIII. Motion to Obtain ECF Login and Password

Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE** as against defendants McGinty, Ingram, Gilday, Bessmer, and Augustine, and it is

**RECOMMENDED**, that plaintiff Amato's complaint be dismissed **WITHOUT PREJUDICE** only with respect to any claim challenging the constitutionality of New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above, and it is

**\*12 ORDERED**, that plaintiff Amato's motion to obtain ECF privileges (Dkt. No. 10) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this order on plaintiffs to the extent that addresses are available.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written

Case 1:24-cv-00172-MAD-TWD    Document 7    Filed 05/10/24    Page 98 of 102

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

2017 WL 9487185

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of*

*Health and Human Services,* 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9487185

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**INTRODUCTION**

**\*1** Plaintiff Shariff Abbas commenced this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and other federal laws, alleging violation of his rights while detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, the Albany County Jail and the Perry County Correctional Center ("PCCC") in Uniontown, Alabama. Currently before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended complaint [1], submitted in response to the Court's Order filed on August 16, 2013 ("August 16 Order") (Docket No. 6), which reviewed plaintiff's original complaint (Docket No. 4), dismissed several of the claims asserted therein, and granted plaintiff leave to file an amended complaint. For the reasons set forth below, plaintiff's FTCA claims against the United States related to his treatment at the BFDF may proceed and his remaining claims will be dismissed.

[1] Plaintiff's amended complaint is accompanied by two voluminous bound volumes of exhibits captioned "Exhibit [sic] Part 1", containing a Table of Contents and exhibits 1–18 and "Exhibit Part 2", containing a Table of Contents and exhibits 19–40. Given the voluminous nature of the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would make scanning them very difficult, the Court has not required the Clerk's Office to scan them into the court's electronic filing system. They will instead be maintained in paper form in a separate file in the Clerk's Office. *See* note to Docket No. 6.

**DISCUSSION**

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's FTCA claims stemming from his detention at the Albany County Jail and the PCCC be dismissed; that plaintiff be granted leave to file an amended complaint adding *Bivens* [2] or other federal claims against individual deportation officers and other personnel at BFDF who he alleges violated his rights; and that in the even he failed to timely file an amended complaint as directed, the Court would issue an Order directing service of the complaint upon the United States as the sole defendant to his medical malpractice claims brought under the FTCA. (Docket No. 5).

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 F.3d 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA claims, plaintiffs original complaint asserted a variety of violations of his constitutional rights by individual deportation officers and other personnel during his periods of detention at BFDF and that these claims would be actionable against individual defendants under the *Bivens* doctrine, which allows a plaintiff to pursue constitutional claims against federal officials in their individual capacities for actions taken under color of federal law. *See Lombardi v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.' ") (internal citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). The Court determined, however, that the *Bivens* claims could not proceed because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

**\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION", set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3          Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Federal Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4          Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006–February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to 28 U.S.C. § 1406(a) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal Rules of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir.2008) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of Rule 10(a) that all defendants to an action be named and identified as such in the caption of the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of Rule 10(a). Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., Ferdik v. Bonzelet,* 963 F.2d 1258, 1262–63 (9th Cir.1992) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by Rule 10(a)).

Moreover, as explained in the August 16 Order (pp. 14–15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See Robinson v. United States Bur. Of Prisons,* 244 F.Supp.2d 57, 66 (N.D.N.Y.2003) ("[A] *Bivens* action may not be maintained against the United States.") (citing *Washington v. DEA,* 183 F.3d 868, 872 n. 8 (8th Cir.1999). Nor can constitutional claims be asserted against the United States under the FTCA. *See Washington,* 183 F.3d at 873; *Russ v. United States,* 62 F.3d 201, 204 (7th Cir.1995) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief can be granted.

### B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiff's original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v. Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

**\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

### C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States. [5]

[5]    As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

### *ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint, [6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6]    As explained in n. 1, *supra,* plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/ WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3858398

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.